UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DETROIT ENTERTAINMENT, LLC,

    Plaintiff,

v.

AMERICAN GUARANTEE AND
LIABILITY INSURANCE COMPANY,

    Defendant.
_____/

Case No. 21-cv-10661
Hon. Matthew F. Leitman

**ORDER (1) DENYING PLAINTIFF'S MOTION TO CERTIFY TO THE MICHIGAN SUPREME COURT (ECF No. 31) AND (2) GRANTING PLAINTIFF LEAVE TO FILE SECOND AMENDED COMPLAINT**

This case is one of the myriad insurance coverage disputes that have arisen out of the COVID-19 pandemic. Plaintiff Detroit Entertainment, LLC owns and operates the MotorCity Casino Hotel in Detroit, Michigan. It has an "all risk" commercial property insurance policy with Defendant American Guarantee Insurance Company. In this action, Detroit Entertainment says that it suffered "catastrophic losses" due to a "direct physical loss of or damage to its own property caused" by COVID-19. (Am. Compl. at ¶4, ECF No. 18, PageID.382.) It insists that it is entitled to "a declaratory judgment requiring" American Guarantee to "provid[e] coverage" for those losses under the terms of its insurance policy. (*Id.* at ¶5,

1

PageID.382.) American Guarantee disagrees. (*See* Mot. to Dismiss, ECF No 21.[1]) It argues, among other things, that Detroit Entertainment "cannot demonstrate, as a matter of law, [the] 'direct physical loss of or damage to' insured property [that is] necessary to establish [insurance] coverage." (*Id.*, PageID.736.) Thus, two of the primary issues in this case are: (1) what does the term "direct physical loss" (as used in the policy) mean? and (2) did Detroit Entertainment suffer a "direct physical loss" that triggers coverage under its policy? The parties agree that the Court must answer these questions under Michigan law.

Detroit Entertainment says that before the Court proceeds further, it should seek the guidance of the Michigan Supreme Court. (*See* Mot., ECF No. 31.) It insists that "[t]his case raises an important question of Michigan insurance law concerning whether a provision widely used in all-risk commercial insurance policies for properties located in Michigan covers Coronavirus/COVID-19 business interruption losses." (*Id.*, PageID.1976.) And it notes that the only court that can definitively answer that question is the Michigan Supreme Court. It therefore asks the Court to certify the following question to the Michigan Supreme Court:

> When a first-party, all-risk property insurance policy covers all risks of "direct physical loss of or damage" to insured property from any cause unless excluded, is coverage triggered when a toxic, noxious, or hazardous

---

[1] The Court terminated the motion to dismiss without prejudice on February 25, 2022, because it planned to give Detroit Entertainment the opportunity to file a Second Amended Complaint. (*See* Order, ECF No. 39.)

2

> substance, such as Coronavirus or COVID-19, that is physically present in the indoor air of that property damages the property or causes loss, either in whole or in part, of the functional use of the insured property?

(*Id.*, PageID.1978.)

For the reasons explained below, the Court **DENIES** the motion.[2]

# I

Motions to certify questions to a state supreme court are governed by Local Rule 83.40. That rule provides as follows:

> (a) Upon motion or after a hearing ordered by the Judge *sua sponte*, the Judge may certify an issue for decision to the highest Court of the State whose law governs its disposition. An order of certification shall be accompanied by written findings that:
>
> > (1) the issue certified is an unsettled issue of State law, and
> >
> > (2) the issue certified will likely control the outcome of the federal suit, and
> >
> > (3) certification of the issue will not cause undue delay or prejudice.
>
> Such order shall also include citation to precedent, statutory or court rule authority authorizing the State Court involved to resolve certified questions.
>
> (b) In all such cases, the order of certification shall stay federal proceedings for a fixed time which shall be

---

[2] The Court concludes that it may resolve this motion without oral argument. *See* E.D. Mich. Local Rule 7.1(f)(2).

> subsequently enlarged only upon a showing that such additional time is required to obtain a State Court decision and is not the result of dilatory actions on the part of the litigants.
>
> (c) In cases certified to the Michigan Supreme Court, in addition to the findings required by this Rule, the United States District Court shall approve an agreed statement of facts which shall be subsequently transmitted to the Michigan Supreme Court by the parties as an appendix to briefs filed therein.

E.D. Mich. Local Rule 83.40.

"The decision to certify a question to a state court lies within [a federal court's] sound discretion." *Smith v. Joy Technologies, Inc.*, 828 F.3d 391, 397 (6th Cir. 2016) (internal citation omitted). In general, federal courts should "not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks." *Id.* (quoting *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009)). Indeed, a federal court may decline to certify a question to a state court even where a state supreme court "has not addressed the exact question at issue" where state "law provides well-established principles to govern the outcome of the case." *Id.* (internal citation omitted). *See also Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 610 (6th Cir. 2012) (denying request to

certify question to Michigan Supreme Court where court "s[aw] a reasonably clear and principled course" to resolve legal question in dispute).³

## II

### A

The Court concludes that certification to the Michigan Supreme Court is not necessary. Federal courts hearing insurance coverage disputes arising out of the COVID-19 pandemic – including the Sixth Circuit and other Judges in this District – have repeatedly resolved similar questions of state law and insurance policy interpretation without finding it necessary to first seek direction from state courts. *See*, *e.g.*, *Santo's Italian Café v. Acuity Ins. Co.*, 15 F.4th 398 (6th Cir. 2021); *Milan v. Cincinnati Ins. Co.*, 2021 WL 4921193 (E.D. Mich. Oct. 21, 2021). That is exactly what the Sixth Circuit did in *Brown Jug, Inc. v. Cincinnati Ins. Co.*, 27 F.4th 398 (6th Cir. 2022). In that case, the Sixth Circuit construed the term "direct physical loss" under Michigan law. *Id.* at 400. Even though "the Michigan Supreme Court ha[d] not opined on [that] question," the Sixth Circuit did not certify any questions to the Michigan Supreme Court. Instead, the Sixth Circuit proceeded to "giv[e] the words 'direct physical loss' their ordinary meaning" and to analyze whether the

---

³ *See also Grand Traverse Band of Ottawa and Chippewa Indians v. Blue Cross Blue Shield of Michigan*, 2019 WL 11641058, at *1 (E.D. Mich. July 2, 2019) (declining motion to certify question to Michigan Supreme Court and explaining that "[w]here there are clear guiding principles that the district court may rely on, even matters of first impression are inappropriate questions for certification").

plaintiffs had adequately alleged a loss. *Id.* at 403. The court was able to do so because (1) "the Michigan Court of Appeals [had] recently construed the term 'direct physical loss' in a commercial policy,"[4] (2) the Sixth Circuit, itself, had "recently also examined nearly identical policy language under Ohio and Kentucky law, specifically with regard to the COVID-19 pandemic," and (3) "[t]he Second, Fifth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits" had also recently "examine[d] the common meaning of the word 'loss[,]' applie[d] state law to similar insurance policies, [and] all ruled similarly." *Id.* at 402. In light of this broad consensus on the governing legal principles, the Sixth Circuit decided the *Brown Jug* appeal without an authoritative construction of the term "direct physical loss" from the Michigan Supreme Court.

The Sixth Circuit proceeded in the same manner in *Estes v. Cincinnati Ins. Co.*, 23 F.4th 695 (6th Cir. 2022). In *Estes*, the court considered the following question under Kentucky law: "[d]id the COVID-19 pandemic or the ensuing government shutdown orders cause a 'direct' 'physical loss' to [plaintiff's] dental offices (or nearby dependent properties)." *Id.* at 699. The Sixth Circuit acknowledged that "[t]he Kentucky Supreme Court ha[d] yet to consider how this common insurance language applie[d] in this COVID-19 context," but the Sixth

---

[4] *See Gavrilides Mgmt. Co., LLC v. Mich. Ins. Co.*, --- N.W.2d ---, 2022 WL 301555 (Mich. Ct. App. Feb. 1, 2022).

6

Circuit did not certify any questions to the Kentucky Supreme Court. Instead, the Sixth Circuit proceeded to determine "which side of [the relevant] linguistic debate that court would take." *Id.* It felt that it could resolve that question, in part, because "[a] broad circuit consensus [] support[ed its] interpretation" of Kentucky law. *Id.* at 701. In fact, it noted that "[e]very other circuit court to consider this question has read nearly identical language in the same way." *Id.* (citing cases).

The Court chooses to proceed as the Sixth Circuit did in *Brown Jug* and *Estes*. The Court concludes, like the Sixth Circuit did in those cases, that because there is a general consensus among courts concerning the legal principles that broadly govern here, the Court does not need to certify any questions to the Michigan Supreme Court in order to determine how that court would resolve the issues presented in this case. Moreover, although *Brown Jug* is not an authoritative construction of Michigan law (because it was decided by a federal court), it nonetheless appears to provide important guidance concerning some of the primary questions presented here, and it is, of course, binding upon this Court. The Michigan Court of Appeals' recent decision in *Gavrilides Mgmt. Co., LLC v. Mich. Ins. Co.,* --- N.W.2d ---, 2022 WL 301555 (Mich. Ct. App. Feb. 1, 2022), likewise seems to provide additional helpful guidance concerning the governing legal principles under Michigan law. Simply put, even if *Brown Jug*, *Gavrilides*, and the many other similar COVID-19 coverage cases from around the country are not exactly on point,

7

they collectively provide this Court with sufficient guidance concerning how the Michigan Supreme Court would decide the controlling question here that the Court need not certify any questions to that court. *See*, *e.g.*, *Transamerica Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995) (affirming denial of motion to certify question in insurance coverage dispute and explaining that "though Kentucky has not addressed the exact question at issue, it does have well-established principles to govern the interpretation of insurance contracts. Accordingly, the District Court did not err in refusing to certify the question").

Finally, many federal courts have expressly declined to certify questions like the one Detroit Entertainment proposes for certification. *See*, *e.g.*, *Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins. Co.*, --- F.4th --, 2022 WL 841355, at *5 n.3 (5th Cir. Mar. 22, 2022) (denying plaintiff's motion to certify question to Louisiana Supreme Court in insurance coverage dispute arising out of COVID-19 pandemic in light of the consensus of "caselaw" interpreting the phrase "direct physical loss of or damage to property" and the "unambiguous meaning" of that phrase); *Aggie Investments, L.L.C. v. Continental Casualty Co.*, 2022 WL 257439, at *2 n.1 (5th Cir. Jan. 26, 2022) (denying plaintiff's motion to certify question to Texas Supreme Court in insurance coverage dispute over whether plaintiff suffered a "direct physical loss" from a suspension in operations due to the COVID-19 pandemic); *Goodwill Industries of Central Oklahoma, Inc.*, *Inc. v. Philadelphia Indemnity Ins.*

*Co.*, 21 F.4th 704, 708-09, 714 (10th Cir. 2021) (denying motion "to abate proceedings and certify questions to the Oklahoma Supreme Court related to the meaning of the term 'direct physical loss of or damage to' and the applicability of [a] Virus Exclusion" in a commercial insurance policy); *Mudpie, Inc. v. Travelers Casualty Ins. Co. of America*, 15 F.4th 885, 890 (9th Cir. 2021) ("declin[ing] plaintiff's] request to certify its question to the California Supreme Court"). This line of cases further persuades the Court that certification is not necessary here.

**B**

The Court declines to certify Detroit Entertainment's proposed question for two additional reasons. First, Detroit Entertainment has not persuaded the Court that "the issue certified will likely control the outcome" of this case. E.D. Mich. Local Rule 83.40(a)(2). As American Guarantee correctly points out, "the certified question [would] not" necessarily "resolve the dispute because it does not account for" American Guarantee's other defenses, including that Detroit Entertainment's claims are barred by the Contamination Exclusion in the parties' insurance policy. (American Guarantee Resp., ECF No. 33, PageID.2055.) Second, certifying a question to the Michigan Supreme Court here would "cause additional, and undue, delay and prejudice." *Doe v. Snyder*, 449 F.Supp.3d 719, 731 (E.D. Mich. 2020) (denying motion to certify question). "Certification would further draw out these proceedings for an indeterminate period of time while: (1) the parties prepare the

9

statement [of facts] required by E.D. Mich. LR 83.40(c), (2) the parties brief and argue the issue of certification for the Michigan Supreme Court, (3) the Michigan Supreme Court decides whether to accept the certified question, Mich. Ct. R. 7.308(A)(2), (4) the Michigan Supreme Court issues a merits opinion, and (5) the parties return to this court and relitigate any remaining issues." *Id.* This case has already been pending for more than a year, and creating a potentially significant delay at this point in the proceedings is not warranted.[5]

## III

For all of these reasons, Detroit Entertainment's motion to certify a question to the Michigan Supreme Court (ECF No. 31) is **DENIED**.

As the Court previously ordered (*see* Order, ECF No. 39, PageID.2085), it now **GRANTS** Detroit Entertainment leave to file a Second Amended Complaint to revise and supplement its allegations in light of *Brown Jug*. Detroit Entertainment shall file that pleading by no later than **May 2, 2022**.

**IT IS SO ORDERED**.

Dated: March 30, 2022

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

---

[5] The Court acknowledges that, as Detroit Entertainment points out, at least two federal courts have certified questions to a state supreme court in this context. (*See* Detroit Entertainment Supp. Br., ECF No. 40, PageID.2091.) But for all of the reasons explained above, this Court is not persuaded that the two decisions identified by Detroit Entertainment should control here.

      I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 30, 2022, by electronic means and/or ordinary mail.

                                                s/Holly A. Ryan  
                                                Case Manager  
                                                (313) 234-5126