# Exhibit 1

# Disclosure Statement

ZURICH®

## NOTICE OF DISCLOSURE FOR AGENT & BROKER COMPENSATION

If you want to learn more about the compensation Zurich pays agents and brokers visit:

http://www.zurichnaproducercompensation.com

or call the following toll-free number: (866) 903-1192.

This Notice is provided on behalf of Zurich American Insurance Company

and its underwriting subsidiaries.

ZURICH®

# The Zurich EDGE Policy

# Important Notice - In Witness Clause

ZURICH®

In return for the payment of premium, and subject to the terms of this policy, coverage is provided as stated in this policy.

IN WITNESS WHEREOF, this Company has executed and attested these presents and, where required by law, has caused this policy to be countersigned by its duly Authorized Representative(s).

President

Corporate Secretary

**QUESTIONS ABOUT YOUR INSURANCE?** Your agent or broker is best equipped to provide information about your insurance. Should you require additional information or assistance in resolving a complaint, call or write to the following (please have your policy or claim number ready):

Zurich in North America
Customer Inquiry Center
1299 Zurich Way
Schaumburg, Illinois 60196-1056
**1-800-382-2150** (Business Hours: 8am - 4pm [CT])
**Email:** info.source@zurichna.com

Insured Name: Detroit Entertainment, L.L.C

Reference Number: ERP 3061326-01

Effective Date: 12/01/2019

ZURICH®

**THIS DISCLOSURE IS ATTACHED TO AND MADE PART OF YOUR POLICY.**

# DISCLOSURE OF IMPORTANT INFORMATION RELATING TO TERRORISM RISK INSURANCE ACT

**SCHEDULE***

| |
|---|
| Premium attributable to risk of loss from certified acts of terrorism for lines of insurance subject to TRIA: |
| $16,845.00 |

*Any information required to complete this Schedule, if not shown above, will be shown in the Declarations.

## A. Disclosure of Premium

In accordance with the federal Terrorism Risk Insurance Act ("TRIA"), as amended, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to the risk of loss from terrorist acts certified under that Act for lines subject to TRIA. That portion of premium attributable is shown in the Schedule above. The premium shown in the Schedule above is subject to adjustment upon premium audit, if applicable.

## B. Disclosure of Federal Participation in Payment of Terrorism Losses

The United States Government may pay a share of insured losses resulting from an act of terrorism. The federal share will decrease by 5% from 85% to 80% over a five year period while the insurer share increases by the same amount during the same period. The schedule below illustrates the decrease in the federal share:

January1, 2015 – December 31, 2015 federal share: 85%

January1, 2016 – December 31, 2016 federal share: 84%

January1, 2017 – December 31, 2017 federal share: 83%

January1, 2018 – December 31, 2018 federal share: 82%

January1, 2019 – December 31, 2019 federal share: 81%

January1, 2020 – December 31, 2020 federal share: 80%

## C. Disclosure of $100 Billion Cap on All Insurer and Federal Obligations

If aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a calendar year (January 1 through December 31) and an insurer has met its deductible under the program, that insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

## D. Availability

As required by TRIA, we have made available to you for lines subject to TRIA coverage for losses resulting from acts of terrorism certified under TRIA with terms, amounts and limitations that do not differ materially from those for losses arising from events other than acts of terrorism.

## E. Definition of Act of Terrorism under TRIA

TRIA defines "act of terrorism" as any act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act ("TRIA"), to be an act of terrorism. The Terrorism Risk Insurance Act provides that the Secretary of Treasury shall certify an act of terrorism:

**1.** To be an act of terrorism;

**2.** To be a violent act or an act that is dangerous to human life, property or infrastructure;

Copyright ©2015 Zurich American Insurance Company
Inc ludes copyrighted material of ISO Properties, Inc. with its permission

**3.** To have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and

**4**. To have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

Copyright ©2015 Zurich American Insurance Company
Inc ludes copyrighted material of ISO Properties, Inc. with its permission

**THE ZURICH EDGE TABLE OF CONTENTS**

Page No.

DECLARATIONS PAGE

NAMED INSURED AND MAILING ADDRESS .......... 1D
POLICY PERIOD ..........
PREMIUM ..........

SECTION I - POLICY APPLICABILITY .......... 3D

1.01. INSURING AGREEMENT ..........
1.02. APPLICATION OF POLICY PERIOD..........
1.03. TERRITORY ..........

SECTION II - DECLARATIONS .......... 4D

2.01. INSURED LOCATION
2.02. CURRENCY
2.03. POLICY LIMITS OF LIABILITY
2.04. QUALIFYING PERIOD
2.05. DEDUCTIBLES

SECTION III - PROPERTY DAMAGE

3.01. COVERED PROPERTY .......... 1
3.02. PROPERTY NOT COVERED.......... 1
3.03. EXCLUSIONS.......... 2

SECTION IV - TIME ELEMENT.......... 5

4.01. LOSS INSURED .......... 5
4.02. TIME ELEMENT COVERAGES.......... 5
4.02.01. GROSS EARNINGS .......... 5
4.02.02. EXTENDED PERIOD OF LIABILITY.......... 6
4.02.03. EXTRA EXPENSE.......... 7
4.02.04. LEASEHOLD INTEREST.......... 7
4.02.05. EXCLUSIONS.......... 8
4.03. PERIOD OF LIABILITY .......... 8

SECTION V - SPECIAL COVERAGES & DESCRIBED CAUSES OF LOSS .......... 10

5.01. OPERATION OF SPECIAL COVERAGES & DESCRIBED CAUSES OF LOSS: .......... 10
5.02. DESCRIPTION OF SPECIAL COVERAGES.......... 10
5.02.01. ACCOUNTS RECEIVABLE.......... 10
5.02.02. AMMONIA CONTAMINATION.......... 11
5.02.03. CIVIL OR MILITARY AUTHORITY .......... 11
5.02.04. COMPUTER SYSTEMS DAMAGE..........12
5.02.05. CONTINGENT TIME ELEMENT.......... 12
5.02.06. DEBRIS REMOVAL.......... 13
5.02.07. DECONTAMINATION COSTS.......... 14
5.02.08. DEFERRED PAYMENTS .......... 14
5.02.09. ERRORS AND OMISSIONS .......... 14
5.02.10. EXPEDITING COSTS..........15
5.02.11. FINE ARTS .......... 15
5.02.12. FIRE DEPARTMENT SERVICE CHARGE .......... 15
5.02.13. IMPOUNDED WATER .......... 15
5.02.14. INCREASED COST OF CONSTRUCTION.......... 16
5.02.15. INGRESS/EGRESS .......... 16

5.02.16. INTERNATIONAL INTERDEPENDANCY ........ 16
5.02.17. LAND AND WATER CONTAMINANT CLEANUP, REMOVAL AND DISPOSAL ........ 17
5.02.18. LAND IMPROVEMENTS ........ 18
5.02.19. MISCELLANEOUS PERSONAL PROPERTY........ 18
5.02.20. MISCELLANEOUS UNNAMED LOCATIONS ........ 18
5.02.21. NEWLY ACQUIRED ........ 19
5.02.22. OFF PREMISES SERVICE INTERRUPTION PROPERTY DAMAGE AND TIME ELEMENT LOSS ........ 19
5.02.23. PROFESSIONAL FEES ........ 19
5.02.24. PROTECTION AND PRESERVATION OF PROPERTY ........ 20
5.02.25. RADIOACTIVE CONTAMINATION ........ 20
5.02.26. RESEARCH AND DEVELOPMENT ........ 20
5.02.27. RESEARCH ANIMALS ........ 21
5.02.28. SPOILAGE ........ 21
5.02.29. TENANTS PROHIBITED ACCESS ........ 21
5.02.30. TRANSIT ........ 22
5.02.31. VALUABLE PAPERS AND RECORDS ........ 23
5.02.32. NEW CONSTRUCTION AND ADDITIONS ........ 23
5.02.33. OFF PREMISES STORAGE FOR PROPERTY UNDER CONSTRUCTION ........ 24

5.03. DESCRIBED CAUSES OF LOSS ........ 24
5.03.01 BREAKDOWN OF EQUIPMENT........24
5.03.02 EARTH MOVEMENT ........ 24
5.03.03 FLOOD ........ 24
5.03.04 NAMED STORM ........ 25

SECTION VI –GENERAL POLICY CONDITIONS ........ 26

6.01. CANCELLATION/NON-RENEWAL ........ 26
6.02. CERTIFICATES OF INSURANCE ........ 26
6.03. CONCEALMENT, MISREPRESENTATION, FRAUD........ 27
6.04. CONFORMITY TO STATUTES ........ 27
6.05. CONTROL OF DAMAGED GOODS ........ 27
6.06. CURRENCY FOR LOSS PAYMENT ........ 28
6.07. INSPECTIONS AND SURVEYS ........ 28
6.08. JOINT LOSS ........ 28
6.09. JURISDICTION ........ 30
6.10. LENDERS LOSS PAYABLE AND MORTGAGE HOLDER INTERESTS AND OBLIGATIONS........ 30
6.11. LIBERALIZATION ........ 31
6.12. LOSS ADUSTMENT/LOSS PAYABLE ........ 31
6.13. LOSS CONDITIONS ........ 31
6.13.01. DUTIES IN THE EVENT OF LOSS OR DAMAGE ........ 31
6.13.02. ABANDONMENT ........ 32
6.13.03. SUBROGATION ........ 32
6.13.04. APPRAISAL ........ 32
6.13.05. SUIT AGAINST THE COMPANY........ 33
6.14. NO REDUCTION BY LOSS ........ 33
6.15. OTHER INSURANCE ........ 33
6.16. POLICY MODIFICATION ........ 34
6.17. PRIVILEGE TO ADJUST WITH OWNER ........ 34
6.18. SETTLEMENT OF CLAIMS ........ 34
6.19. SUSPENDED PROPERTY ........ 35
6.20. TITLES ........ 35
6.21. TRANSFER OF RIGHTS AND DUTIES ........ 35
6.22. VALUATION........ 35

SECTION VII - DEFINITIONS ........ 38

FORMS ATTACHED TO THE POLICY

| | |
|---|---|
| EDGE-400-B | The Zurich EDGE Policy (Cover Page) |
| U-GU-319-F | Important Notice - In Witness Clause |
| U-GU-630-D CW | Disclosure of Important Information Relating to Terrorism Risk Insurance Act |
| EDGE-454-C | The Zurich Edge Table of Contents |
| EDGE-D-100-B | The Zurich Edge Declarations |
| EDGE-100-B | The Zurich Edge Body of Form |
| EDGE-450-B | Appendix A - Earth Movement/Earthquake Zones for USA including its Commonwealths and Territories |
| EDGE-451-D | Appendix B - Earth Movement/Earthquake Zones Worldwide except USA its Commonwealths and Territories |
| EDGE-452-B | Appendix C - Named Storm Zones for USA including its Commonwealths and Territories |
| EDGE-453-E | Appendix D - Named Storm Zones Worldwide except USA and its Commonwealths and Territories |
| EDGE-201-B | Amendatory Endorsement - Alaska |
| EDGE-207-F | Amendatory Endorsement - Connecticut |
| EDGE-210-D | Amendatory Endorsement - Florida |
| EDGE-211-A | Amendatory Endorsement - Georgia |
| EDGE-214-C | Amendatory Endorsement - Illinois |
| EDGE-215-A | Amendatory Endorsement - Indiana |
| EDGE-217 B | Amendatory Endorsement - Kansas |
| EDGE-218-B | Amendatory Endorsement - Kentucky |
| EDGE-219-C | Amendatory Endorsement - Louisiana |
| EDGE-221-C | Amendatory Endorsement - Maryland |
| EDGE-222-C | Amendatory Endorsement-Massachusetts |
| EDGE-220-B | Amendatory Endorsement - Maine |
| EDGE-224-B | Amendatory Endorsement - Minnesota |
| EDGE-225-B | Amendatory Endorsement - Mississippi |
| EDGE-226-A | Amendatory Endorsement - Missouri |
| EDGE-227-B | Amendatory Endorsement - Montana |
| EDGE-232-B | Amendatory Endorsement - Nebraska |
| EDGE-229-B | Amendatory Endorsement - Nevada |
| EDGE-233-B | Amendatory Endorsement - New York |
| EDGE-236-A | Amendatory Endorsement - Ohio |

FORMS ATTACHED TO THE POLICY

| | |
|---|---|
| EDGE-237-B | Amendatory Endorsement - Oklahoma |
| EDGE-240-A | Amendatory Endorsement - Rhode Island |
| EDGE-241-B | Amendatory Endorsement - South Carolina |
| EDGE-242-C | Amendatory Endorsement - South Dakota |
| EDGE-243-B | Amendatory Endorsement - Tennessee |
| EDGE-246-B | Amendatory Endorsement - Vermont |
| EDGE-248-B | Amendatory Endorsement - Washington |
| EDGE-249-A | Amendatory Endorsement - West Virginia |
| EDGE-250-A | Amendatory Endorsement - Wisconsin |
| EDGE-251-A | Amendatory Endorsement - Wyoming |
| EDGE-252-A VA | Amendatory Endorsement - Virginia |
| U-GU-1191-A CW | SANCTIONS EXCLUSION ENDORSEMENT |
| U-GU-767-B CW | Cap on Losses From Certified Acts of Terrorism |
| EDGE-309-A | Endorsement Limited Coverage for Electronic Data Programs or Software |
| EDGE-313-C | CYBER EVENT COVERAGE ENDORSEMENT |

## Policy Number

ERP3061326-01

## Named Insured and Mailing Address

Detroit Entertainment, L.L.C
2901 Grand River Ave
Detroit, MI 48201

hereafter referred to as the **First Named Insured**.

The following are all hereafter referred to as the "Insured", including legal representatives.

The **First Named Insured**; and

any subsidiary of the **First Named Insured**. The **First Named Insured**'s interest in any partnership, joint venture or other legal entity in which the **First Named Insured** has management control or ownership as now constituted or hereafter is acquired.

When any Insured described above is a party to a written contract or agreement on file, that requires a legal entity to be identified as an additional insured under this Policy, this Policy includes the legal entity as an additional insured, as its interest may appear, for physical damage to insured property which is the subject of the written contract or agreement on file, before any loss occurs; and does not provide any Time Element Coverage to the legal entity, except as provided under Leasehold Interest Coverage of this policy or as specifically endorsed to the policy.

## Producer

Aon Risk Services South, Inc.
3550 Lenox Rd Ne Ste 1700
Atlanta, GA 30326

## Policy Period

Begins December 1, 2019 at 12:01 AM; Ends December 1, 2020 at 12:01 AM

## Insurance is provided by the following Stock Company

American Guarantee and Liability Insurance Company
hereafter referred to as the "Company",

## Proportionate Share of Company for Loss or Damage

100% Quota Share Being $750,000,000 part of a $750,000,000 primary loss layer

| Annual Policy Premium | Surcharges, Taxes & Fees | Total Policy Premium |
|---|---|---|
| $359,808.00 | Not Applicable | $359,808.00 |

PREMIUM PAYABLE

This Policy is issued in consideration of an initial premium. The **First Named Insured** shown on the Policy is responsible for the payment of all premiums and will be the payee for any return premiums paid by the Company. Premiums will be paid in the currency designated in Section II-2.02.

# SECTION I – POLICY APPLICABILITY

## 1.01. INSURING AGREEMENT

This Policy Insures against direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property, at an Insured Location described in Section II-2.01, all subject to the terms, conditions and exclusions stated in this Policy.

No coverage can be provided in violation of any U.S. economic or trade sanctions laws or regulations. Such coverage, which may be in violation of any U.S. economic or trade sanctions laws and regulations, shall be null and void and the Company shall not be liable to make any payments or provide any defense under this policy.

## 1.02. APPLICATION OF POLICY PERIOD

In the event of a claim the Policy Period is measured by local time at the location where the direct physical loss or damage occurs.

## 1.03. TERRITORY

Coverage under this Policy applies to all covered loss or damage that takes place in the United States of America, its territories and possessions, including the District of Columbia and the Commonwealth of Puerto Rico.

# SECTION II - DECLARATIONS

## 2.01 INSURED LOCATION

This Policy insures an Insured Location unless otherwise provided.

An Insured Location is a **Location** :

2.01.01. Listed on a Schedule of Locations on file with Company; per most recent statement of values.

2.01.02. Covered as a **Miscellaneous Unnamed Location** ; and

2.01.03. Covered under the terms and conditions of the Newly Acquired Coverage or Errors and Omissions Coverage.

## 2.02. CURRENCY

All amounts, including deductibles and limits of liability, indicated in this Policy are in USD unless otherwise indicated by the three-letter currency designator as defined in Table A.1 Currency and Funds code list, International Standards Organization (ISO) 4217, edition effective at inception of this Policy.

## 2.03. POLICY LIMITS OF LIABILITY

The Policy Limit is $750,000,000 for the total of all coverages combined regardless of the number of **Locations** involved subject to the following provisions:

2.03.01. The Company will pay no more in any one (1) **Occurrence** than its proportionate share of the Policy Limit.

2.03.02. Limits of Liability stated below or elsewhere in this Policy are part of and not in addition to the Policy Limit.

2.03.03. When an **Annual Aggregate** Limit of Liability is shown, the Company's maximum amount payable will not exceed such Limit of Liability during the **Policy Year** regardless of the number of **Locations**, Coverages or **Occurrences** involved.

2.03.04. The most the Company will pay in an **Occurrence** caused by a **Described Cause of Loss** is the Limit of Liability for that **Described Cause of Loss**.

2.03.05. Limits of Liability in an **Occurrence** apply to the total loss or damage, including any insured Time Element loss, at all **Locations** and for all Coverages involved.

2.03.06. Limits of Liability

The following are the Limits of Liability in an **Occurrence** unless otherwise shown. The Company will pay no more in any one (1) **Occurrence** than its proportionate share.

The limit of Liability we show for a coverage part is the maximum amount we will pay for the coverage part.

Sublimits within a coverage part may reduce the amount payable under a coverage part.

Limits of Liability and Coverage Part

| Limit | Description | |
|---|---|---|
| $750,000,000 | Property Damage (PD) and Time Element (TE) combined at scheduled locations: on file with the Company per most recent statement of values. | |
| | But not to exceed: | |
| | $195,400,000 | GROSS EARNINGS |
| | $21,000,000 | EXTRA EXPENSE |
| | $100,000 | LEASEHOLD INTEREST |

| | |
|---|---|
| $5,000,000 | ACCOUNTS RECEIVABLE |
| $5,000,000 | COMPUTER SYSTEMS DAMAGE<br>in the **Annual Aggregate**<br><br>Per new coverage form: EDGE-313-C |
| $100,000 | CONTINGENT TIME ELEMENT per occurrence but not to exceed a $100,000 limit per **Direct Dependent Time Element Location**<br>**NCP** for **Earth Movement, Flood, Named Storm** or Volcanic Eruption;<br>**NCP** per **Indirect Dependent Time Element Location**;<br>$100,000 limit per **ATTRACTION PROPERTY** |
| $50,000,000 | DEBRIS REMOVAL |
| $10,000,000 | DECONTAMINATION COSTS |
| $2,500,000 | DEFERRED PAYMENTS |
| $5,000,000 | ERRORS AND OMISSIONS |
| $2,500,000 | EXPEDITING COSTS |
| $1,000,000 | **FINE ARTS** |
| $10,000,000 | FIRE DEPARTMENT SERVICE CHARGE |
| $50,000,000 | INCREASED COST OF CONSTRUCTION |
| $500,000 | LAND AND WATER CONTAMINANT CLEANUP, REMOVAL AND DISPOSAL |
| $500,000 | **LAND IMPROVEMENTS** |
| $500,000 | MISCELLANEOUS PERSONAL PROPERTY |
| $2,500,000 | **MISCELLANEOUS UNNAMED LOCATION** |
| $10,000,000 | OFF PREMISES SERVICE INTERRUPTION |
| $1,000,000 | PROFESSIONAL FEES |
| **NCP** | RADIOACTIVE CONTAMINATION |
| **NCP** | RESEARCH ANIMALS |
| $500,000 | TENANTS PROHIBITED ACCESS |
| $2,500,000 | TRANSIT |
| $2,500,000 | **VALUABLE PAPERS AND RECORDS** |
| $10,000,000 | **NEW CONSTRUCTION AND ADDITIONS** |
| $100,000 | OFF PREMISES STORAGE FOR PROPERTY UNDER CONSTRUCTION |
| $750,000,000 | **BREAKDOWN** OF EQUIPMENT not to exceed:<br>$100,000 for **AMMONIA CONTAMINATION**<br>$100,000 for SPOILAGE |

| | |
|---|---|
| $100,000,000 | **EARTH MOVEMENT** in the **Annual Aggregate** but not to exceed the following limits in the **Annual Aggregate:**<br>a). **NCP** for property located in Zone 1 for **Earth Movement** as described in Appendix A & B.<br>b). **NCP** for property located in Zone 2 for **Earth Movement** as described in Appendix A & B.<br>c). **NCP** as respects Newly Acquired Locations<br>d). **NCP** as respects **Miscellaneous Unnamed Locations** |
| $100,000,000 | **FLOOD** in the **Annual Aggregate** but not to exceed the following limits in the **Annual Aggregate:**<br>a). **NCP** as respects Locations with any part of the legal description within a **Special Flood Hazard Area (SFHA)** and not otherwise listed herein.<br>b). **NCP** as respects Locations with any part of the legal description within a **Moderate Flood Hazard Area (MFHA)** and not otherwise listed herein.<br>c). **NCP** as respects Newly Acquired Locations<br>d). **NCP** as respects **Miscellaneous Unnamed Locations** |
| $750,000,000 | **NAMED STORM** in the **Annual Aggregate** but not to exceed the following limits in the **Annual Aggregate:**<br>a). **NCP** for property located in Zone 1 for **Named Storm** as described in Appendix C & D.<br>b). **NCP** for property located in Zone 2 for **Named Storm** as described in Appendix C & D.<br>c). **NCP** as respects Newly Acquired Locations<br>d). **NCP** as respects **Miscellaneous Unnamed Locations** |
| $100,000 | CYBER EVENT COVERAGE ENDORSEMENT<br>In the **Annual Aggregate.** |
| $50,000 | Better Green Coverage |
| $250,000 | Emergency Evacuation Expense |
| $250,000 | Tenant Relocation Expense |

2.03.07. Causation Definition: The following term is included in the definition of the Peril as indicated:

**Storm Surge** is part of **Flood**

2.03.08. Time and Distance Limitations: In addition to the Limits of Liability shown elsewhere in this Policy, the following limitations apply:

| | |
|---|---|
| Located within 1 mile(s) of the Insured Location. | **ATTRACTION PROPERTY** |
| 30 day period for property within 3 mile(s) but not to exceed a $5,000,000 limit. | CIVIL OR MILITARY AUTHORITY |
| 60 day(s) | The actual Time Element loss sustained by the Insured arising out of the **Delay in Completion** |
| 12 months | GROSS EARNINGS |
| 365 day(s) | EXTENDED PERIOD OF LIABILITY |
| 30 day(s) but not to exceed a $7,000,000 limit. | **ORDINARY PAYROLL** |
| 30 day period but not to exceed a $100,000 limit. | IMPOUNDED WATER |

| | |
|---|---|
| 30 day period for property within 3 mile(s) but not to exceed a $5,000,000 limit. | INGRESS/EGRESS |
| **NCP** | INTERNATIONAL INTERDEPENDENCY |
| 30 day period but not to exceed a $5,000,000 limit per **Location.** | NEWLY ACQUIRED |
| $1,000,000 | PROTECTION AND PRESERVATION OF PROPERTY |
| **NCP** | RESEARCH AND DEVELOPMENT |
| Not to exceed a $100,000 limit, | INTERRUPTION BY COMMUNICABLE DISEASE |

2.03.09. Time Specifications: As follows:

| | |
|---|---|
| **EARTH MOVEMENT Occurrence** | 168 hours |
| **NAMED STORM Occurrence** | 72 hours |
| Cancellation for non-payment of premium | 10 days |
| Cancellation for any other reason | 45 days |

2.03.10. Valuation: As follows:

| **Finished Stock** | **Selling Price** |
|---|---|
| **Merchandise** that carries the Insured's brand or trade name | Replacement Cost |
| All other **Merchandise** | Replacement Cost |
| Vehicles | **Selling Price** |

## 2.04. QUALIFYING PERIOD

For the Coverages listed below the following **Qualifying Period** applies:

| | |
|---|---|
| OFF PREMISES SERVICE INTERRUPTION PROPERTY DAMAGE & TIME ELEMENT COVERAGE applies separately at each location. | 24 Hours |
| COMPUTER SYSTEMS DAMAGE COVERAGE | 48 Hours |
| TENANTS PROHIBITED ACCESS COVERAGE applies separately at each location. | 2 Days |
| NEW CONSTRUCTION AND ADDITIONS: **Delay in Completion** applies separately at each location. | 30 Days |
| CYBER EVENT COVERAGE | 48 Hours |

## 2.05. DEDUCTIBLES

Each claim for loss or damage as insured against arising out of any one (1) **Occurrence** shall be adjusted separately. The Company shall not be liable unless the Insured sustains loss or damage in excess of the deductible(s) stated below and then only for the proportionate share of such excess amount(s).

2.05.01. A deductible that applies on a per **Location** basis will apply separately to each **Location** where the physical loss or damage occurred regardless of the number of **Locations** involved in the **Occurrence**.

2.05.02. Unless stated otherwise, if two or more deductibles apply to an **Occurrence**, the total deducted will not exceed the largest applicable deductible. If two or more deductibles apply on a per **Location** basis in an **Occurrence,** the largest deductible applying to each **Location** will be applied separately to each such Location.

2.05.03. If separate Property Damage and Time Element loss deductibles are shown, then the deductibles shall apply separately.

2.05.04. When a "minimum deductible" per **Occurrence** is shown and is applicable to an **Occurrence**, the "minimum deductible" is the minimum dollar amount of covered damage that the Insured will retain in any one (1) **Occurrence**. The amount retained for purposes of applying the "minimum deductible" is the sum of:

2.05.04.01. the specified location deductible for each location where the amount of covered damage exceeds the specified location deductible; and

2.05.04.02. the amount of covered damage for each location where the amount of covered damage is less than specified location deductible.

2.05.05. Policy Deductible(s)

2.05.05.01. $150,000 combined Property Damage (PD) and Time Element (TE)

per **Occurrence** except as follows:

2.05.05.02. Exceptions to Policy Deductible(s)

2.05.05.02.01. Contingent Time Element

$150,000 per **occurrence** regardless of any other deductibles that may also apply.

2.05.05.02.02. Earthquake

The following deductibles apply to loss or damage caused by or resulting from Earthquake. This Earthquake deductible will apply regardless of any other deductibles that may also apply.

2.05.05.02.02.01 $150,000 combined Property Damage (PD) and Time Element (TE)

per **Location;**

2.05.05.02.03. Flood

The following deductibles apply to loss or damage caused by or resulting from **Flood.** This **Flood** deductible will apply regardless of any other deductibles that may also apply.

2.05.05.02.03.01. $150,000 combined Property Damage (PD) and Time Element (TE)

per **Location;**

2.05.05.02.04. Named Storm

The following deductibles apply to loss or damage caused by or resulting from **Named Storm**. The **Named Storm** deductible will apply regardless of any other deductibles that may also apply.

2.05.05.02.04.01. $150,000 combined Property Damage (PD) and Time Element (TE)

per **Location;**

2.05.05.02.05. Breakdown of Equipment Deductible(s)

2.05.05.02.05.01. $50,000 combined Property Damage (PD) and Time Element (TE) per **Occurrence** for loss or damage caused by **Breakdown**;

2.05.05.02.06. Water or Liquid Damage Deductible(s)

The following deductible applies to loss or damage caused by or resulting from covered water or other liquids not otherwise excluded, but not caused by **flood** or discharge in response to a fire.

2.05.05.02.06.01. $150,000 combined Property Damage (PD) and Time Element (TE) per **Location** for loss or damage caused by water or liquid damage;

2.05.05.02.07. Other Deductibles

Not Applicable

Authorized Representative

Date

Print Name of Authorized Rep.

Office

# SECTION III - PROPERTY DAMAGE

## 3.01. COVERED PROPERTY

This Policy insures the following property, unless otherwise excluded elsewhere in this Policy, located at an Insured Location or within 1,000 feet thereof or as otherwise provided for in this Policy.

3.01.01. The Insured's interest in buildings (or structures) including new construction, additions, alterations, and repairs that the Insured owns, occupies, leases or rents.

3.01.02. The Insured's interest in Personal Property, including **Improvements and Betterments**.

3.01.03. Property of Others will not extend any Time Element Coverage provided under this Policy to the owner of the property and is limited to property:

3.01.03.01. In the Insured's care, custody or control;

3.01.03.02. In which the Insured has an insurable interest or obligation;

3.01.03.03. For which the Insured is legally liable; or

3.01.03.04. For which the Insured has agreed in writing prior to any loss or damage to provide coverage.

3.01.04. Personal Property of officers and employees of the Insured.

## 3.02. PROPERTY NOT COVERED

This Policy does not insure the following property:

3.02.01. **Money**, precious metal in bullion form, notes, or **Securities**.

3.02.02. Watercraft or aircraft, except when unfueled and manufactured by the Insured.

3.02.03. Spacecraft, satellites, associated launch vehicles and any property contained therein.

3.02.04. Animals, standing timber and growing crops.

3.02.05. Bridges and tunnels when not part of a building or structure, dams, dikes, piers, wharfs, docks or bulkheads.

3.02.06. Land, water or any other substance in or on land; except this exclusion does not apply to:

3.02.06.01. **Land Improvements**, or

3.02.06.02. Water that is contained in any enclosed tank, piping system or any other processing equipment.

3.02.07. **Land Improvements** at a golf course.

3.02.08. Mines, mineshafts, caverns and any property contained therein.

3.02.09. Vehicles of officers and employees of the Insured or vehicles otherwise insured for physical loss or damage.

3.02.10. Transmission and distribution lines situated beyond 1,000 feet of the Insured Location.

3.02.11. Property in transit, except as otherwise provided by the Transit Coverage of this Policy.

3.02.12. Contraband or property in the course of illegal transit or trade.

3.02.13. Property more specifically insured, except for any excess beyond such more specific insurance limit.

3.02.14. Property sold by the Insured under conditional sale, trust agreement, installment plan or other deferred payment plan after delivery to customers except as provided by the Deferred Payments Coverage of this Policy.

3.02.15. **Electronic Data**, **Programs** and **Software**, except when they are **Stock in Process**, **Finished Stock**, **Raw Materials**, supplies or **Merchandise** or as otherwise provided by the Computer Systems Damage Coverage or **Valuable Papers and Records** Coverage of this Policy.

## 3.03. EXCLUSIONS

The following exclusions apply unless specifically stated elsewhere in this Policy:

3.03.01. This Policy excludes the following unless it results from direct physical loss or damage not excluded by this Policy.

3.03.01.01. **Contamination**, and any cost due to **Contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy, except as provided by the Radioactive Contamination Coverage of this Policy.

3.03.01.02. Changes in size, color, flavor, texture or finish.

3.03.01.03. Loss or damage arising from the enforcement of any law, ordinance, regulation or rule regulating or restricting the construction, installation, repair, replacement, improvement, modification, demolition, occupancy, operation or other use, or removal including debris removal of any property.

3.03.02. This Policy excludes:

3.03.02.01. Loss or damage arising from delay, loss of market, or loss of use.

3.03.02.02. Indirect or remote loss or damage.

3.03.02.03. Loss or damage arising from the interference by strikers or other persons with rebuilding, repairing or replacing property or with the resumption or continuation of the Insured's business.

3.03.02.04. Unexplained disappearance; mysterious disappearance; or shortage disclosed on taking inventory when the factual existence of such shortage is solely dependant on inventory records.

3.03.02.05. Loss or damage resulting from the Insured's suspension of business activities, except to the extent provided by this Policy.

3.03.02.06. Any applicable Special Coverage, **Described Cause of Loss**, or portion of coverage if a Limit of Liability is identified as **NCP** in Section II-Declarations.

3.03.03. This Policy excludes direct physical loss or damage directly or indirectly caused by or resulting from any of the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

3.03.03.01. Nuclear reaction or radiation, any by-product of nuclear reaction, any radiological material or radioactive contamination however caused; but if direct physical loss of or damage to Covered Property by fire or sprinkler leakage results, the Company will pay for the loss or damage caused by the fire or sprinkler leakage.

3.03.03.02. War, invasion, act of foreign enemy, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power, nationalization, confiscation, requisition, seizure or destruction by the government or any public authority, including action in hindering, combating or defending against any of these. However, destruction by order of governmental or public authority to prevent spread of fire is covered.

3.03.03.03. Any weapon of war or of mass destruction employing biological or chemical warfare, atomic fission, atomic fusion, radioactive force or radioactive material, whether in time of peace or war regardless of who commits the act.

3.03.03.04. Dishonest, fraudulent or criminal acts by the Insured or any of the Insured's associates, proprietors, partners, officers, employees, directors, trustees or authorized representatives.

This exclusion does not apply to acts of direct physical loss or damage resulting from a **Covered Cause of Loss** intentionally caused by any individual specified above and done without the knowledge of the Insured. In no event does this Policy cover loss caused by theft by any individual above.

3.03.03.05. Lack of the following services when caused by an event off the Insured Location (except as provided in Off Premises Service Interruption Property Damage and Time Element Coverage of this Policy). However, if the lack of any of the following services results in a **Covered Cause of Loss**, this exclusion does not apply to the loss or damage caused by the **Covered Cause of Loss**.

3.03.03.05.01. Incoming electricity, fuel, water, gas, steam, refrigerant;

3.03.03.05.02. Outgoing sewage; or

3.03.03.05.03. Incoming or outgoing voice, data or video.

3.03.04. This Policy excludes the following but any resulting physical damage not otherwise excluded is insured:

3.03.04.01. Faulty, inadequate or defective design, specifications, workmanship, construction or materials used**.**

3.03.04.02. Loss or damage to stock or material attributable to manufacturing or processing operations while such stock or material is being processed, manufactured, tested or otherwise worked on.

3.03.04.03. Corrosion, depletion, deterioration, erosion, inherent vice, latent defect, rust, wear and tear.

3.03.04.04. Changes of temperature (except to machinery or equipment) or changes in relative humidity, all whether atmospheric or not.

3.03.04.05. Settling, cracking, shrinking, bulging or expansion of: foundations (including any pedestal, pad, platform or other property supporting machinery), floors, pavements, walls, ceilings or roofs.

3.03.04.06. Insects, animals or vermin damage.

3.03.04.07. Cumulative effects of smog, smoke, vapor, liquid and dust.

# SECTION IV - TIME ELEMENT

## 4.01. LOSS INSURED

4.01.01. The Company will pay for the actual Time Element loss the Insured sustains, as provided in the Time Element Coverages, during the Period of Liability. The Time Element loss must result from the necessary **Suspension** of the Insured's business activities at an Insured Location. The **Suspension** must be due to direct physical loss of or damage to Property (of the type insurable under this Policy other than **Finished Stock**) caused by a **Covered Cause of Loss** at the **Location**, or as provided in Off Premises Storage for Property Under Construction Coverages.

The Company will also pay for the actual Time Element loss sustained by the Insured, during the Period of Liability at other Insured Locations. The Time Element loss must result from the necessary **Suspension** of the Insured's business activities at the other Insured Locations. Such other Location must depend on the continuation of business activities at the **Location** that sustained direct physical loss or damage caused by a **Covered Cause of Loss**.

4.01.02. There is recovery only to the extent that the Insured is:

4.01.02.01. unable to make up lost production within a reasonable period of time not limited to the period during which production is **Suspended;**

4.01.02.02. unable to continue such operations or services during the Period of Liability; and

4.01.02.03. able to demonstrate a loss of revenue for the operations, services or production **Suspended**.

4.01.03. The Company insures Time Element loss only to the extent it cannot be reduced by:

4.01.03.01. The Insured resuming business activities in whole or part;

4.01.03.02. Using damaged or undamaged property (including **Raw Stock, Stock in Process** or **Finished Stock**) at the Insured Location or elsewhere;

4.01.03.03. Using the services or property of others;

4.01.03.04. Working extra time or overtime; or

4.01.03.05. The use of other **Locations** not covered under this Policy.

4.01.03.06. Any amount recovered under property damage coverage at selling price for loss or damage to **Merchandise**.

4.01.04. The Company will include in any calculation the combined operating results of all Insured Locations in determining the Time Element loss.

4.01.05. In determining the Time Element loss, the Company will evaluate the experience of the business before and after the loss or damage and the probable experience had no direct physical loss or damage occurred at an Insured Location during the Period of Liability.

## 4.02. TIME ELEMENT COVERAGES

### 4.02.01. GROSS EARNINGS

4.02.01.01. Gross Earnings loss is the actual loss sustained by the Insured during the Period of Liability.

4.02.01.02. Gross Earnings value is determined as follows:

4.02.01.02.01. The sum of:

4.02.01.02.01.01. Total net sales value of production;

4.02.01.02.01.02. Total net sales of **Merchandise**;

4.02.01.02.01.03. The rental income; and

4.02.01.02.01.04. Other income derived from the Insured's business activities.

4.02.01.02.02. Less the cost of the following:

4.02.01.02.02.01. **Raw Stock** from which production is derived;

4.02.01.02.02.02. Supplies consisting of materials consumed directly in conversion of **Raw Stock** into **Finished Stock** or in supplying the service(s) sold by the Insured;

4.02.01.02.02.03. **Merchandise** sold, including related packaging materials; and

4.02.01.02.02.04. Service(s) purchased from outsiders (not Insured's employees) for resale, which do not continue under contract.

4.02.01.02.03. Gross Earnings loss is determined as follows:

Gross Earnings value that would have been earned during the Period of Liability, less charges and expenses that do not necessarily continue during the Period of Liability.

Consideration shall be given to the continuation of normal charges and expenses, including **Ordinary Payroll** for the number of consecutive days as stated in the Declarations but not to exceed the limit shown for **Ordinary Payroll**, to the extent necessary to resume the Insured's business activities with the same quality of service that existed immediately preceding the loss.

4.02.01.02.04. This Policy will also pay the reasonable and necessary expenses incurred (except the cost to extinguish a fire) by the Insured to reduce the amount of Gross Earnings loss during the Period of Liability. This Policy will pay for such expenses to the extent that they do not exceed the amount of Gross Earnings loss that otherwise would have been payable. This provision will not pay for the cost of permanent repair or replacement of property that has suffered direct physical loss or damage.

4.02.01.02.05. This Policy will also pay the increased tax liability incurred by the Insured due to the profit portion of a Gross Earnings loss payment being greater than the tax liability incurred on the profits that would have been earned had no loss occurred.

## 4.02.02. EXTENDED PERIOD OF LIABILITY

Upon the termination of the coverage for Gross Earnings loss under 4.02.01.01. this Policy will continue to pay the actual Gross Earnings loss sustained by the Insured until the earlier of:

4.02.02.01. The date the Insured could restore its business with due diligence, to the condition that would have existed had no direct physical loss or damage occurred to the Insured's Covered Property; or

4.02.02.02. The number of consecutive days as stated in the Declarations

4.02.02.03. Exclusion 4.02.05.01.02.01. is deleted during the Extended Period of Liability and is replaced with:

4.02.05.01.02.01. A reduction in sales after the Extended Period of Liability ends due to suspension, cancellation or lapse of any lease, contract, license or orders.

## 4.02.03. EXTRA EXPENSE

The Company will pay for the reasonable and necessary Extra Expenses incurred by the Insured, during the Period of Liability**,** to resume and continue as nearly as practicable the Insured's normal business activities that otherwise would be necessarily suspended, due to direct physical loss of or damage caused by a **Covered Cause of Loss** to Property of the type insurable under this policy at a **Location**.

The Company will reduce the amount payable as Extra Expense by the fair market value remaining at the end of the Period of Liability for property obtained in connection with the above.

Extra Expenses mean that amount spent to continue the Insured's business activities over and above the expenses the Insured would have normally incurred had there been no direct physical loss of or damage caused by a **Covered Cause of Loss** to Property of the type insurable under this policy at a **Location**. Extra Expense does not include any Gross Earnings loss, the cost of permanent repair or replacement of property that has suffered direct physical loss or damage, or expenses otherwise payable elsewhere in the Policy.

## 4.02.04. LEASEHOLD INTEREST

The Company will pay for the actual Leasehold Interest loss incurred by the Insured (as lessee) resulting from direct physical loss of or damage caused by a **Covered Cause of Loss** to a building (or structure) which is leased and not owned by the Insured, as follows:

4.02.04.01. If the building (or structure) becomes wholly untenantable or unusable and the lease agreement requires continuation of the rent, the Company will pay the Insured the present value of the actual rent payable for the unexpired term of the lease, not including any options;

4.02.04.02. If the building (or structure) becomes partially untenantable or unusable and the lease agreement requires continuation of the rent, the Company will pay the Insured for the present value of the proportionate amount of the actual rent payable for the unexpired term of the lease, not including any options; or

4.02.04.03. If the lease is cancelled by the lessor pursuant to the terms of the lease agreement or by operation of law, this Policy will pay the Insured for their **Lease Interest** for the first three (3) months following the loss or damage and for their **Net Lease Interest** for the remaining unexpired term of the lease.

4.02.04.04. The Insured must use any suitable property or service owned, controlled, or obtainable from any source to reduce the loss.

4.02.04.05. In addition to the exclusions elsewhere in this Policy, the Leasehold Interest Coverage excludes:

4.02.04.05.01. Any increase in the Leasehold Interest loss resulting from the suspension, lapse or cancellation of any lease;

4.02.04.05.02. Any loss from the Insured exercising an option to cancel the lease; or

4.02.04.05.03. Any loss from an act or omission by the Insured that constitutes default under the lease.

## 4.02.05. EXCLUSIONS

In addition to the exclusions elsewhere in this Policy, the following exclusions apply to Time Element Coverage;

4.02.05.01. This Policy does not insure against:

4.02.05.01.01. Any loss during any idle period that would have been experienced had the **Suspension** of business activities not occurred. This includes, but is not limited to, when production, operation, services, delivery or receipt of goods or services or any other business activities would have ceased, or would not have taken place or would have been prevented due to:

4.02.05.01.01.01. Planned or rescheduled shutdown;

4.02.05.01.01.02. Strikes or other work stoppage; or

4.02.05.01.01.03. Any reason other than physical loss or damage insured by this Policy.

4.02.05.01.02. Any increase in Time Element loss due to:

4.02.05.01.02.01. Suspension, cancellation or lapse of any lease, contract, license or orders;

4.02.05.01.02.02. Fines or damages for breach of contract or for late or non-completion of orders;

4.02.05.01.02.03. Penalties of any nature; or

4.02.05.01.02.04. Any other consequential or remote factors.

4.02.05.01.03. Any loss resulting from loss or damage to **Finished Stock**, nor the time required for their reproduction.

4.02.05.01.04. Any Time Element loss due to physical loss or damage not insured by this Policy on or off of the Insured Location.

However, in the event that a **Suspension** is due to a **Covered Cause of Loss** and during such **Suspension** a loss that is otherwise excluded occurs, the Company will pay for the Time Element loss which is directly caused by the **Covered Cause of Loss** to Covered Property under this Policy.

4.02.05.01.05. Any Time Element loss resulting from damage to Property of Others; however this exclusion does not apply to Time Element loss suffered by the Insured as a direct result of the damage to Property of Others.

# 4.03. PERIOD OF LIABILITY

4.03.01. The Period of Liability applying to all Time Element Coverages, except Leasehold Interest, and as shown below or if otherwise provided under any Special Coverage, and subject to any Time Limit provided in 2.03.08., is as follows:

4.03.01.01. For building and equipment: The period starting from the time of physical loss or damage of the type insured against and ending when with due diligence and dispatch the building and equipment could be repaired or replaced, and made ready for operations under the same or equivalent physical and operating conditions that existed prior to the damage. The expiration of this Policy will not limit the Period of Liability.

4.03.01.02. For building and equipment under construction: The equivalent of the above period of time will be applied to the level of business that reasonably would have been achieved after construction and startup would have been completed had there been no direct physical loss or damage. Due consideration will be given to the actual experience of the business after completion of the construction and startup.

4.03.01.03. For **Stock in Process** and **Merchandise**: The period of time required with the exercise of due diligence and dispatch to restore **Stock in Process** to the same state of manufacture in which it stood at the inception of the interruption of production or suspension of business operations or services and to replace physically damaged **Merchandise**.

4.03.01.04. For **Raw Materials** and supplies: The period of time of actual interruption of production or suspension of operations or services resulting from the inability to get suitable **Raw Materials** and supplies to replace **Raw Materials** and supplies damaged, but limited to that period for which the damaged **Raw Materials** and supplies would have supplied operating needs.

4.03.02. The Period of Liability applying to all Time Element Coverage, except Leasehold Interest, or if otherwise provided under any Special Coverage, and subject to any Time Limit provided in 2.03.08., does not include any additional time due to the Insured's inability to resume operations for any reason, including but not limited to:

4.03.02.01. Making changes to equipment;

4.03.02.02. Making changes to the buildings or structures except as provided in the Increased Costs of Construction Coverage of the Special Coverages section; or

4.03.02.03. Re-staffing or retraining employees.

# SECTION V - SPECIAL COVERAGES & DESCRIBED CAUSES OF LOSS

## 5.01. OPERATION OF SPECIAL COVERAGES & **DESCRIBED CAUSES OF LOSS**:

5.01.01. Special Coverages & **Described Causes of Loss** are subject to the applicable Limit of Liability and are included within and will not increase the Policy Limit.

5.01.02. Special Coverages & **Described Causes of Loss** are subject to the Policy provisions, including applicable exclusions and deductibles, all as shown in this section and elsewhere in this Policy, whether or not a Limit of Liability is shown.

5.01.03. If coverage is afforded under any Special Coverage or **Described Cause of Loss**, the applicable Limit of Liability for that Special Coverage or **Described Cause of Loss** is the most the Company will pay for all the loss or damage described therein even if coverage would otherwise be available under any other part of this Policy.

5.01.04. If no Limit of Liability is shown in this Policy, the Limit of Liability for that Special Coverage or **Described Cause of Loss** is part of the Policy Limit.

5.01.05. If **NCP** is shown for any Special Coverage or **Described Cause of Loss** in this Policy, then no coverage is provided for that Special Coverage or **Described Cause of Loss**.

5.01.06. If two or more Limits of Liability apply to a claim for loss or damage, or some part thereof, the lesser applicable Limit of Liability shall apply to the claim, or to the part thereof.

5.01.07. The Company will pay no more in any one (1) **Occurrence** than our proportionate share of any applicable Limit of Liability regardless of the number of **Locations** affected by such **Occurrence** and regardless of whether additional or greater limits would otherwise be available under any other part of this Policy.

5.01.08. Any **Annual Aggregate** limit is the most the Company will pay in the **Policy Year** regardless of the number of **Occurrences**.

5.01.09. In the event of loss or damage involving any one or more of the following Special Coverage or **Described Causes of Loss**, the Company will pay no more for the total of all such coverage combined than our proportionate share of the Policy Limit.

## 5.02. DESCRIPTION OF SPECIAL COVERAGES

### 5.02.01. ACCOUNTS RECEIVABLE

. The Company will pay for the actual loss sustained resulting from direct physical loss of or damage caused by a **Covered Cause of Loss** to the Insured's accounts receivable records as respects the following:

5.02.01.01. All sums due the Insured from customers, provided the Insured is unable to collect these sums as a result of direct physical loss or damage to accounts receivable records;

5.02.01.02. Interest charges on any loan obtained by the Insured to offset impaired collections resulting from direct physical loss of or damage to accounts receivable records but only for such period of time reasonable and necessary for the Insured to resume normal collections;

5.02.01.03. Necessary collection expense in excess of normal collection cost due to direct physical loss of or damage to accounts receivable records; and

5.02.01.04. Other expenses, when reasonably incurred by the Insured in re-establishing accounts receivable records following direct physical loss of or damage to accounts receivable records.

5.02.01.05. For the purpose of this insurance, credit card charge records shall be deemed to represent sums due the Insured from customers, until the charge records are delivered to the credit card company.

5.02.01.06. When there is proof that direct physical loss of accounts receivable records has occurred and the Insured cannot accurately establish the total amount of accounts receivable outstanding as of the date of loss, the amount payable shall be computed as follows:

5.02.01.06.01. The monthly average of accounts receivable during the last available twelve (12) months; the reasonable and necessary collection expenses in excess of normal collection costs due to direct physical loss of or damage to accounts receivable records; and the reasonable and necessary expenses incurred in reestablishing accounts receivable records following direct physical loss or damage, shall be adjusted in accordance with the percentage increase or decrease in the twelve (12) months average of monthly gross revenues which may have occurred in the interim.

5.02.01.06.02. The monthly amount of accounts receivable as established in 5.02.01.06.01.above shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred. Consideration will also be given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

5.02.01.06.03. The Company shall deduct from the total amounts of account receivable, the amount of accounts evidenced by records not lost or damaged, or otherwise established or collected by the Insured, and an amount to allow for probable bad debts which the Insured normally would have been unable to collect and for the normal collection costs incurred due to accounts receivable.

5.02.01.07. The following additional exclusion applies:

This Coverage does not insure against shortage resulting from bookkeeping, accounting, billing errors or omissions, alteration, falsification, manipulation, concealment, destruction or disposal of accounts receivable records committed to conceal the wrongful giving, taking, obtaining or withholding of money, securities or other property; but only to the extent of such wrongful giving, taking, obtaining or withholding.

## 5.02.02. **AMMONIA CONTAMINATION**

In the event of direct physical loss of or damage to Covered Property caused by a **Breakdown** of **Covered Equipment** at a **Scheduled Location**, the Company will pay for resulting **Ammonia Contamination**.

## 5.02.03. CIVIL OR MILITARY AUTHORITY

The Company will pay for the actual Time Element loss sustained by the Insured, as provided by this Policy, resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if the **Suspension** is caused by order of civil or military authority that prohibits access to the **Location**. That order must result from a civil authority's response to direct physical loss of or damage caused by a **Covered Cause of Loss** to property not owned, occupied, leased or

rented by the Insured or insured under this Policy and located within the distance of the Insured's Location as stated in the Declarations. The Company will pay for the actual Time Element loss sustained, subject to the deductible provisions that would have applied had the physical loss or damage occurred at the Insured Location, during the time the order remains in effect, but not to exceed the number of consecutive days following such order as stated in the Declarations up to the limit applying to this Coverage.

5.02.04. COMPUTER SYSTEMS DAMAGE

The Company will pay for direct physical loss of or damage to the Insured's **Electronic Data**, **Programs**, **Software** and the actual Time Element loss sustained, as provided by this Policy, during the **Period of Interruption** directly resulting from mysterious disappearance of code, any failure, malfunction, deficiency, deletion, fault, **Computer Virus** or corruption to the Insured's **Electronic Data**, **Programs**, **Software** at an Insured Location. The Company will also pay for such loss or damage that may arise out of or result from any authorized or unauthorized access in, of, or to any computer, communication system, file server, networking equipment, computer system, computer hardware, data processing equipment, computer memory, microchip, microprocessor, integrated circuit or similar device.

This Coverage will only apply when the **Period of Interruption** exceeds the time shown as **Qualifying Period** in the **Qualifying Period** clause of the Declarations section. If the **Qualifying Period** is exceeded, then this Policy will pay for the amount of loss in excess of the Policy Deductible, but not more than the limit applying to this Coverage.

5.02.04.01. The following additional exclusions apply:

5.02.04.01.01. The Company will not pay for any loss or damage to **Electronic Data**, **Programs** or **Software** when they are **Raw Stock**, **Stock in Process**, **Finished Stock** manufactured by the Insured, and supplies or other **Merchandise**.

5.02.04.01.02. Errors or omissions in processing or copying, except when direct physical loss or damage caused by a **Covered Cause of Loss** results. Then only that resulting damage is covered.

5.02.04.01.03. Loss or damage to **Electronic Data**, **Programs** or **Software** from errors or omissions in programming or machine instructions.

5.02.05. CONTINGENT TIME ELEMENT

This Policy covers the actual Time Element loss as provided by the Policy, sustained by the Insured during the Period of Liability directly resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if the **Suspension** results from direct physical loss of or damage caused by a **Covered Cause of Loss** to Property (of the type insurable under this Policy) at **Direct Dependent Time Element Locations, Indirect Dependent Time Element Locations,** and **Attraction Properties** located worldwide, except for in the following:

Afghanistan, Albania, Algeria, Angola, Armenia, Azerbaijan, Belarus, Benin, Botswana, Burkina -Faso, Burundi, Cameroon, Cape Verde, Central African Republic, Chad, Comoros, Republic of Congo, Democratic Republic of the Congo, Cuba, Djibouti, Equatorial Guinea, Eritrea, Ethiopia, Gabon, Gambia, Ghana, Guinea, Guinea-Bissau, Georgia, Haiti, Iran, Iraq, Ivory Coast, Kazakhstan, Kampuchea (Cambodia), Kenya, Kyrgyzstan(Kyrgyz Republic), Laos, Lebanon, Lesotho, Liberia, Libya, Macedonia, Madagascar, Malawi, Mali, Mauritania, Mayotte, Mongolia, Montenegro, Mozambique, Myanmar (Burma), Namibia, Niger, Nigeria, North Korea, Pakistan, Palestine, Reunion, Rwanda, Sao Tomé and Principé, Senegal, Serbia, Sierra Leone, Somalia, Sri

Lanka, Southern Sudan, Sudan, Swaziland, Syria, Tajikistan, Tanzania, Tibet, Togo, Turkmenistan, Uganda, Uzbekistan, Western Sahara, Yemen, Zambia, Zimbabwe; or

Any other country where prohibited by United States law or where trade relations are unlawful as determined by the Government of the United States of America or its agencies.

5.02.05.01. As respects Contingent Time Element:

5.02.05.01.01. The Insured will influence and cooperate with the **Direct Dependent Time Element Locations, Indirect Dependent Time Element Locations,** and **Attraction Properties** in every way and take any reasonable and necessary action, including the use of other machinery, supplies or locations, to mitigate the loss payable hereunder.

5.02.05.01.02. In determining the indemnity payable hereunder, the Company will consider the amount of income derived before the date of physical loss or damage and the probable amount of income after the date of loss or damage.

5.02.05.01.03. 4.02.05.01.03. does not apply.

5.02.05.02. Any Time Element loss directly or indirectly caused by or resulting from any **Terrorist Activity** regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss is excluded when the **Direct Dependent Time Element Locations**, **Indirect Dependent Time Element Locations**, and **Attraction Properties** is outside of the USA, its territories, possessions and missions, and the Commonwealth of Puerto Rico.

5.02.05.03. As respects **Indirect Dependent Time Element Locations** and **Attraction Properties** any Time Element loss resulting from physical loss or damage caused by or resulting from Earthquake, **Flood**, or **Named Storm** regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss is excluded.

## 5.02.06. DEBRIS REMOVAL

This Policy covers the reasonable and necessary costs incurred to demolish and remove debris of property from an Insured Location that remains following direct physical loss or damage resulting from a **Covered Cause of Loss**. This includes the cost to demolish the physically undamaged portion of such property insured due to the enforcement of any law or ordinance regulating the demolition, construction, repair, replacement or use of buildings or structures at an Insured Location.

5.02.06.01. This Coverage does not insure the costs to remove:

5.02.06.01.01. Property Not Covered that is **Contaminated**; or

5.02.06.01.02. The **Contaminant** in or on Property Not Covered, whether or not the **Contamination** results from direct physical loss or damage caused by a **Covered Cause of Loss**. This Coverage shall cover the costs of removal of **contaminated** Covered Property or the **Contaminant** in or on Covered Property only if the **Contamination**, due to the actual not suspected presence of **Contaminant(s)**, of the debris resulted from direct physical loss or damage caused by a **Covered Cause of Loss**.

5.02.07. DECONTAMINATION COSTS

If Covered Property is **Contaminated** from direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property and there is in force at the time of the loss any law or ordinance regulating **Contamination** due to the actual not suspected presence of **Contaminant(s)**, then this Policy covers, as a direct result of enforcement of such law or ordinance, the increased cost of decontamination and/or removal of such **Contaminated** Covered Property in a manner to satisfy such law or ordinance. This Coverage applies only to that part of Covered Property so **Contaminated** due to the actual not suspected presence of **Contaminant(s)** as a result of direct physical loss or damage. The Company is not liable for the costs required for removing **Contaminated** uninsured property nor the **Contaminant** therein or thereon, whether or not the **Contamination** results from a **Covered Cause of Loss**.

5.02.08. DEFERRED PAYMENTS

This Policy will pay for direct physical loss of or damage caused by a **Covered Cause of Loss**, to Personal Property (of the type insurable under this Policy). Such property must be sold by the Insured under a conditional sale, trust agreement, or installment or deferred payment plan. Such property must have been delivered to the buyer. Coverage is limited to the unpaid balance for such property.

In the event of loss to property sold under deferred payment plans, the Insured will use all reasonable efforts, including legal action, if necessary, to collect outstanding amounts due or to regain possession of the property.

5.02.08.01. Under this Coverage the Policy excludes loss or damage:

5.02.08.01.01. Pertaining to products recalled including, but not limited to, the costs to recall, test or to advertise such recall by the Insured;

5.02.08.01.02. From theft or conversion by the buyer of the property after the buyer has taken possession of such property;

5.02.08.01.03. To the extent the buyer continues payments; or

5.02.08.01.04. Not within the covered Territory of this Policy.

5.02.09. ERRORS AND OMISSIONS

The Company will pay for direct physical loss of or damage caused by a **Covered Cause of Loss** to property which is not payable under this Policy because of an error or unintentional omission at the time of Policy inception in the description or inclusion of any **Location** owned, occupied, leased or rented by the Insured to be Covered Property; but only to the extent this Policy would have provided coverage had the error or unintentional omission not been made.

The Policy also covers the actual Time Element loss sustained by the Insured, during the Period of Liability resulting from the necessary **Suspension** of the Insured's business activities at that **Location**, if the **Suspension** is caused by direct physical loss of or damage caused by a **Covered Cause of Loss** to such Property.

The Insured must report any error or unintentional omission as soon as possible.

5.02.09.01. This Coverage does not apply:

5.02.09.01.01. If there is coverage available under Newly Acquired Coverage or Miscellaneous Unnamed Locations Coverage of this Policy; or

5.02.09.01.02. For any error or omission in limits or deductibles.

## 5.02.10. EXPEDITING COSTS

This Policy covers the reasonable and necessary costs incurred to pay for the temporary repair of direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property and to expedite the permanent repair or replacement of such damaged property.

This Coverage excludes costs recoverable elsewhere in this Policy, or of permanent repair or replacement of damaged property.

## 5.02.11. FINE ARTS

The Company will pay for direct physical loss of or damage caused by a **Covered Cause of Loss** to **Fine Arts** at an Insured Location.

5.02.11.01. This Policy excludes loss or damage to **Fine Arts** directly or indirectly caused by or resulting from the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

5.02.11.01.01. Breakage of bric-a-brac, glassware, marble, porcelain, statuary, and similar fragile property resulting from the article being dropped or knocked over, whether intentional or accidental;

5.02.11.01.02. Any repairing, restoring or retouching process; or

5.02.11.01.03. Any pre-existing condition.

## 5.02.12. FIRE DEPARTMENT SERVICE CHARGE

The Company will pay for the reasonable additional expenses, resulting from costs of fire extinguishing materials expended, incurred by the Insured when the Fire Department is called to save or protect Covered Property from a **Covered Cause of Loss** at an Insured Location. The Fire Department Service Charges are those assumed by contract or agreement prior to loss or damage or required by local ordinance.

## 5.02.13. IMPOUNDED WATER

The Company will pay for the actual Time Element loss as provided by this Policy, sustained by the Insured during the Period of Liability resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if the **Suspension** is caused by the lack of a supply of water from a water supply stored behind dams or in reservoirs on the Insured Location. The water supply must be used as a **Raw Material** or for generation of power or for other manufacturing purposes. The inadequate supply of water must result from the release of the water from the water supply and be caused by direct physical loss of or damage caused by a **Covered Cause of Loss** to the dam, reservoir, or connected equipment. The Company will pay for the actual Time Element loss sustained, in excess of the applicable deductible, but not to exceed the number of consecutive days as stated in the Declarations after the damaged dam, reservoir or connected equipment has been repaired or replaced, with the exercise of due diligence and dispatch, up to the limit applying to this Coverage.

5.02.14. INCREASED COST OF CONSTRUCTION

5.02.14.01. This Policy covers the reasonable and necessary costs incurred, described in 05.02.14.03., to satisfy the minimum requirements of the enforcement of any law or ordinance regulating the demolition, construction, repair, replacement or use of buildings or structures at an Insured Location, provided:

5.02.14.01.01. Such law or ordinance is in force on the date of direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property; and

5.02.14.01.02. Its enforcement is a direct result of direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property.

5.02.14.02. This Coverage does not cover loss due to any law or ordinance with which the Insured was required to comply before the loss, even when the building was undamaged, and the Insured did not comply.

5.02.14.03. This Coverage, as respects the property insured in 5.02.14.01., covers:

5.02.14.03.01. The increased cost to repair or rebuild the physically damaged portion of such property with materials and in a manner to satisfy such law or ordinance; and

5.02.14.03.02. The increased cost to rebuild physically undamaged property that has been demolished with materials and in a manner to satisfy such law or ordinance, to the extent that such costs result when the demolition of the insured property is required to satisfy such law or ordinance.

5.02.14.03.03. This Coverage applies only to the costs described in 5.02.14.03. The portion of the cost to repair, rebuild or replace property with property of like kind and quality is not part of this Coverage and is to be considered direct physical loss of or damage under 1.01.

5.02.14.04. This Coverage excludes any costs incurred as a direct or indirect result of enforcement of any laws or ordinances regulating any form of **Contamination**.

5.02.14.05. The Company's maximum liability for this Coverage in any **Occurrence** will not exceed the actual cost incurred in 5.02.14.03. up to the limit applying to this Coverage.

5.02.15. INGRESS/EGRESS

The Company will pay for the actual Time Element loss sustained by the Insured, as provided by this Policy, resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if ingress or egress to that Insured Location by the Insured's suppliers, customers or employees is prevented by physical obstruction due to direct physical loss of or damage caused by a **Covered Cause of Loss** to property not owned, occupied, leased or rented by the Insured or insured under this Policy and located within the distance of the Insured Location as stated in the Declarations. The Company will pay for the actual Time Element loss sustained, subject to the deductible provisions that would have applied had the physical loss or damage occurred at the Insured Location, during the time ingress or egress remains prevented by physical obstruction but not to exceed the number of consecutive days as stated in the Declarations following such obstruction up to the limit applying to this Coverage.

5.02.16. INTERNATIONAL INTERDEPENDENCY

The Company will pay for the actual Time Element loss sustained by the Insured, as provided by this Policy, resulting from the necessary suspension of the Insured's business activities at an Insured Location, if the suspension is caused by direct physical loss of or damage to Property (of

the type insurable under this Policy other than **Finished Stock**) caused by a **Covered Cause of Loss** at a **Location**, that would be an Insured Location if it were located in the Coverage Territory of this Policy.

The **Location** that sustains direct physical loss or damage cannot be located within the Coverage Territory of this Policy and is located anywhere in the world, except for:

Afghanistan, Albania, Algeria, Angola, Armenia, Azerbaijan, Belarus, Benin, Botswana, Burkina -Faso, Burundi, Cameroon, Cape Verde, Central African Republic, Chad, Comoros, Republic of Congo, Democratic Republic of the Congo, Cuba, Djibouti, Equatorial Guinea, Eritrea, Ethiopia, Gabon, Gambia, Ghana, Guinea, Guinea-Bissau, Georgia, Haiti, Iran, Iraq, Ivory Coast, Kazakhstan, Kampuchea (Cambodia), Kenya, Kyrgyzstan(Kyrgyz Republic), Laos, Lebanon, Lesotho, Liberia, Libya, Macedonia, Madagascar, Malawi, Mali, Mauritania, Mayotte, Mongolia, Montenegro, Mozambique, Myanmar (Burma), Namibia, Niger, Nigeria, North Korea, Pakistan, Palestine, Reunion, Rwanda, Sao Tomé and Principé, Senegal, Serbia, Sierra Leone, Somalia, Sri Lanka, Southern Sudan, Sudan, Swaziland, Syria, Tajikistan, Tanzania, Tibet, Togo, Turkmenistan, Uganda, Uzbekistan, Western Sahara, Yemen, Zambia, Zimbabwe; or

Any other country where prohibited by United States law or where trade relations are unlawful as determined by the Government of the United States of America or its agencies.

The Insured Location must depend on the continuation of business activities at the **Location** that sustained direct physical loss or damage caused by a **Covered Cause of Loss**. The Company will pay for the actual Time Element loss sustained, in excess of the Policy Deductible, but not to exceed the number of consecutive days following such suspension as stated in the Declarations up to the limit applying to this Coverage.

5.02.16.01. Any Time Element loss directly or indirectly caused by or resulting from any **Terrorist Activity** regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss is excluded when the **Location**, that would be an Insured Location if it were located in the Coverage Territory of this Policy is outside of the USA, its territories, possessions and missions, and the Commonwealth of Puerto Rico.

## 5.02.17. LAND AND WATER CONTAMINANT CLEANUP, REMOVAL AND DISPOSAL

This Policy covers the reasonable and necessary cost for the cleanup, removal and disposal of the actual not suspected presence of **Contaminant**(s) from uninsured property consisting of land, water or any other substance in or on land at the Insured Location if the release, discharge or dispersal of such **Contaminant**(s) is a result of direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property.

5.02.17.01. This Policy excludes the cost to cleanup, remove and dispose of **Contaminant**(s) from such property:

5.02.17.01.01. At any **Location** where the building or structure is not insured by this Policy;

5.02.17.01.02. At any property insured under Newly Acquired, Errors and Omissions or Miscellaneous Unnamed Location Coverage provided by this Policy; or

5.02.17.01.03. When the Insured fails to give written notice of loss to the Company within 180 days after inception of the loss.

## 5.02.18. LAND IMPROVEMENTS

The Company will pay for the additional cost of reclaiming, restoring or repairing **Land Improvements** resulting from direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property at an Insured Location.

5.02.18.01. As respects lawns, plants, shrubs or trees direct physical loss or damage directly or indirectly caused by or resulting from Earthquake, **Flood**, or **Named Storm** regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss is excluded.

## 5.02.19. MISCELLANEOUS PERSONAL PROPERTY

The Company will pay for direct physical loss of or damage caused by a **Covered Cause of Loss** to the following property while within the coverage territory but away from an Insured Location.

5.02.19.01. The Insured's interest in Personal Property; and

5.02.19.02. Property of Others that is:

5.02.19.02.01. In the Insured's care, custody or control;

5.02.19.02.02. In which the Insured has an insurable interest or obligation;

5.02.19.02.03. For which the Insured is legally liable; or

5.02.19.02.04. For which the Insured has agreed in writing prior to any loss or damage to provide coverage.

5.02.19.02.05. This Coverage excludes property in transit or insured under any other coverage in this Policy.

## 5.02.20. MISCELLANEOUS UNNAMED LOCATIONS

5.02.20.01. The Company will pay for:

5.02.20.01.01. Direct physical loss of or damage caused by a **Covered Cause of Loss** at a **Miscellaneous Unnamed Location**; and

5.02.20.01.02. The actual Time Element loss sustained by the Insured, during the Period of Liability, resulting from the **Suspension** of the Insured's business activities if such **Suspension** is caused by direct physical loss or damage caused by a **Covered Cause of Loss**;

5.02.20.02. To the following:

5.02.20.02.01. Covered Property at a **Miscellaneous Unnamed Location** that has been reported to the Insurer, but agreed by the Insurer not to be scheduled;

5.02.20.02.02. Covered Property at a **Miscellaneous Unnamed Location** that has not been reported to the Insurer and is under the Insured's care, custody and control; or

5.02.20.02.03. Covered Property at a **Miscellaneous Unnamed Location** that has not been reported to the Insurer and is not under the Insured's care, custody and control.

5.02.20.03. This Coverage will not apply for loss or damage that is payable under any other provision in this Policy.

5.02.21. NEWLY ACQUIRED

The Company will pay for direct physical loss of or damage caused by a **Covered Cause of Loss** to property (of the type insurable under this Policy), at any **Location** purchased, leased or rented by the Insured after the inception date of this Policy. This Coverage applies from the date of purchase, lease or rental. The Policy also covers the actual Time Element loss sustained by the Insured, during the Period of Liability resulting from the necessary **Suspension** of the Insured's business activities at that **Location**, if the **Suspension** is caused by direct physical loss of or damage caused by a **Covered Cause of Loss** to such Property (other than **Finished Stock**).

The Coverage provided above will end at the earliest of: the Policy expiration, the number of consecutive days as stated in the Declarations after the Insured first acquired an interest in the Covered Property, or when the Insured reports the **Location** to the Insurer.

5.02.22. OFF PREMISES SERVICE INTERRUPTION PROPERTY DAMAGE AND TIME ELEMENT LOSS

The Company will pay for direct physical loss of or damage to Covered Property and for the actual Time Element loss sustained as provided by the Policy during the **Period of Service Interruption** at Insured Locations caused by the interruption of an incoming service consisting of electricity, gas, fuel, steam, water, refrigeration, voice, data or video or from the lack of outgoing voice, data, video or sewage service.

The lack of service must result from direct physical loss of or damage caused by a **Covered Cause of Loss** to property (other than satellites but including transmission and distribution lines) of the supplier of such service located within this Policy's Territory, that immediately prevents in whole or in part the delivery of such usable services.

This Coverage will only apply when the **Period of Service Interruption** exceeds the time shown as **Qualifying Period** in the **Qualifying Period** clause of the Declarations section. If the **Qualifying Period** is exceeded, then this Policy will pay for the amount of loss in excess of the applicable deductible, but not more than the limit applying to this Coverage.

5.02.22.01. Exclusions 3.03.01.02. and 3.03.04. do not apply to Off Premises Service Interruption Property Damage and Time Element Loss.

5.02.22.02. The following additional exclusion applies:

This Policy excludes direct physical loss or damage and Time Element loss directly or indirectly caused by or resulting from the interruption of such services, when such interruption is caused directly or indirectly by the failure of the Insured to comply with the terms and conditions of any contracts the Insured has for the supply of such specified services regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

5.02.23. PROFESSIONAL FEES

This Policy covers the actual costs incurred by the Insured, of reasonable fees paid to the Insured's accountants, architects, auditors, engineers, or other professionals and the cost of using the Insured’s employees, for producing and certifying any details contained in the Insured's books or documents, or such other proofs, information or evidence required by the Company resulting from loss or damage payable under this Policy for which the Company has accepted liability.

This Coverage will not include the fees and costs of attorneys, **Public Adjusters**, and loss appraisers, all including any of their subsidiary, related or associated entities either partially or wholly owned by them or retained by them for the purpose of assisting them, nor the fees and costs of loss consultants who provide consultation on coverage or negotiate claims.

5.02.24. PROTECTION AND PRESERVATION OF PROPERTY

This Policy covers, up to the limit applying to this Coverage:

5.02.24.01. The reasonable and necessary costs incurred for actions to temporarily protect or preserve Covered Property; provided such actions are necessary due to actual or imminent physical loss or damage due to a **Covered Cause of Loss** to such Covered Property; and

5.02.24.02. The Gross Earnings loss sustained by the Insured for a period of time not to exceed the hours listed in the Declarations prior to and after the Insured first taking reasonable action for the temporary protection and preservation of Covered Property.

5.02.24.03. This Coverage is subject to the deductible provisions that would have applied had the physical loss or damage occurred.

5.02.25. RADIOACTIVE CONTAMINATION

The Company will pay for direct physical loss of or damage to Covered Property at an Insured Location caused by sudden and accidental radioactive contamination, including resultant radiation damage, provided:

5.02.25.01. Radioactive contamination arises out of material at the Insured Location:

5.02.25.01.01. Which is commonly known to be radioactive;

5.02.25.01.02. Is used as part of the Insured's business activities; and

5.02.25.01.03. There is neither a nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction, nor any new or used nuclear fuel which is intended for or which has been used in that type of nuclear reactor at the Insured Location.

5.02.26. RESEARCH AND DEVELOPMENT

The Company will pay for the fixed charges and fixed expenses (including **Ordinary Payroll**) actually incurred by the Insured directly attributable to the interruption of research and development project(s) after direct physical loss of or damage caused by a **Covered Cause of Loss** to research and development project(s) up to the limit applying to this Coverage.

5.02.26.01. Coverage starts when there is direct physical loss of or damage caused by a **Covered Cause of Loss** to research and development project(s) and ends the earlier of:

5.02.26.01.01. The time period stated in the Declarations; or

5.02.26.01.02. When the research and development project(s) has resumed.

5.02.26.02. This Policy will not pay for any other Time Element loss under this Coverage. Loss under this Coverage does not include any fixed charges and/or fixed expenses (including **Ordinary Payroll)** otherwise payable elsewhere in the Policy.

5.02.27. RESEARCH ANIMALS

The Company will pay for death of Research Animals and the Insured's reasonable and necessary costs incurred to research, replace or restore the animal lost to the condition that existed prior to the loss when caused by a **Covered Cause of Loss**, while anywhere within this Policy's Territory, including while in transit**,** when the loss is in excess of the amount stated in the Declarations. No deductible applies to this Coverage. This Coverage does not apply to loss of the Research Animals that cannot be replaced to the condition that existed prior to the loss.

5.02.27.01. The following additional exclusions apply:

5.02.27.01.01. Death or destruction from natural causes, unknown causes, medical procedures including surgery, inoculation, parturition, or abortion;

5.02.27.01.02. Errors or omission in processing and/or failure on the part of the Insured to provide nourishment, medicine or sanitary conditions;

5.02.27.01.03. **Contamination** of animal, food or medicine;

5.02.27.01.04. The intentional slaughter of animals;

5.02.27.01.05. Escape, unless directly resulting from a **Covered Cause of Loss**; or

5.02.27.01.06. Death or destruction resulting from activities of any animal, unless resulting from a **Covered Cause of Loss**.

5.02.28. SPOILAGE

In the event of spoilage of **Raw Materials**, **Stock in Process, Finished Stock** or **Merchandise**, caused by a sudden and accidental **Breakdown** of **Covered Equipment** or a part thereof, the Company will pay for such spoilage provided the **Raw Materials**, **Stock in Process, Finished Stock** or **Merchandise** is in storage or in the course of being manufactured.

5.02.29. TENANTS PROHIBITED ACCESS

The Company will pay for the actual Gross Earnings loss sustained, as provided by this Policy, resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if access to that **Location** by the Insured's suppliers, customers or employees is physically obstructed due to the owner, landlord or a legal representative of the building owner or landlord, prohibiting access to the Insured Location. This Coverage will only apply when the period of time that access is prohibited exceeds the time shown as **Qualifying Period** in the **Qualifying Period** clause of the Declarations section. If the **Qualifying Period** is exceeded, then this Policy will pay for the amount of loss in excess of the Policy Deductible, but not more than the limit applying to this Coverage.

5.02.29.01. The following additional exclusion applies:

This Policy excludes loss directly or indirectly caused by or resulting from prohibited access to the Insured Location, when such prohibited access is caused directly or indirectly by the failure of the Insured to comply with the terms and conditions of any contracts the Insured has for the use of such **Location** regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

## 5.02.30. TRANSIT

5.02.30.01. The Company will pay for direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property while in transit within the coverage Territory and including:

5.02. 30.01.01. The Insured's interest in Free on Board (F.O.B) shipments, Free-Along-Side (F.A.S) shipments and Returned shipments. The Insured's contingent interest is admitted.

5.02. 30.01.02. The Insured's loss of property caused by fraud or deceit perpetrated by any person or persons who may represent themselves to be the proper party or parties to receive goods for shipment or accept goods for delivery.

5.02. 30.01.03. The Insured's legal liability as a carrier of lawful goods and merchandise by vehicles under bills of lading or shipping receipts issued by the Insured, while in the Insured's custody or in the custody of connecting carriers in transit.

5.02. 30.01.04. The Insured's interest in general average, salvage and other charges on shipments covered hereunder.

5.02. 30.01.05. The Insured is granted the privilege to ship under released or limited bills of lading or shipment receipts.

5.02. 30.02. The Policy also covers the actual Time Element loss sustained by the Insured, during the Period of Liability resulting from the necessary **Suspension** of the Insured's business activities at the destination Location, if the **Suspension** is caused by direct physical loss of or damage caused by a **Covered Cause of Loss** to such Property (other than **Finished Stock**).

The Company will pay for the reasonable and necessary extra expenses incurred by the Insured, during the Period of Liability**,** to resume and continue as nearly as practicable the Insured's normal business activities that otherwise would be necessarily suspended, due to direct physical loss of or damage caused by a **Covered Cause of Loss** to Property of the type insurable under this policy.

The Company will reduce the amount payable as extra expense by the fair market value remaining at the end of the Period of Liability for property obtained in connection with the above.

Extra expenses mean that amount spent to continue the Insured's business activities over and above the expenses the Insured would have normally incurred had there been no direct physical loss of or damage caused by a **Covered Cause of Loss** to Property of the type insurable under this policy. Extra expense does not include any Gross Earnings loss, the cost of permanent repair or replacement of property that has suffered direct physical loss or damage, or expenses otherwise payable elsewhere in the Policy.

5.02. 30.03. Coverage starts when Covered Property is in or on the transporting vehicle and the vehicle leaves the originating Location and ends upon arrival at the destination Location and the goods are transferred to the custody and control of the consignee, warehouseman, or receiver.

5.02. 30.04. The Company will not pay for loss or damage to:

5.02. 30.04.01. Property while waterborne, except:

5.02. 30.04.01.01. While on the navigable inland waterways of a country;

5.02. 30.04.01.02. While on roll-on/roll-off ferries between countries; or

5.02. 30.04.01.03. While on coastal shipments.

5.02. 30.04.02. Property shipped by mail from the time it passes into custody of any governmental postal service;

5.02. 30.04.03. Property for sale while in the care, custody or control of the Insured's sales persons or representatives;

5.02. 30.04.04. Any conveyance used for property in transit;

5.02. 30.04.05. Property insured under any import or export ocean marine insurance; or

5.02. 30.04.06. Property under airborne shipment unless by regularly scheduled passenger airlines or air freight **Carriers**.

5.02. 30.05. If this Policy expires during the due course of transit, coverage is extended until the shipment is delivered to its final destination.

## 5.02.31. VALUABLE PAPERS AND RECORDS

The Company will pay for direct physical loss of or damage caused by a **Covered Cause of Loss** to **Valuable Papers and Records** at an Insured Location. For all **Valuable Papers and Records**, the Company will pay for the value of the blank personal property, and the Insured's reasonable and necessary costs incurred to research, replace or restore the information lost or damaged thereon.

Except:

For **Electronic Data** and/or **Program (Software)**, the Company will pay for the value of the blank **Media**, and the cost of reproducing the **Electronic Data** and/or **Program (Software)** from duplicates or originals of the previous generation of the data.

This Coverage does not apply to loss or damage to property that cannot be repaired or restored with like kind or quality.

## 5.02.32. NEW CONSTRUCTION AND ADDITIONS

The Company will pay, up to the limit applying to this Coverage, for:

5.02.32.01. Direct physical loss of or damage to Property of the type insurable under this policy that is **New Construction or Additions**;

5.02.32.02. The actual Time Element loss sustained by the Insured arising out of the **Delay in Completion**; and

5.02.32.03. The Actual Loss Sustained incurred by the Insured as **Soft Costs** during such **Delay in Completion**.

5.02.32.04. The Coverage for Time Element will only apply when the **Delay in Completion** exceeds the time shown as **Qualifying Period** in the **Qualifying Period** clause of the Declarations section. If the **Qualifying Period** is exceeded, then this Policy will pay up to the number of consecutive days stated in the Declarations after the **Qualifying Period**.

5.02.32.05. The following additional exclusion applies to coverage provided in **NEW CONSTRUCTION AND ADDITIONS**:

This Policy excludes direct physical loss or damage directly or indirectly caused by or resulting from the effects of rain, sleet, or snow, whether or not driven by wind, on the interior portion of buildings under construction or addition when the installation of the roof, walls or windows of such buildings has not been completed regardless of any other cause or event, whether or not otherwise insured under this Policy, contributing concurrently or in any other sequence to the loss.

### 5.02.33. OFF PREMISES STORAGE FOR PROPERTY UNDER CONSTRUCTION

This Policy covers direct physical loss or damage to property (of the type insurable under this Policy) caused by a **Covered Cause of Loss** that is under contract to be used in a construction project at an Insured Location. Coverage attaches at the time such property is delivered to the Insured or its contractor (with respect to the property under construction) by the manufacturer or supplier and such property is located at a storage site within this Policy's Territory but away from the Insured Location.

This Coverage includes necessary expendable materials and supplies to be used in the construction project but does not include any property owned or rented by the contractor.

## 5.03. DESCRIBED CAUSES OF LOSS

### 5.03.01. **BREAKDOWN** OF EQUIPMENT

The Company will pay for direct physical loss of or damage to **Covered Equipment**, Time Element loss and Special Coverages loss as provided by this Policy, if such loss or damage is caused by a sudden and accidental **Breakdown** of **Covered Equipment** or a part thereof, which manifests itself by physical damage at the time of its **Occurrence** and necessitates repair or replacement; subject to the terms and conditions set forth in this Policy, regardless of any other cause or event contributing concurrently or in any other sequence of loss.

All **Breakdown(s)** at any one Insured Location that manifest themselves at the same time and are the result of the same cause will be considered one **Breakdown**.

### 5.03.02. **EARTH MOVEMENT**

The Company will pay for direct physical loss of or damage to Covered Property, Time Element loss and Special Coverages loss as provided by this Policy, if such loss or damage is caused by **Earth Movement** regardless of any other cause or event contributing concurrently or in any other sequence of loss. However, ensuing physical loss or damage by fire, explosion, theft, vandalism, sprinkler leakage or **Flood** will not be considered loss by **Earth Movement** within the terms and conditions of this Policy.

All **Earth Movement** that occurs within the period defined in the Declarations will constitute a single **Occurrence**. The expiration of this Policy will not reduce that period. The Insured may elect the point in time when the period defined in the Declarations begins; but such point in time must not precede loss or damage to Covered Property.

### 5.03.03. **FLOOD**

The Company will pay for direct physical loss of or damage to Covered Property, Time Element loss and Special Coverages loss as provided by this Policy, if such loss or damage is caused by **Flood** regardless of any other cause or event contributing concurrently or in any other sequence of loss. However, ensuing physical loss or damage by fire, explosion, theft, vandalism or sprinkler leakage will not be considered to be loss by **Flood** within the terms and conditions of this Policy.

5.03.04. **NAMED STORM**

The Company will pay for direct physical loss of or damage to Covered Property, Time Element loss and Special Coverages loss as provided by this Policy, if such loss or damage is caused by **Named Storm**; regardless of any other cause or event contributing concurrently or in any other sequence of loss. However, ensuing physical loss or damage by fire, explosion, theft, vandalism, sprinkler leakage or **Flood** will not be considered loss by **Named Storm** within the terms and conditions of this Policy.

All **Named Storm** damage that occurs within the period defined in the Declarations will constitute a single **Occurrence**. The expiration of this Policy will not reduce that period. The Insured may elect the point in time when the period defined in the Declarations begins; but such point in time must not precede loss or damage to Covered Property.

# SECTION VI –GENERAL POLICY CONDITIONS

## 6.01. CANCELLATION/NON-RENEWAL

6.01.01. Cancellation

6.01.01.01. The **First Named Insured** shown in the Declarations may cancel this Policy by mailing or delivering to the Company advance written notice of cancellation.

6.01.01.02. The Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least:

6.01.01.02.01. The number of days before the effective date of cancellation if the Company cancels for nonpayment of premium, as stated in the Declarations; or

6.01.01.02.02. The number of days before the effective date of cancellation if the Company cancels for any other reason, as stated in the Declarations.

6.01.01.03. The Company will mail or deliver notice to the **First Named Insured's** mailing address shown in the Declarations of this Policy or any Endorsement attached thereto.

6.01.01.04. Notice of cancellation will state the effective date of cancellation. The Policy Period will end on that date.

6.01.01.05. If this Policy is cancelled, the Company will send the **First Named Insured** any premium refund due. If the Company cancels, the refund will be pro rata. If the **First Named Insured** cancels, the refund may be less than pro rata but no less than the customary short rate amount. The cancellation will be effective even if the Company has not made or offered a refund.

6.01.01.06. If notice is mailed, proof of mailing will be sufficient proof of notice.

6.01.01.07. If under the laws of the jurisdiction in which the property is located, such cancellation terms or conditions are different, then cancellation terms or conditions will be as permitted by such laws.

6.01.02. Non-renewal

6.01.02.01. The Company may non-renew this Policy by mailing or delivering to the **First Named Insured** written notice, the number of days before the non-renewal, as permitted by law in the jurisdiction where in the property is located.

## 6.02. CERTIFICATES OF INSURANCE

Any certificate of insurance issued in connection with this Policy is provided solely as a matter of convenience or information for the addressee(s) or holder(s) of such certificate of insurance, except as provided under the Policy when a loss payee(s) or mortgagee(s) are named. The certificate does not amend, extend or alter the coverage afforded by the Policy.

In the event this policy is cancelled pursuant to the CANCELLATION/NON-RENEWAL provision, other than for nonpayment of premium, and except as provided otherwise, the Company shall endeavor to provide notice of cancellation to those entities set out in the certificates of insurance on file with the Company, as soon as practicable, after notifying the **First Named Insured**. However, in no event will failure to provide notice to entities set out in certificates of insurance waive the Company's right or ability to cancel the policy as allowed by law.

The Company hereby authorizes the Producer named on the Policy to issue certificates of insurance consistent with the foregoing.

## 6.03. CONCEALMENT, MISREPRESENTATION OR FRAUD

6.03.01. This Policy is void as to all Insureds in any case of fraud by any Insured as it relates to this Policy at any time. It is also void if any Insured, at any time, intentionally conceals or misrepresents a material fact concerning:

6.03.01.01. This Policy;

6.03.01.02. The Covered Property;

6.03.01.03. The Insured's interest in Covered Property; or

6.03.01.04. A claim under this Policy.

## 6.04. CONFORMITY TO STATUTES

Any provisions required by law to be included in policies issued by the Company shall be deemed to have been included in this Policy.

If the provisions of this Policy conflict with the laws of any jurisdictions in which this Policy applies, and if certain provisions are required by law to be stated in this Policy, this Policy shall be read so as to eliminate such conflict or deemed to include such provisions for Insured Locations within such jurisdictions.

## 6.05. CONTROL OF DAMAGED GOODS

In the event of direct physical loss of or damage caused by a **Covered Cause of Loss** to **Finished Stock** or **Merchandise** that carries the Insured's brand or trade name; this Policy gives control of the physically damaged property as follows, all subject to 6.05.05.

6.05.01. The Insured will have full rights to the possession, control and disposition of damaged property in the event of insured direct physical loss or damage to such property provided the Company agrees that the property is physically damaged.

6.05.02. The Insured, using reasonable judgment, will decide if the Insured can reprocess or sell the physically damaged property.

6.05.03. If the Company takes possession of property that carries the Insured's brand or trade name that has sustained direct physical loss or damage, the Company will pay for the Insured or the Insured representative to stamp “salvage”, remove, or obliterate the brand, label or trade name on the property or its containers if doing so will not damage the property. In either event, the Insured must re-label such property or its containers to comply with any applicable law.

6.05.04. The salvage value of property that is claimed damaged shall be determined at the time of loss.

6.05.05. The Insured will allow the Company to deduct from the amount of loss otherwise payable, the fair market value of such salvage, which could have been obtained on any sale or other disposition of goods or products through normal insurance industry salvage practices.

## 6.06. CURRENCY FOR LOSS PAYMENT

6.06.01. Losses will be adjusted and paid in the currency designated in 2.02., unless directed otherwise by the Insured. In the event of a loss adjustment involving local currency, the exchange-selling rate will be calculated as follows:

6.06.01.01. As respects the calculation of deductibles and Limits of Liability, the rate of exchange published in the Midwest Ed. of The Wall Street Journal on the date of settlement.

6.06.01.02. As respects direct physical loss or damage to Real and Personal Property:

6.06.01.02.01. The cost to repair or replace Real and Personal Property will be converted at the time the cost of repair or replacement is incurred based on the rate of exchange published in the Midwest Ed. of The Wall Street Journal on the date of settlement.

6.06.01.02.02. If such property is not replaced or repaired, the conversion will be based on the rate of exchange published in the Midwest Ed. of The Wall Street Journal on the date of loss.

6.06.01.03. As respects Time Element loss the conversion will be based on the average of the rate of exchange published in the Midwest Ed. of The Wall Street Journal on the date of loss and the rate of exchange published in the Midwest Ed. of The Wall Street Journal on the last day of the Period of Liability.

6.06.01.04. If the Midwest Ed. of The Wall Street Journal was not published on the stipulated date, or the rate of exchange was not published on the stipulated date, the rate of exchanged will be as published on the next business day the rate is published.

## 6.07. INSPECTIONS AND SURVEYS

6.07.01. The Company has the right but not the obligation to make inspections and surveys at any time, to give the Insured reports on the conditions found, and to recommend changes.

6.07.02. Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. The Company does not make safety inspections. The Company does not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public, nor does it represent that conditions are safe, healthful, or comply with laws, regulations, codes or standards.

6.07.03. This condition applies not only to the Company, but also to any rating, advisory, rate service or similar organization that makes insurance inspections, surveys, reports or recommendations.

## 6.08. JOINT LOSS

This clause applies only if all of the following requirements are met:

6.08.01. The **BREAKDOWN** OF EQUIPMENT Coverage is shown as NCP in the Declarations of this Policy and the **BREAKDOWN** OF EQUIPMENT Coverage carried by the Named Insured, insuring the Covered Property contains a similar Joint Loss provision with substantially the same requirements, procedures, and conditions as contained in this Policy.

6.08.02. The loss or damage to the Covered Property was caused by a **Covered Cause of Loss** for which both the Insurer(s) of the Property Coverage and the Insurer(s) of the **BREAKDOWN** OF EQUIPMENT Coverage admit to some liability for payment under the respective policies.

6.08.03. The total amount of loss is agreed to by the Insured, the Insurer(s) of the Property Coverage and the Insurer(s) of the **BREAKDOWN** OF EQUIPMENT Coverage.

6.08.04. The Insurer(s) of the Property Coverage and the Insurer(s) of the **BREAKDOWN** OF EQUIPMENT Coverage disagree as to the amount of loss that both should pay that is attributable to:

6.08.04.01. An accident covered under the **BREAKDOWN** OF EQUIPMENT Coverage; and

6.08.04.02. A **Covered Cause of Loss** under the Property Coverage.

6.08.05. If the requirements listed above are satisfied, the Insurer(s) of the Property Coverage and of the **BREAKDOWN** OF EQUIPMENT Coverage will make payments to the extent, and in the manner, described in the following:

6.08.05.01. The Insurer(s) of the **BREAKDOWN** OF EQUIPMENT Coverage will pay, after the Insured's written request, the entire amount of loss that they have agreed as being covered by **BREAKDOWN** OF EQUIPMENT Coverage and one-half (1/2) the amount of loss that is in disagreement.

6.08.05.02. The Insurer(s) of the Property Coverage will pay, after the Insured's written request, the entire amount of loss that they have agreed as being covered by the Property Coverage and one-half (1/2) the amount of loss that is in disagreement.

6.08.05.03. The amount in disagreement to be paid by the Insurer(s) of the **BREAKDOWN** OF EQUIPMENT Coverage and the Insurer(s) of the Property Coverage under this Joint Loss provision shall not exceed the amount payable under the equivalent loss adjustment provisions of the Insurer(s) of the Property Coverage and the **BREAKDOWN** OF EQUIPMENT Coverage.

6.08.06. The amount to be paid under this Joint Loss provision shall not exceed the amount that would have been paid had no Property Coverage or, in the alternative, no **BREAKDOWN** OF EQUIPMENT Coverage been in effect at the time of loss.

6.08.07. Acceptance by the Insured of sums paid under this Joint Loss provision does not alter, waive or surrender any other rights against the Insurer(s).

6.08.08. Additional Conditions:

6.08.08.01. The Insurer(s) of the Property Coverage and the Insurer(s) of the **BREAKDOWN** OF EQUIPMENT Coverage agree to submit their differences to arbitration within 90 days after payment of the loss under the terms of this Joint Loss provision.

6.08.08.02. The Insured agrees to cooperate with any arbitration procedures. There will be three arbitrators: one will be appointed by the Insurer(s) of the **BREAKDOWN** OF EQUIPMENT Coverage and the one will be appointed by the Insurer(s) of the Property Coverage. The two arbitrators will select a third arbitrator. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. A decision agreed to by two of the three arbitrators will be binding on both parties. Judgment on any award can be entered in any court that has jurisdiction. The Insurer(s) of the BREAKDOWN OF EQUIPMENT Coverage will pay their designated arbitrator and the Insurer(s) of the Property Coverage will pay their designated arbitrator. The Insurer(s) of the BREAKDOWN OF EQUIPMENT and the Insurer(s) of the Property Coverage will split the expense of the third arbitrator.

## 6.09. JURISDICTION

Any disputes arising hereunder will be exclusively subject to the jurisdiction of a court of competent jurisdiction within the USA.

## 6.10. LENDERS LOSS PAYEE AND MORTGAGE HOLDER INTERESTS AND OBLIGATIONS

6.10.01. When specified in the Policy or in Certificates of Insurance on file with the Company, the Company will pay for covered loss to property insured under this Policy to each:

6.10.01.01. Lender Loss Payee (hereinafter referred to as Lender) as its interest may appear, in order of precedence; or

6.10.01.02. Mortgagee as its interest may appear, in order of precedence.

6.10.02. The interest of the specified Lender or Mortgagee in property insured under this Policy will not be invalidated by:

6.10.02.01. Any act or neglect of any Insured.

6.10.02.02. Commencement of foreclosure, notice of sale, or similar proceedings with respect to the property.

6.10.02.03. Change in the title or ownership of the property.

6.10.02.04. Change to a more hazardous occupancy.

6.10.03. The Lender or Mortgagee will notify the Company of any known change in ownership, occupancy, or hazard and, within ten (10) days of written request by the Company, may pay the increased premium associated with such known change. If the Lender or Mortgagee fails to pay the increased premium, all coverage under this Policy will cease.

6.10.04. In the event of a claim, upon request of the Company, the Lender or Mortgagee will cooperate in any claim investigation.

6.10.05. If this Policy is cancelled at the request of the Insured or its agent, the coverage for the interest of the Lender or Mortgagee will terminate ten (10) days after the Company sends to the Lender or Mortgagee written notice of cancellation, unless:

6.10.05.01. Earlier terminated by authorization, consent, approval, acceptance, or ratification of the Insured's action by the Lender, Mortgagee, or its agent.

6.10.05.02. This Policy is replaced by the Insured, with a policy providing coverage for the interest of the Lender or Mortgagee, in which event coverage under this Policy with respect to such interest will terminate as of the effective date of the replacement policy, notwithstanding any other provision of this Policy.

6.10.06. The Company may cancel this Policy and/or the interest of the Lender or Mortgagee under this Policy, by sending the specified Lender or Mortgagee written notice sixty (60) days prior to the effective date of cancellation, if cancellation is for any reason other than non-payment of premium. If the Insured has failed to pay any premium due under this Policy, the Company may cancel this Policy for such non-payment, but will send the Lender or Mortgagee written notice ten (10) days prior to the effective date of cancellation. If the Lender or Mortgagee fails to pay the premium due by the specified cancellation date, all coverage under this Policy will cease.

6.10.07. The Company has the right to invoke this Policy's Suspended Property clause. When the Company suspends the insurance, it will apply to the interest of any Lender or Mortgagee. The Company will send the specified Lender or Mortgagee, at the last known address, a copy of such notice.

6.10.08. If the Company pays a Lender or Mortgagee for any loss, and denies payment to the Insured, the Company will, to the extent of the payment made to the Lender or Mortgagee be subrogated to the rights of the Lender or Mortgagee under all securities held as collateral. No subrogation will impair the right of the Lender or Mortgagee to recover the full amount of its claim. At its option, the Company may pay to a Lender or Mortgagee the whole principal due on the debt or mortgage plus any accrued interest and charges. In this event, all rights and securities will be assigned and transferred from the Lender or Mortgagee to the Company, and the remaining debt or mortgage will be paid to the Company.

6.10.09. If the Insured fails to render proof of loss, the Lender or Mortgagee, upon notice of the Insured's failure to do so, will render proof of loss within sixty (60) days of notice and will be subject to the Insured’s duties, obligations and provisions of this Policy when presenting a claim.

6.10.10. In no event will the amount payable to a Lender or Mortgagee exceed the amount which would be payable to the Named Insured.

## 6.11. LIBERALIZATION

If during the period that insurance is in force under this Policy, any filed rules or regulations are revised by statute so as to broaden this insurance without additional premium charge, such extended or broadened insurance will inure to the benefit of the Insured within such jurisdiction, effective the date of the change specified in such statute.

## 6.12. LOSS ADJUSTMENT/PAYABLE

Loss, if any, will be adjusted with and payable to the **First Named Insured** as shown on this Policy, or as directed by the **First Named Insured**.

When a Lender or Mortgagee is named in the Certificates of Insurance on file with the Company, the Lender or Mortgagee will be included in loss payment as their interests may appear.

When a Loss Payee is named in the Certificates of Insurance on file with the Company, the loss payee will be included in loss payments made to the insured as their interests may appear. The loss payee has no other rights under the policy.

## 6.13. LOSS CONDITIONS

### 6.13.01. DUTIES IN THE EVENT OF LOSS OR DAMAGE

The Insured must see that the following are done in the event of direct physical loss or damage to Covered Property:

6.13.01.01. Notify the police if a law may have been broken.

6.13.01.02. Give the Company prompt notice of the loss or damage. Include a description of the property involved.

6.13.01.03. As soon as possible, give the Company a description of how, when and where the loss or damage occurred.

6.13.01.04. Take all reasonable steps to protect the Covered Property from further damage caused by a **Covered Cause of Loss**. If feasible, set the damaged property aside and in the best possible order for examination. Also, keep a record of expenses for emergency and temporary repairs for consideration in the settlement of the claim. This will not increase the Limit of Liability.

6.13.01.05. At the Company's request, provide a complete inventory of the damaged and undamaged property, including quantities, costs, values and amount of loss claimed.

6.13.01.06. As often as reasonably required, permit the Company to inspect the property and records evidencing the loss or damage, including taking some or all of damaged and undamaged property for inspection, testing and analysis, and permit the Company to make copies of the Insured's books and records.

6.13.01.07. Permit the Company to question the Insured, the Insured's employees and agents under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the loss or damage, including an Insured's books and records. In the event of this examination, an Insured's answers must be signed or attested to by a notary public or certified court reporter.

6.13.01.08. Give the Company a signed sworn statement of loss containing the information necessary to investigate the claim. If requested by the Company, the Company will supply the necessary form and the Insured must return this completed form within sixty (60) days of the request or as required by law.

6.13.01.09. Cooperate with the Company in the investigation or settlement of the claim.

6.13.02. ABANDONMENT

There may be no abandonment of any property to the Company.

6.13.03. SUBROGATION

The Insured is required to cooperate in any subrogation proceedings. To the extent of the Company's payment, the Insured's rights of recovery against any party are transferred to the Company.

The Company acquires no rights of recovery that the Insured has expressly waived prior to a loss, nor will such waiver affect the Insured's rights under this Policy.

Any recovery from subrogation proceedings, less costs incurred by the Company in such proceedings, will be payable to the Insured in the proportion that the amount of any applicable deductible and/or any provable uninsured loss, bears to the entire provable loss amount.

6.13.04. APPRAISAL

If the Insured and the Company fail to agree on the value of the property or the amount of loss, each will, on the written demand of either, select a competent, disinterested, and impartial appraiser, who has no direct or indirect financial interest in the claim. Each will notify the other of the appraiser selected within 20 days of such demand. The Insured may not invoke appraisal unless it has first fully complied with all provisions of this Policy, including Duties in the Event of Loss or Damage and has provided the Company with a signed and sworn statement of loss.

The appraisers will first select a competent, disinterested and impartial umpire. If the appraisers fail to agree upon an umpire within 15 days then, on the request of the Insured or the Company, a judge of a court of record in the jurisdiction in which the appraisal is pending will select the umpire. The

appraisers will then appraise the value of the property or the amount of loss. They will state separately, the actual cash value and replacement cost value, as of the date of loss and the amount of loss, each item of physical loss or damage or, if for Time Element loss, the amount of loss for each Time Element Coverage of this Policy.

If the appraisers fail to agree, they will submit their differences to the umpire. An award stating separately the actual cash value and replacement cost value, as of the date of loss and the amount of loss, for each item of physical loss or damage or, if for Time Element loss, the amount of loss for each Time Element Coverage of this Policy agreed to in writing by any two will determine the amount of loss.

Once there is an award, the Company retains the right to apply all policy terms and conditions (including but not limited to deductibles, exclusions, and Limits of Liability) to the award. The Company further retains its right to deny the claim in whole or in part.

The Insured and the Company will each pay its chosen appraiser and bear equally the other expenses of the appraisal and umpire.

6.13.05. SUIT AGAINST THE COMPANY

No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless the Insured has fully complied with all the provisions of this Policy. Legal action must be started within (12) twelve months after the date of direct physical loss or damage to Covered Property or to other property as set forth herein.

If under the laws of the jurisdiction in which the property is located, such twelve months' limitation is invalid, then, any such legal action needs to be started within the shortest limit of time permitted by such laws.

## 6.14. NO REDUCTION BY LOSS

Loss or damage shall not reduce the amount of insurance recoverable, except where an **Annual Aggregate** applies. The reinstatement of any exhausted **Annual Aggregate** is not permitted unless authorized by the Company in writing.

## 6.15. OTHER INSURANCE

Insurance that is intended to pay proportionally with this insurance as a part of a property insurance plan or program expressly written with other participants is not other insurance as described below..

6.15.01. The Company will not be liable if, at the time of loss or damage, there is any other insurance that would attach in absence of this insurance; except that this insurance shall apply only as excess, Difference in Conditions/Difference in Limits and in no event as contributing insurance, and then only after all other insurance has been exhausted.

6.15.02. The Company gives the Insured permission to purchase insurance for all or any part of the deductibles in this Policy, and the existence of underlying insurance shall not prejudice the Insured's rights under this Policy.

6.15.02.01. The deductible and any amount paid under such insurance that would be covered under this Policy, shall apply to the deductible that would apply in this Policy.

6.15.02.02. This Policy shall then apply on an excess, Difference in Conditions/Difference in Limits basis.

6.15.03. The Insured can purchase excess insurance commencing on or after the inception of this Policy that is specifically excess over the Limits of Liability set forth in this Policy without prejudice to this Policy and the existence of such insurance shall not reduce any liability under this Policy.

6.15.04. The Company will not be liable if, at the time of loss or damage, there is any insurance with National Flood Insurance Program (NFIP); except that this insurance shall apply only as excess and in no event as contributing insurance, and then only after all NFIP insurance has been exhausted.

6.15.05. The Company will not be liable if, at the time of loss or damage, there is any insurance for **New Construction and Additions** under a specific policy for such New Construction and Additions; except that this insurance shall apply only as excess and in no event as contributing insurance, and then only after all specific insurance has been exhausted.

6.15.06. The Company will not be liable if, at the time of loss or damage, there is any insurance for stock under a specific policy for such stock; except that this insurance shall apply only as excess and in no event as contributing insurance, and then only after all specific insurance has been exhausted.

## 6.16. POLICY MODIFICATION

6.16.01. This Policy contains all of the agreements between the Insured and the Company concerning this insurance. The Insured and the Company may request changes to this Policy. Only endorsements issued by the Company and made a part of this Policy can change this Policy.

6.16.02. Notice to any agent or knowledge possessed by any agent or by any other person will not create a waiver or change any part of this Policy or prevent the Company from asserting any rights under the Policy.

## 6.17. PRIVILEGE TO ADJUST WITH OWNER

In the event of loss or damage involving Property of Others in your care, custody or control, we have the right, but not the duty to:

6.17.01. Settle the loss or damage with the owners of the Property.

6.17.02. Provide a defense for legal proceedings brought against the Insured. If provided, the expense for this defense will be at the Company's cost and will not reduce any applicable limit of insurance.

## 6.18. SETTLEMENT OF CLAIMS

6.18.01. Loss Payment

6.18.01.01. In the event of loss or damage to Covered Property, the Company will, at its option, either:

6.18.01.01.01. Pay the value of lost or damaged property;

6.18.01.01.02. Pay the cost of repairing or replacing the lost or damaged property;

6.18.01.01.03. Take all or any part of the property at any agreed valuation; or

6.18.01.01.04. Repair, rebuild or replace the property with other property of like kind and quality.

6.18.02. The Company will give notice of its intentions within thirty (30) days after receiving the sworn statement of loss or as required by law.

6.18.03. The Company will not pay more than the Insured's financial interest in the Covered Property.

6.18.04. The Company will pay for covered loss or damage within thirty (30) days or as required by law, after receiving the sworn statement of loss, if the Insured has complied with all the terms of this Policy; and

6.18.04.01. The Company has reached agreement on the amount of loss; or

6.18.04.02. An appraisal award has been made, subject to 6.13.04.

6.18.05. Priority of Payment

In the event of a claim that involves more than one interest and/or coverage and/or peril; the insured has the option to apportion recovery under this Policy when submitting final proof of loss, subject to the overall amount of claim not exceeding the applicable limit of liability and subject to all other terms and conditions of the policy.

For the purpose of attachment of coverage for excess layers, claims involving any interest and/or peril covered in the primary or underlying excess layers, but not covered in higher excess layers, will be recognized by such excess layers as eroding or exhausting the occurrence limits of the primary and/or underlying excess layer(s). Nothing, however, will extend coverage in such layers(s) to include loss from any interest and/or peril not covered in the excess layer(s) itself.

## 6.19. SUSPENDED PROPERTY

When Covered Property is found to be in, or exposed to, a dangerous condition, any of the Company's representatives may immediately suspend this insurance for that property**.** This can be done by delivering or mailing a written notice to the **First Named Insured's** mailing address or to the address where the Covered Property is located. Once suspended, this insurance can be reinstated only by an endorsement. Any unearned premium due will be returned by the Company.

## 6.20. TITLES

The titles of the various paragraphs and endorsements are solely for reference and shall not in any way affect the provisions to which they relate.

## 6.21. TRANSFER OF RIGHTS AND DUTIES

The Insured rights and duties under this Policy may not be transferred without the Company giving written consent.

## 6.22. VALUATION

In the event of any claim for direct physical loss of or damage to Covered Property:

6.22.01. The basis of adjustment is on a replacement cost basis unless a specific valuation applies. Replacement Cost shall be the cost to repair, rebuild or replace the damaged property (without deduction for depreciation) with materials of like kind, quality and capacity at the same or another site, but no more than the lesser of:

6.22.01.01. The cost to repair;

6.22.01.02. The cost to rebuild or replace on the same or another site with materials of equivalent size, kind, quality and capacity;

6.22.01.03. The necessary cost actually expended in repairing, rebuilding or replacing on the same or another site, but not exceeding the operating capacity that existed at the time of the loss; or

6.22.01.04. The Limits of Liability applicable to the lost or damaged property.

6.22.02. If there is direct physical loss of or damage to Covered Property for which repair, rebuilding or replacement has not started within two (2) years from the date of direct physical loss or damage, the Company will not be liable for more than the actual cash value of the property destroyed.

6.22.03. The Company, will pay the reduction in value of insured components or parts of products directly resulting from physical loss or damage caused by a **Covered Cause of Loss** to other insured components or parts of products, or part of a pair or set as follows:

6.22.03.01. In case of loss or damage to any components or parts of products, or part of a pair or set, the Company will at its option:

6.22.03.01.01. Pay the cost of repairing or replacing any part to restore the components or parts of products, pair or set to its value before the loss or damage;

6.22.03.01.02. Repair or replace any part to restore the components or parts of products, pair or set to its value before the loss or damage; or

6.22.03.01.03. Pay the difference between the value of the components or parts of products, pair or set before and after the loss or damage.

6.22.03.02. If settlement is based on a constructive total loss, the Insured will surrender the undamaged parts of such property to the Company.

6.22.04. The following property shall be valued as specified below:

6.22.04.01. For **Raw Materials** and supplies, the replacement cost.

6.22.04.02. For **Stock in Process,** the value of **Raw Materials** and labor expended plus the proportion of overhead charges attributable to that **Stock in Process**.

6.22.04.03. For **Finished Stock** manufactured by the Insured, the valuation as stated in the Declarations. If valued at **Selling Price**, this Policy will also pay the increased tax liability incurred by the Insured due to the profit portion of a loss payment involving **Finished Stock** being greater than the tax liability of the profits that would have been earned had no loss occurred.

6.22.04.04. For **Merchandise** that carries the Insured's brand or trade name, the valuation as stated in the Declarations.

6.22.04.05. For all other **Merchandise**, the valuation as stated in the Declarations.

6.22.04.06. For **Fine Arts** articles, the lesser of the reasonable and necessary cost to repair or restore such property to the physical condition that existed on the date of loss or the cost to replace the article or the value if stated on a schedule on file. If the **Fine Arts** article cannot be replaced and an appraisal is not available, the valuation shall be market value based on prevailing conditions at the time of loss or damage.

6.22.04.07. For property covered under Deferred Payments, the lesser of the total amount of unpaid installments less finance charges or the actual cash value of the property at the time of loss or the cost to repair or replace with material of like size, kind and quality.

6.22.04.08. The selling price of buildings (or structures) or machinery and equipment, other than stock, offered for sale on the date of loss, but no more than the cost to repair or replace.

6.22.04.09. The cost to replace non-repairable electrical or mechanical equipment, including computer equipment, with equipment that is the most functionally equivalent to that damaged or destroyed, even if such equipment has technological advantages, represents an improvement in function, or forms part of a program of system enhancement.

6.22.04.10. **Improvements and Betterments** at replacement cost if such property is repaired or replaced at the expense of the insured. If there is direct physical loss of or damage to **Improvements and Betterments** which are not repaired, rebuilt or replaced at the expense of the insured, the Company will not be liable for more than a proportion of the original cost determined as follows:

6.22.04.10.01. Multiply the original cost of the **Improvements and Betterments** by the number of days from the loss or damage to the expiration of the lease; and

6.22.04.10.02. Divide the amount determined in 6.22.04.10.01. by the number of days from the installation of the **Improvements and Betterments** to the expiration of the lease.

6.22.04.10.03. If the lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

6.22.04.11. For property that is useless to the Insured or obsolete, the actual cash value.

6.22.04.12. For vehicles, the valuation as stated in the Declarations.

6.22.04.13. The Insured may elect not to repair or replace such damaged Covered Property, however, if loss settlement proceeds are expended on other capital expenditures, on property of the type insurable under this policy, related to the business activities of the Insured within two years from the date of loss, the lesser of the repair or replacement cost of such property will be paid. As a condition of collecting under this clause, such expenditure must be unplanned as of the date of loss and be made at a **Scheduled Location**. This clause does not extend to Increased Cost of Construction.

# SECTION VII - DEFINITIONS

The following term(s) wherever used in this Policy means:

7.01. **Ammonia Contamination -** The loss or damage, including salvage expense, caused by ammonia contacting or permeating Covered Property under refrigeration or in process requiring refrigeration, as the result of any one accident.

7.02. **Annual Aggregate -** The maximum amount of loss or damage payable in any one (1) **Policy Year** regardless of the number of **Occurrences** within the same policy year.

7.03. **Anticipated Date of Completion -** The date on which the work is scheduled to be completed, as stated in the construction contract or amendments to such contract, for the start of commercial operations or use and occupancy.

7.04. **Attraction Properties -** A property within the distance described in the declarations of an Insured Location that attracts customers to the Insured's business.

7.05. **Average Daily Value (ADV) -** The 100% Gross Earnings value at the **Location(s)** where the direct physical loss or damage occurred and all other **Locations** where Time Element loss ensues for the Policy Period divided by the number of working days in the Policy period.

7.06. **Breakdown -**

7.06.01. A failure of pressure or vacuum equipment;

7.06.02. An electrical failure including arcing; or

7.06.03. A mechanical failure including rupture or bursting caused by centrifugal force.

7.06.04. 7.06.01., 7.06.02., 7.06.03. includes an explosion to a steam boiler, electric steam generator, steam piping, steam turbine, steam engine, gas turbine, or moving or rotating machinery when such explosion is caused by centrifugal force or mechanical failure; but not the explosion of gases or fuel within the furnace of any **Covered Equipment** or within the flues or passages through which the gases of combustion pass; nor combustion explosion outside the **Covered Equipment**.

7.06.05. **Breakdown** does not mean or include:

7.06.05.01. Malfunction including but not limited to adjustment, alignment, calibration, cleaning or modification;

7.06.05.02. Defects, erasures, errors, limitations or viruses in computer equipment and programs;

7.06.05.03. Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

7.06.05.04. Damage to any vacuum tube, gas tube or brush;

7.06.05.05. Damage to any structure or foundation supporting any **Covered Equipment** or any of its parts;

7.06.05.06. Functioning of any safety or protective device; or

7.06.05.07. Cracking of any part on an internal combustion gas turbine exposed to the products of combustion.

7.07. **Carrier -** Contract or public truck men and motor transit companies or connecting carriers.

7.08. **Computer Virus -** Any **Software**, **Electronic Data** or code that affects the operation or functionality of any computer, communication system, file server, networking equipment, computer system, computer hardware, data processing equipment, computer memory, microchip, microprocessor (computer chip), integrated circuit or similar device in computer equipment, **Program**, Computer **Software** or operating systems, programming instructions, or data including, but not limited to any destructive **Program**, computer code, **Computer Virus**, worm, logic bomb, denial of service attack, smurf attack, vandalism, Trojan Horse or any other data introduced into any electronic system causing deletion, destruction, degradation, corruption, malfunction or compromise of **Electronic Data**, **Software** or electronic business systems.

7.09. **Contamination(Contaminated) -** Any condition of property due to the actual presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, **Fungus**, mold or mildew.

7.10. **Contaminant(s) -** Any solid, liquid, gaseous, thermal or other irritant, pollutant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste (including materials to be recycled, reconditioned or reclaimed), asbestos, ammonia, other hazardous substances, **Fungus** or **Spores**.

7.11. **Covered Cause of Loss -** All risks of direct physical loss of or damage from any cause unless excluded.

7.12. **Covered Equipment -** Any boiler fired pressure vessel, unfired vessel normally subject to vacuum or internal pressure other than weight of its contents, refrigerating and air conditioning systems, any metal piping and its accessory equipment, and mechanical, or electrical machines or apparatus used for the generation, transmission, or utilization of mechanical or electrical power, not otherwise excluded as Covered Property.

7.12.01 **Covered Equipment** does not include any of the following:

7.12.01.01. Part of pressure or vacuum equipment that is not under internal pressure of its contents or internal vacuum;

7.12.01.02. Insulating or refractory material, but not excluding the glass lining of any **Covered Equipment**;

7.12.01.03. Non-metallic pressure or vacuum equipment unless it is constructed and used in accordance with the American Society of Mechanical Engineers (ASME) code or another appropriate and approved code;

7.12.01.04. Catalyst;

7.12.01.05. Vessels, piping and other equipment that is buried below ground and requires the excavation of materials to inspect, remove, repair or replace;

7.12.01.06. Vehicle, aircraft, self-propelled equipment or floating vessel including any Covered Property (equipment) that is mounted upon or used solely with any one or more Vehicle(s), aircraft, self-propelled equipment or floating vessel;

7.12.01.07. Drag-line, excavation or construction equipment including any Covered Property or **Covered Equipment** that is mounted upon or used solely with any one or more drag-lines, excavation, or construction equipment;

7.12.01.08. Felt, wire, screen, die, extrusion plate, swing hammer, grinding disc, cutting blade, non-electrical cable, chain, belt, rope, clutch plate, brake pad, non-metal part or any part or tool subject to periodic replacement;

7.12.01.09. Equipment or any part of such equipment manufactured by the Insured for sale.

7.13. **Daily Value (DV) -** The 100% Gross Earnings value at the **Location(s)** where the direct physical loss or damage occurred and all other **Locations** where Time Element loss ensues, for the Period of Liability divided by the number of working days in such Period of Liability.

7.14. **Delay in Completion -** The period of time between the **Anticipated Date of Completion** and the actual date on which commercial operations or use and occupancy can commence with the exercise of due diligence and dispatch.

7.15. **Described Cause(s) of Loss - Breakdown** of Equipment, **Earth Movement**, **Flood**, or **Named Storm**.

7.16. **Direct Dependent Time Element Location -**

7.16.01. Any **Location** of a direct: customer, supplier, contract manufacturer or contract service provider to the Insured;

7.16.02. Any **Location** of any company under a royalty, licensing fee or commission agreement with the Insured.

7.16.03. A **Direct Dependent Time Element Location** does not include Locations that are Insured Locations under this Policy or the Locations of any company directly or indirectly supplying to, or receiving from, the Insured, electricity, fuel, gas, water, steam, refrigeration, sewage, voice, data or video.

7.17. **Earth Movement -** Any **Earth Movement** including earthquake, landslide, mine subsidence, earth sinking, rising, shifting, or sinkhole collapse.

7.18. **Electronic Data -** Data of any kind that is recorded or transmitted in a form usable in electronic computer systems or networks, microchips, integrated circuits or similar devices in non-computer equipment, and which can be stored on **Media** for use by **Programs**.

7.19. **Fine Arts -** Includes, but is not limited to, bona fide works of art, works of rarity, works of historical values, works of artistic merit, photographs (positives and negatives), lithographs, illustrations, gallery proofs, original records, and similar property.

7.20. **Finished Stock** – Stock, which is ready for sale by the Insured, that is manufactured:

7.20.01. By the Insured; or

7.20.02. Under the Insureds' direction and to the Insureds' specifications.

7.20.03. For the purposes of the Gross Earnings Coverage only:

7.20.03.01. **Finished Stock** also includes whiskey and alcoholic products being aged.

7.20.03.02. **Finished Stock** does not include stock that is held for sale at any retail outlet insured under this Policy or that has been sold, that is manufactured:

7.20.03.02.01. By the Insured; or

7.20.03.02.02. Under the Insureds' direction and to the Insureds' specifications.

7.21. **First Named Insured -** The First Insured listed under Named Insured.

7.22. **Flood -** A general and temporary condition of partial or complete inundation of normally dry land areas or structure(s) caused by:

7.22.01. The unusual and rapid accumulation or runoff of surface waters, waves, tides, tidal waves, tsunami, the release of water, the rising, overflowing or breaking of boundaries of nature or man-made bodies of water; or the spray there from all whether driven by wind or not; or

7.22.02. Mudflow or mudslides caused by accumulation of water on or under the ground.

7.22.03. **Flood** also includes the backup of water from a sewer, drain or sump caused in whole or part by **Flood**.

7.22.04. **Flood** also includes **Storm Surge** if shown on the declarations as part of **Flood**.

7.23. **Fungus** (or **Fungi**) **-** Any form of fungus including, but not limited to, yeast, mold, mildew, rust, smut, mushroom, spores, mycotoxins, odors, or any other substances or gases, products or byproducts produced by, released by, or arising out of the current or past presence of **Fungi**.

7.24. **Improvements and Betterments -** Fixtures, alterations, installation or additions comprising part of a building occupied, but not owned by the Insured and acquired or made at the Insured's expense which the Insured cannot legally move.

7.25. **Indirect Dependent Time Element Location -**

7.25.01. Any **Location** of a company that is a direct: customer, supplier, contract manufacturer or contract service provider to a **Direct Dependent Time Element Location**; or

7.25.02. Any **Location** of a company that is an indirect: customer, supplier, contract manufacturer or contract service provider to a **Direct Dependent Time Element Location**.

7.25.03. An **Indirect Dependent Time Element Location** does not include Locations that are Insured Locations under this Policy or the Locations of any company directly or indirectly supplying to, or receiving from, the **Direct Dependent Time Element Location**, electricity, fuel, gas, water, steam, refrigeration, sewage, voice, data or video.

7.26. **Land Improvements -** Lawns, plants, shrubs or trees; pavements, roadways, sidewalks or similar works, but not including any fill or land beneath such property.

7.27. **Lease Interest -** The excess rent paid for the same or similar replacement property over actual rent otherwise payable had there been no loss or damage, plus cash bonuses or advance rent paid (including any maintenance or operating charges) for each month during the unexpired term of the lease.

7.28. **Location -**

7.28.01. As specified in the Schedule of Locations;

7.28.02. If not so specified in the Schedule of Locations:

7.28.02.01. a **Location** is a building(s) bounded on all sides by public streets, clear land space or open waterways, each not less than fifty feet wide;

7.28.02.02. A site or tract of land occupied or available for occupancy with tangible property; or

7.28.03. If the Insured is a tenant,

7.28.03.01. those portions of the building not rented by the Insured; or

7.28.03.02. those portions of the building not intended to be rented by the Insured or others.

7.29. **Media -** Tangible personal property on which **Electronic Data** or **Programs** can be recorded, but not the **Data** or **Programs** themselves. **Money** or **Securities** are not **Media**.

7.30. **Merchandise -** Goods kept for sale by the Insured which are not **Raw Stock**, **Stock in Process** or **Finished Stock**.

7.31. **Miscellaneous Unnamed Location -** A **Location** owned, leased or rented by the Insured, but not specified in the Schedule of Locations.

7.32. **Moderate Flood Hazard Area (MFHA) -** Is an area defined by FEMA (The Federal Emergency Management Agency) or any foreign equivalent, between the limits of the base flood and the 0.2-percent-annual-chance or 500-year flood. A **Moderate Flood Hazard Area** is shown on the FIRM per FEMA and includes but is not limited to Zone B or Zone X (shaded). If not defined by FEMA or any foreign equivalent, it is an area between the limits of the base flood and the 0.2-percent-annual-chance or 500-year flood.

7.33. **Money -** Currency, coins and bank notes whether or not in current use; travelers checks, register checks and money orders held for sale to the public.

7.34. **Named Storm -** Any storm or weather disturbance that is named by the U. S. National Oceanic and Atmospheric Administration (NOAA) or the U. S. National Weather Service or the National Hurricane Center or any comparable worldwide equivalent.

**Named Storm** also includes **Storm Surge** if shown on the declarations as part of **Named Storm**.

7.35. **NCP -** No Coverage Provided.

7.36. **Net Lease Interest -** That sum which placed at six percent 6% interest compounded annually would equal the **Lease Interest** (less any amounts otherwise payable).

7.37. **New Construction or Additions -** Additional square footage beyond what existed and was usable for the Insured's business activities as of the inception of the policy period.

7.38. **Occurrence -** All loss(es) or damage that is attributable directly or indirectly to one cause or a series of similar or related causes. All such loss(es) or damage will be treated as one **Occurrence**. However, if **Occurrence** is specifically defined anywhere in this Policy, that definition will apply to the applicable coverage provided.

7.39. **Operations -** The Insured's business activities at the Insured Location.

7.40. **Ordinary Payroll -** Payroll expenses for all employees except officers, executives, department managers, employees under contract, and other important professional employees. Payroll expenses include the payroll, employee benefits (if directly related to payroll), FICA payments, Union dues and Workers' Compensation premiums the Insured pays for.

7.41. **Period of Interruption -** The period starting when the Insured's Electronic Data Processing Equipment or **Media** fails to operate and ending when with due diligence and dispatch, the Insured's Electronic Data Processing Equipment or **Media** could be restored to the same or equivalent operating condition that existed prior to the failure. The Period of Interruption does not include the additional time to make changes to the Insured's Electronic Data Processing Equipment or **Media**.

7.42. **Period of Service Interruption -** The period starting when an interruption of a specified service occurs and ending when with due diligence and dispatch, the service could be restored to the same or equivalent operating condition that existed prior to the failure.

7.43. **Policy Year -** The (12) twelve consecutive months after the date coverage begins on this Policy.

7.44. **Program (Software) -** Any computer software, computer applications, or recorded instructions, whether digital or otherwise, for the processing, sequencing, collecting, transmittal, recording, retrieval or storage of **Electronic Data**.

7.45. **Public Adjusters -** Individuals or groups, including consultants, secured specifically for the purpose of representing the Insured's interest in the adjustment of a claim(s) under this Policy.

7.46. **Qualifying Period -** The continuous period of time expressed in hours or days which must be exceeded before coverage under this Policy begins.

7.47. **Raw Stock** (or **Raw Material**) **-** Materials in the state in which the Insured receives it for conversion into stock in process or **Finished stock**.

7.48. **Scheduled Location -** A **Location** scheduled on this Policy.

7.49. **Securities -** Negotiable and non-negotiable instruments or contracts representing either **Money** (but does not include **Money**) or other property and includes:

7.49.01. Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

7.49.02. Evidences of debt issued in connection with credit or charge cards, which are not issued by the Insured.

7.50. **Selling Price -** The regular cash selling price at the **Location** where the loss occurs, less all discounts, pilferage, waste, returns and charges to which the **Finished Stock** and **Merchandise** would have been subject had no loss occurred.

7.51. **Soft Costs -** Expenses which are necessarily incurred during the Period of Liability, that would not have been incurred if the **Delay in Completion** had not occurred, at **Locations** undergoing renovation or in the course of construction, limited to the following:

7.51.01. Construction loan fees -The additional cost incurred to rearrange loans necessary for the completion of construction, repairs or reconstruction, including; the cost to arrange refinancing, accounting work necessary to restructure financing, legal work necessary to prepare new documents, charges by the lenders for the extension or renewal of loans necessary.

7.51.02. Commitment fees, leasing and marketing expenses - The additional cost of returning any commitment fees received from prospective tenant(s) or purchaser(s), the cost of re-leasing and marketing due to loss of tenant(s) or purchaser(s).

7.51.03. Additional fees – The additional cost for: architects, engineers, consultants, attorneys and accountants needed for the completion of construction, repairs or reconstruction.

7.51.04. Carrying costs – The additional cost of: property taxes, building permits, additional interest on loans, realty taxes and insurance premiums.

7.52. **Special Flood Hazard Area** (**SFHA**) **-** Is an area defined by FEMA (The Federal Emergency Management Agency) or any foreign equivalent that will be inundated by the flood event having a 1-percent chance of being equaled or exceeded in any given year. The 1-percent annual chance flood is

also referred to by FEMA as the base flood or 100-year flood. **SFHA**'s per FEMA include but are not limited to Zone A, Zone AO, Zone AH, Zones A1-A30, Zone AE, Zone A99, Zone AR, Zone AR/AE, Zone AR/AO, Zone AR/A1-A30, Zone AR/A, Zone V, Zone VE, and Zones V1-V30. If not defined by FEMA or any foreign equivalent, it is an area that will be inundated by the flood event having a 1-percent chance of being equaled or exceeded in any given year.

7.53. **Spores -** Any reproductive body produced by or arising out of any **Fungus** (or **Fungi**).

7.54. **Stock in Process - Raw Stock** (or material) which has undergone any aging, seasoning, mechanical or other process of manufacture at the Insured Location, but which has not become **Finished Stock**.

7.55. **Storm Surge -** A general and temporary condition of partial or complete inundation by salt water, caused by wind driven waves that result from a **Named Storm**, of normally dry land areas or structure(s) in coastal areas, bays or inland waters connected to an ocean or sea.

7.56. **Suspension** (**Suspended**) **-**

7.56.01. The slowdown or cessation of the Insured's business activities: or

7.56.02. As respects rental income that a part or all of the Insured Location is rendered untenantable.

7.57. **Terrorist Activity -** Any activity;

7.57.01. Defined as **Terrorist Activity** under the laws of the place where it is committed, or

7.57.02. Which involves any of the following:

7.57.02.01. The hijacking or sabotage of any conveyance (including an aircraft, vessel, or vehicle).

7.57.02.02. The seizing or detaining of, or threatening to kill, injure or continue to detain any person in order to compel a third person (including a governmental organization ) to do or abstain from doing any act as an explicit or implicit condition for the release of the individual seized or detained.

7.57.02.03. A violent attack upon an internationally protected person (as defined in section 1116(b)(4) of title 18, United States Code) or upon the liberty of such a person.

7.57.02.04. An assassination.

7.57.02.05. The use of any biological agent, chemical agent, or nuclear weapon or device, explosive or firearm (other than for mere personal monetary again), with intent to endanger, directly or indirectly, the safety of one or more individuals or to cause damage to property.

7.57.02.06. A threat, attempt, or conspiracy to do any of the foregoing.

7.57.02.07. Any act or acts deemed or declared by any government official, law enforcement agency, intelligence agency or other public authority to be terrorism or a terrorist act(s).

7.58. **Valuable Papers and Records -** Inscribed or printed or written documents, manuscripts or records, including abstracts, books, deeds, drawings, films, maps, mortgages, prints and tracings, card index systems, files, tapes, discs, drums, cells, magnetic recordings or storage **Media** for electronic data processing, **Electronic Data**, **Program(Software)**; but **Valuable Papers and Records** does not mean **Money** or **Securities**.

# Appendix A - Earth Movement/Earthquake Zones for USA including its Commonwealths and Territories

This list is for is for informational purposes only and does not convey any coverage under the policy.

ZURICH

| **COUNTRY -** The United States of America | | |
|---|---|---|
| **STATE** | **ZONE** | **COUNTIES/PARISHES/INDEPENDENT CITIES** |
| ALABAMA | 3 | Colbert, Franklin, Lauderdale, Lawrence, Limestone, Morgan |
| | 4 | Balance of State |
| ALASKA | 1 | Balance of State |
| | 2 | North Slope |
| ARIZONA | 4 | Entire State |
| ARKANSAS | 1 | Clay, Craighead, Crittenden, Cross, Greene, Lee, Mississippi, Poinsett, St Francis |
| | 2 | Independence, Jackson, Lawrence, Lonoke, Monroe, Phillips, Prairie, Randolph, Sharp, White, Woodruff |
| | 3 | Arkansas, Cleburne, Cleveland, Desha, Drew, Faulkner, Fulton, Grant, Izard, Jefferson, Lincoln, Pulaski, Saline, Stone |
| | 4 | Balance of State |
| CALIFORNIA | 1 | Entire State |
| COLORADO | 4 | Entire State |
| CONNECTICUT | 4 | Entire State |
| DELAWARE | 4 | Entire State |
| D. C. (Territory) | 4 | District of Columbia – Washington D. C. |
| FLORIDA | 4 | Entire State |
| GEORGIA | 4 | Entire State |
| HAWAII | 1 | Entire State |
| IDAHO | 3 | Bannock, Bear Lake, Caribou, Franklin, Oneida, Power |
| | 4 | Balance of State |
| ILLINOIS | 1 | Alexander, Pulaski |
| | 2 | Bond, Clay, Clinton, Edwards, Franklin, Gallatin, Hamilton, Hardin, Jackson, Jefferson, Johnson, Lawrence, Madison, Marion, Massac, Monroe, Perry, Pope, Randolph, Richland, St. Clair, Saline, Union, Wabash, Washington, Wayne, White, Williamson |
| | 3 | Calhoun, Christian, Clark, Coles, Crawford, Cumberland, Douglas, Edgar, Effingham, Fayette, Greene, Jasper, Jersey, Macoupin, Montgomery, Morgan, Moultrie, Pike, Sangamon, Scott, Shelby |
| | 4 | Balance of State |
| INDIANA | 2 | Crawford, Daviess, Dubois, Gibson, Greene, Knox, Lawrence, Martin, Orange, Perry, Pike, Posey, Spencer, Sullivan, Vanderburgh, Warrick |
| | 3 | Brown, Clay, Fayette, Johnson, Morgan, Monroe, Owen, Rush, Shelby, Union, Vigo |
| | 4 | Balance of State |
| IOWA | 4 | Entire State |
| KANSAS | 4 | Entire State |
| KENTUCKY | 1 | Ballard, Carlisle, Fulton, Hickman, McCracken |
| | 2 | Breckinridge, Butler, Caldwell, Calloway, Christian, Crittenden, Daviess, Graves, Hancock, Henderson, Hopkins, Livingston, Logan, Lyon, Marshall, McLean, Muhlenberg, Ohio, Simpson, Todd, Trigg, Union, Warren, Webster |
| | 4 | Balance of State |
| LOUISIANA | 4 | Entire State |
| MAINE | 4 | Entire State |
| MARYLAND | 4 | Entire State |

| STATE | ZONE | COUNTIES/PARISHES/INDEPENDENT CITIES |
|---|---|---|
| MASSACHUSETTS | 4 | Entire State |
| MICHIGAN | 4 | Entire State |
| MINNESOTA | 4 | Entire State |
| MISSISSIPPI | 1 | DeSoto, Tunica |
| | 2 | Alcorn, Benton, Bolivar, Coahoma, Lafayette, Leflore, Marshall, Panola, Pontotoc, Prentiss, Quitman, Sunflower, Tallahatchie, Tate, Tippah, Tishomingo, Union, Yalobusha |
| | 3 | Calhoun, Carroll, Chickasaw, Choctaw, Clay, Grenada, Holmes, Humphreys , Issaquena, Itawamba, Lee, Lowndes, Monroe, Montgomery, Oktibbeha, Sharkey, Warren, Washington, Webster, Yazoo |
| | 4 | Balance of State |
| MISSOURI | 1 | Bollinger, Butler, Cape Girardeau, Dunklin, Mississippi, New Madrid, Pemiscot, Scott, Stoddard |
| | 2 | Carter, Iron, Jefferson, Madison, Oregon, Perry, Reynolds, Ripley, St. Francois, Ste. Genevieve, St. Charles, St. Louis, Washington, Wayne, and the City of St Louis |
| | 3 | Audrain, Callaway, Cole, Crawford, Dent, Franklin, Gasconade, Howell, Lincoln, Maries, Marion, Miller, Montgomery, Osage, Phelps, Pike, Pulaski, Ralls, Shannon, Texas, Warren |
| | 4 | Balance of State |
| MONTANA | 4 | Entire State |
| NEBRASKA | 4 | Entire State |
| NEVADA | 1 | Carson City, Douglas |
| | 2 | Lyon , Storey, Washoe |
| | 3 | Clark |
| | 4 | Balance of State |
| NEW HAMPSHIRE | 4 | Entire State |
| NEW JERSEY | 4 | Entire State |
| NEW MEXICO | 4 | Entire State |
| NEW YORK | 4 | Entire State |
| NORTH CAROLINA | 4 | Entire State |
| NORTH DAKOTA | 4 | Entire State |
| OHIO | 4 | Entire State |
| OKLAHOMA | 4 | Entire State |
| OREGON | 2 | Clackamas, Multnomah, Washington |
| | 3 | Benton, Clatsop, Columbia, Coos, Curry, Douglas, Hood River, Jackson, Josephine, Lane, Lincoln, Linn, Marion, Polk, Tillamook, Yamhill |
| | 4 | Balance of State |
| PENNSYLVANIA | 4 | Entire State |
| RHODE ISLAND | 4 | Entire State |
| SOUTH DAKOTA | 4 | Entire State |
| SOUTH CAROLINA | 1 | Berkely, Charleston, Dorchester |
| | 3 | Bamberg, Beaufort, Calhoun, Clarendon, Colleton, Georgetown, Hampton, Jasper, Orangeburg, Richland, Sumter, Williamsburg |
| | 4 | Balance of State |
| TENNESSEE | 1 | Crockett, Dyer, Haywood, Lake, Lauderdale, Obion, Shelby, Tipton |
| | 2 | Benton, Carroll, Chester, Decatur, Fayette, Gibson, Hardeman, Hardin, Henderson, Henry, Humphreys, Madison, McNairy, Weakley |
| | 3 | Cheatham, Davidson, Dickson, Hickman, Houston, Lawrence, Lewis, Montgomery, Perry, Robertson, Stewart, Wayne |
| | 4 | Balance of State |
| TEXAS | 4 | Entire State |

| STATE | ZONE | COUNTIES/PARISHES/INDEPENDENT CITIES |
|---|---|---|
| UTAH | 2 | Davis, Salt Lake, Utah |
| | 3 | Cache, Morgan, Rich, Summit, Wasatch, Weber |
| | 4 | Balance of State |
| VERMONT | 4 | Entire State |
| VIRGINIA | 4 | Entire State |
| WASHINGTON | 1 | Clallam, Island, Jefferson, King, Kitsap, Mason, Pierce, San Juan, Thurston |
| | 2 | Skagit, Snohomish, Whatcom |
| | 3 | Clark, Cowlitz, Grays Harbor, Lewis, Pacific, Skamania, Wahkiakum, |
| | 4 | Balance of State |
| WEST VIRGINIA | 4 | Entire State |
| WISCONSIN | 4 | Entire State |
| WYOMING | 4 | Entire State |

| Commonwealths and Territories of The United States of America | | |
|---|---|---|
| | ZONE | |
| AMERICAN SAMOA | 2 | Entire Territory |
| GUAM | 1 | Entire Territory |
| NORTHERN MARIANA ISLANDS | 2 | Entire Commonwealth |
| PUERTO RICO | 1 | Entire Commonwealth |
| U.S. VIRGIN ISLANDS | 1 | Entire Territory for Limits of Liability |
| | 2 | Entire Territory for Deductibles |
| All other US Territories and Possessions | 2 | Entire Territory |

# Appendix B - Earth Movement/Earthquake Zones Worldwide except USA its Commonwealths and Territories

This list is for is for informational purposes only and does not convey any coverage under the policy.

| Country | Zone | Provinces/Territories/States/Counties |
|---|---|---|
| ALBANIA | 1 | Entire Country |
| ALGERIA | 2 | Balance of Country |
| | 4 | Adrar, Bechar, Tamanghasset, Ouargla, Illizi, Tindouf, Ghardaia |
| ANDORRA | 4 | Entire Country |
| ANGUILLA | 1 | Entire Country for Limits of Liability |
| | 2 | Entire Country for Deductibles |
| ANTARCTICA | 3 | Entire Country |
| ANTIGUA & BARBUDA | 1 | Entire Country for Limits of Liability |
| | 2 | Entire Country for Deductibles |
| ARGENTINA | 1 | Mendoza, Neuquen, San Juan |
| | 2 | Catamarca, Jujuy, Salta, Tucuman |
| | 4 | Balance of Country |
| ARMENIA | 1 | Entire Country |
| ARUBA | 3 | Entire Country |
| AUSTRALIA including Christmas Island, Cocos (Keeling) Islands | 2 | Christmas Island , Cocos (Keeling) Islands |
| | 3 | Western Australia |
| | 4 | Balance of Country |
| AUSTRIA | 4 | Entire Country |
| AZERBAIJAN | 1 | Entire Country |
| BAHAMAS | 4 | Entire Country |
| BAHRAIN | 4 | Entire Country |
| BANGLADESH | 1 | Entire Country |
| BARBADOS | 1 | Entire Country for Limits of Liability |
| | 2 | Entire Country for Deductibles |
| BELARUS | 4 | Entire Country |
| BELGIUM | 3 | Entire Country |
| BELIZE | 2 | Entire Country |
| BENIN | 4 | Entire Country |
| BERMUDA | 4 | Entire Country |
| BHUTAN | 1 | Balance of Country |
| | 2 | Gasa |
| BOLIVIA | 1 | La Paz |
| | 2 | Oruro, Potosi, Tarija |
| | 3 | Beni, Chuquisaca, Cochabamba, Pando, Santa Cruz |
| BOSNIA & HERZEGOVINA | 2 | Entire Country |

| **Country** | **Zone** | **Provinces/Territories/States/Counties** |
|---|---|---|
| BOTSWANA | 4 | Entire Country |
| BRAZIL | 4 | Entire Country |
| BRITISH VIRGIN ISLANDS | 1 | Entire Country for Limits of Liability |
| | 2 | Entire Country for Deductibles |
| BRUNEI DARUSSALAM | 3 | Entire Country |
| BULGARIA | 2 | Entire Country |
| BURKINA FASO | 4 | Entire Country |
| BURUNDI | 2 | Entire Country |
| CAMBODIA | 4 | Entire Country |
| CAMEROON | 3 | Entire Country |
| CANADA | 2 | British Columbia, Ontario, Quebec, Yukon except listed postal codes with first 3 characters in Zones 3 and 4 |
| | 3 | British Columbia Postal Codes:V8C,V8G,V0M,V0T,V0V,V1M,V2P, V2R,V2S,V2T,V2V,V2W,V2X,V2Y,V3B,V3C,V3E,V3G,V3H,V3J. V3K,V3L,V3N,V3R,V3T,V3V,V3Y,V4N,V4R,V4S,V4W,V4X,V4Z, V5A,V5B,V5C,V5E,V5G,V5H,V5J,V5K,V5L,V5M,V5N,V5R,V5T, V5V,V5Y,V5Z,V6A,V6B,V6C,V6E,V6G,V6H,V6J,V6K,V6L,V6R, V6T,V6Z,V7G,V7H,V7J,V7K,V7L,V7M,V7N,V7P,V7R,V7S,V7T, V7V,V7W,V7X,V7Y,V8B,V8J<br>New Brunswick Postal Codes: E1G,E1N,E1V,E1X,E2A,E2E,E2G, E2H,E2J,E2K,E2L,E2M,E2N,E2P,E2R,E2S,E2V,E3A,E3B,E3C,E3E, E3L,E3N,E3V,E3Y,E3Z,E4A,E4B,E4C,E4E,E4G,E4J,E4S,E4T,E4V, E4W,E4X,E4Y,E4Z,E5A,E5B,E5C,E5E,E5H,E5J,E5K,E5L,E5M, E5N,E5P,E5R,E5S,E5T,E5V,E6A,E6B,E6C,E6E,E6G,E6H,E6J,E6K, E6L,E7A,E7B,E7C,E7E,E7G,E7H,E7J,E7K,E7L,E7M,E7N,E7P,E8A, E8B,E8C,E8E,E8G,E8J,E8K,E8L,E8M,E8N,E8P,E8R,E9A,E9B,E9C, E9E,E9G,E9H,<br>Ontario Postal Codes: K0E,K0G,K6T,K6V,K7A,K7H<br>Quebec Postal Codes:G0E,G0J,G0K,G0M,G0N,G0P,G0S,G0V,G0Y, G0Z,G4R,G4S,G5B,G5J,G5X,G5Y,G5Z,G6A,G6B,G6E,G6G,G6H, G6J,G6K,G6L,G6P,G6R,G6S,G6T,G7A,G7B,G7G,G7H,G7J,G7K, G7N,G7P,G7S,G7T,G7X,G7Y,G7Z,G8A,J0A,J0B,J0E,J0H,J0J,J1A, J1C,J1E,J1G,J1H,J1J,J1K,J1L,J1M,J1N,J1R,J1S,J1T,J1X,J2G,J2H, J2J,J2K,J2L,J2M,J2N,J2R,J2S,J2T,J2X,J3M,J9V |

| Country | Zone | Provinces/Territories/States/Counties |
|---|---|---|
| CANADA (continued) | 4 | British Columbia Postal Codes: V0C,V0J,V1J,V2K,V2M,V0A,V0B, V0E,V0G,V0H,V0K,V0L,V0W,V0X,V1A,V1B,V1C,V1E,V1G,V1H, V1K,V1L,V1N,V1P,V1R,V1S,V1T,V1V,V1W,V1X,V1Y,V1Z,V2A, V2B,V2C,V2E,V2G,V2H,V2J,V2L,V2N,V4T,V4V<br>Ontario Postal Codes: K0H,K0K,K0L,K0M,K7G,K7K,K7L,K7M, K7N,K7P,K7R,K8N,K8P,K8R,K8V,K9A,K9H,K9J,K9K,K9L,K9V, L0A,L0B,L0C,L0E,L0G,L0H,L0J,L0K,L0L,L0M,L0N,L0P,L0R,L0S, L1A,L1B,L1C,L1E,L1G,L1H,L1J,L1K,L1L,L1M,L1P,L1R,L1S,L1T, L1V,L1W,L1X,L1Y,L1Z,L2A,L2E,L2G,L2H,L2J,L2M,L2N,L2P, L2R,L2S,L2T,L2V,L2W,L3B,L3C,L3K,L3M,L3P,L3R,L3S,L3T, L3V,L3X,L3Y,L3Z,L4A,L4B,L4C,L4E,L4G,L4H,L4J,L4K,L4L,L4M L4N,L4P,L4R,L4S,L4T,L4V,L4W,L4X,L4Y,L4Z,L5A,L5B,L5C, L5E,L5G,L5H,L5J,L5K,L5L,L5M,L5N,L5P,L5R,L5S,L5T,L5V, L5W,L6A,L6B,L6C,L6E,L6G,L6H,L6J,L6K,L6L,L6M,L6P,L6R, L6S,L6T,L6V,L6W,L6X,L6Y,L6Z,L7A,L7B,L7C,L7E,L7G,L7J, L7K,L7L,L7M,L7N,L7P,L7R,L7S,L7T,L8E,L8G,L8H,L8J,L8K,L8L, L8M,L8N,L8P,L8R,L8S,L8T,L8V,L8W,L9A,L9B,L9C,L9G,L9H, L9K,L9L,L9M,L9N,L9P,L9R,L9S,L9T,L9V,L9W,L9Y,L9Z,M1B, M1C,M1E,M1G,M1H,M1J,M1K,M1L,M1M,M1N,M1P,M1R,M1S, M1T,M1V,M1W,M1X,M2H,M2J,M2K,M2L,M2M,M2N,M2P,M2R, M3A,M3B,M3C,M3H,M3J,M3K,M3L,M3M,M3N,M4A,M4B,M4C, M4E,M4G,M4H,M4J,M4K,M4L,M4M,M4N,M4P,M4R,M4S,M4T, M4V,M4W,M4X,M4Y,M5A,M5B,M5C,M5E,M5G,M5H,M5J,M5K, M5L,M5M,M5N,M5P,M5R,M5S,M5T,M5V,M5W,M5X,M6A,M6B, M6C,M6E,M6G,M6H,M6J,M6K,M6L,M6M,M6N,M6P,M6R,M6S, M7A,M7Y,M8V,M8W,M8X,M8Y,M8Z,M9A,M9B,M9C,M9L,M9M, M9N,M9P,M9R,M9V,M9W,N0A,N0B,N0C,N0E,N0G,N0H,N0J, N0K,N0L,N0M,N0N,N0P,N0R,N1A,N1C,N1E,N1G,N1H,N1K,N1L, N1M,N1P,N1R,N1S,N1T,N2A,N2B,N2C,N2E,N2G,N2H,N2J,N2K, N2L,N2M,N2N,N2P,N2R,N2T,N2V,N2Z,N3A,N3B,N3C,N3E,N3H, N3L,N3P,N3R,N3S,N3T,N3V,N3W,N3Y,N4B,N4G,N4K,N4L,N4N, N4S,N4T,N4V,N4W,N4X,N4Z,N5A,N5C,N5H,N5L,N5P,N5R,N5V, N5W,N5X,N5Y,N5Z,N6A,N6B,N6C,N6E,N6G,N6H,N6J,N6K,N6L, N6M,N6N,N6P,N7A,N7G,N7L,N7M,N7S,N7T,N7V,N7W,N7X, N8A,N8H,N8M,N8N,N8P,N8R,N8,N8T,N8V,N8W,N8X,N8Y,N9A, N9B,N9C,N9E,N9G,N9H,N9J,N9K,N9V,N9Y,P0A,P0B,P0C,P0E, P0G,P0H,P0J,P0K,P0L,P0M,P0N,P0P,P0R,P0S,P0T,P0V,P0W,P0X, P0Y,P1A,P1B,P1C,P1H,P1L,P1P,P2A,P2B,P2N,P3A,P3B,P3C,P3E, P3G,P3L,P3N,P3P,P3Y,P4N,P4P,P4R,P5A,P5E,P5N,P6A,P6B,P6C, P7A,P7B,P7C,P7E,P7G,P7J,P7K,P7L,P8N,P8T,P9A,P9N<br>Quebec Postal Codes: G0C,G0G,G0W,G4T,G4X,G8B,G8C,G8E, G8G,G8H,G8J,G8K,G8L,G8M,G8N,G8P,J0M,J0Y,J0Z,J9P,J9T,J9X, J9Y,J9Z<br>Balance of Country |
| CAPE VERDE | 4 | Entire Country |
| CAYMAN ISLANDS | 1 | Entire Country for Limits of Liability |
| | 2 | Entire Country for Deductibles |
| CENTRAL AFRICAN REPUBLIC | 4 | Entire Country |

| Country | Zone | Provinces/Territories/States/Counties |
|---|---|---|
| CHAD | 4 | Entire Country |
| CHILE | 1 | Entire Country |
| CHINA | 1 | Liaoning, Tianjin, Hebei, Shandong, Gansu, Sichuan, Shaanxi, Yunnan |
| | 2 | Tibet Autonomous Region, Macau |
| | 3 | Balance of Country |
| | 4 | Hong Kong |
| COLOMBIA | 1 | Antioquia, Cauca, Choco, Narino, Quindio, Risaralda, Valle del Cauca, Bogota |
| | 2 | Balance of Country |
| | 3 | Amazona, Arauca, Caqueta, Casanare, Guainia, Guaviare, Meta, Putumayo, San Anres and Providencia, Vaupes, Vichada |
| COMOROS | 4 | Entire Country |
| CONGO, REPUBLIC OF | 2 | Entire Country |
| COOK ISLANDS | 2 | Entire Country |
| COSTA RICA | 1 | Entire Country |
| CROATIA | 2 | Entire Country |
| CURACAO | 3 | Entire Country |
| CYPRUS | 2 | Entire Country |
| CZECH REPUBLIC | 3 | Entire Country |
| DENMARK | 4 | Entire Country |
| DJIBOUTI | 2 | Entire Country |
| DOMINICA | 1 | Entire Country for Limits of Liability |
| | 2 | Entire Country for Deductibles |
| DOMINICAN REPUBLIC | 1 | Entire Country |
| ECUADOR | 1 | Entire Country |
| EGYPT | 2 | Cairo, Dakahlia, Damietta, Gharbia, Ismailia, Kafr el-Sheikh, Monufia, North Sinai, Port Said, Red Sea, Sharqia, Suez |
| | 3 | Balance of Country |
| EL SALVADOR | 1 | Entire Country |
| EQUATORIAL-GUINEA | 4 | Entire Country |
| ERITREA | 2 | Entire Country |
| ESTONIA | 4 | Entire Country |
| ETHIOPIA | 2 | Balance of Country |
| | 3 | Benishangul, Dure Dawa, Gambela, Harari, Somalia, Tigray |
| FAROE ISLANDS | 4 | Entire Country |
| FEDERATED STATES OF MICRONESIA | 2 | Entire Country |
| FIJI | 1 | Entire Country |
| FINLAND | 4 | Entire Country |
| FRANCE | 3 | Entire Country |
| FRENCH GUIANA | 4 | Entire Country |
| FRENCH POLYNESIA | 4 | Entire Country |
| GABON | 2 | Ogooue-Ivindo, Ogooue-Lolo |
| | 3 | Balance of Country |
| GAMBIA | 4 | Entire Country |
| GERMANY | 3 | Entire Country |

| Country | Zone | Provinces/Territories/States/Counties |
|---|---|---|
| GHANA | 1 | Accra |
| | 2 | Balance of Country |
| GIBRALTAR | 3 | Entire Country |
| GREECE | 1 | Entire Country |
| GREENLAND | 3 | Entire Country |
| GRENADA | 1 | Entire Country for Limits of Liability |
| | 2 | Entire Country for Deductibles |
| GUADELOUPE | 1 | Entire Country for Limits of Liability |
| | 2 | Entire Country for Deductibles |
| GUATEMALA | 1 | Balance of Country |
| | 3 | Peten |
| GUINEA | 2 | Boke |
| | 3 | Balance of Country |
| GUINEA-BISSAU | 3 | Entire Country |
| GUYANA | 3 | Entire Country |
| HAITI | 1 | Entire Country |
| HONDURAS | 1 | Balance of Country |
| | 3 | Atlantida, Colon, Comayagua, El Paraiso, Francisco Morazan, Gracias a Dios, Islas de la Bahia, Olancho, Yoro |
| HUNGARY | 3 | Entire Country |
| ICELAND | 2 | Northeast Region, South Region, Southern Peninsula Region, Capital Region |
| | 3 | Balance of Country |
| INDIA | 1 | Arunachal Pradesh, Assam, Gujarat, Haryana, Himachal Pradesh, Jammu and Kashmir, Manipur, Meghalaya, Mizoram, Nagaland, Punjab, Uttarakhand |
| | 3 | Balance of Country |
| INDONESIA | 2 | Balance of Country |
| | 3 | (Borneo)-East Kalimantan, South Kalimantan, West Kalimantan, Central Kalimantan, Riau, Jambi, South Sulawesi, Southeast Sulawesi, Bengka-Belitung, West Nusa Tenggara |
| IRAQ | 2 | Entire Country |
| IRELAND | 4 | Entire Country |
| ISLE OF MAN | 3 | Entire Country |
| ISRAEL | 1 | Entire Country |
| ITALY | 1 | Balance of Country |
| | 3 | Liguria, Lombardy, Marche, Piedmont, Aosta Valley, Trentino-Alto Adige/Südtirol, Veneto, Sardinia |
| IVORY COAST (COTE-D'IVOIRE) | 4 | Entire Country |
| JAMAICA | 1 | Entire Country for Limits of Liability |
| | 2 | Entire Country for Deductibles |
| JAPAN | 1 | Balance of Country |
| | 2 | Prefectures of Akita, Fukui, Fukuoka, Gifu, Gunma, Hiroshima, Ishikawa, Kagoshima, Niigata, Okayama, Okinawa, Saga, Shimane, Tochigi, Tottori, Toyama, Yamaguchi |

| Country | Zone | Provinces/Territories/States/Counties |
|---|---|---|
| JORDAN | 1 | Balance of Country |
| | 3 | Ma'an |
| KAZAKHSTAN | 1 | Entire Country |
| KENYA | 2 | Entire Country |
| KIRIBATI | 2 | Entire Country |
| KOSOVO | 3 | Entire Country |
| KUWAIT | 4 | Entire Country |
| KYRGYZSTAN (KYRGYZ REPUBLIC) | 1 | Entire Country |
| LAOS | 2 | Balance of Country |
| | 3 | Attapu, Bolikhamxai, Champasak, Khammouan, Salavan, Savannakhet, Xekong |
| LATVIA | 4 | Entire Country |
| LEBANON | 1 | Entire Country |
| LESOTHO | 2 | Balance of Country |
| | 3 | Berea, Butha-Buthe, Leribe, Mokhotlong, Thaba-Tseka |
| LIBERIA | 4 | Entire Country |
| LIBYA | 2 | Entire Country |
| LIECHTENSTEIN | 4 | Entire Country |
| LITHUANIA | 4 | Entire Country |
| LUXEMBOURG | 4 | Entire Country |
| MACEDONIA | 1 | Entire Country |
| MADAGASCAR | 3 | Entire Country |
| MALAWI | 2 | Entire Country |
| MALAYSIA | 3 | Entire Country |
| MALDIVES | 4 | Entire Country |
| MALI | 4 | Entire Country |
| MALTA | 4 | Entire Country |
| MARSHALL ISLANDS | 4 | Entire Country |
| MARTINIQUE | 1 | Entire Country for Limits of Liability |
| | 2 | Entire Country for Deductibles |
| MAURITANIA | 4 | Entire Country |
| MAURITIUS | 4 | Entire Country |
| MAYOTTE | 2 | Entire Country |
| MEXICO | 1 | Balance of Country |
| | 4 | Chihuahua, Campeche, Coahuila, Durango, Nuevo Leon, Quintana Roo, San Luis Potosi, Sonora, Tamaulipas, Yucatan, Zacatecas |
| MOLDOVA | 2 | Entire Country |
| MONACO | 3 | Entire Country |
| MONGOLIA | 1 | Balance of Country |
| | 2 | Govi-Altai, Arkhangai, Bulgan, Selenge, Tov, Ovorkhangai |
| | 3 | Khentii, Dundgovi, Dornogovi, Dornod, Sukhbaatar |
| MONTENEGRO | 2 | Entire Country |
| MONTSERRAT | 1 | Entire Country For Limits |
| | 2 | Entire Country for Deductibles |

| Country | Zone | Provinces/Territories/States/Counties |
|---|---|---|
| MOROCCO | 2 | Fès-Boulemane (Fès) , Gharb-Chrarda-Béni Hssen (Kénitra), Tangier-Tétouan (Tangier) |
| | 3 | Taza-Al Hoceima-Taounate (Al Hoceima) |
| | 4 | Balance of Country |
| MOZAMBIQUE | 2 | Manica, Sofala, Zambezia |
| | 3 | Balance of Country |
| NAMIBIA | 4 | Entire Country |
| NAURU | 2 | Entire Country |
| NEPAL | 1 | Entire Country |
| NETHERLANDS | 4 | Balance of Country |
| | 3 | Bonaire |
| | 1 | Saba, Sint Eustatius for Limits of Liability |
| | 3 | Saba, Sint Eustatius for Deductibles |
| NEW CALEDONIA | 3 | Entire Country |
| NEW ZEALAND | 1 | Balance of Country |
| | 3 | Northland, Auckland, Waikato |
| NICARAGUA | 1 | Balance of Country |
| | 3 | RAAN (Bilwi), RAAS (Bluefields) |
| NIGER | 4 | Entire Country |
| NIGERIA | 4 | Entire Country |
| NIUE | 2 | Entire Country |
| NORFOLK ISLAND | 2 | Entire Country |
| NORWAY | 4 | Entire Country |
| OMAN | 4 | Entire Country |
| PAKISTAN | 1 | Balance of Country |
| | 3 | Punjab |
| PALAU | 2 | Entire Country |
| PALESTINE | 1 | Entire Country |
| PANAMA | 2 | Entire Country |
| PAPUA NEW GUINEA | 1 | Entire Country |
| PARAGUAY | 4 | Entire Country |
| PERU | 1 | Entire Country |
| PHILIPPINES | 1 | Entire Country |
| PITCAIRN ISLANDS | 2 | Entire Country |
| POLAND | 4 | Entire Country |
| PORTUGAL | 2 | Lisbon, Santarém, Faro, Azores Autonomous Region |
| | 4 | Balance of Country |
| QATAR | 4 | Entire Country |
| REUNION | 4 | Entire Country |
| ROMANIA | 2 | Entire Country |
| RUSSIAN FEDERATION | 1 | Kamchatka, Buryatia, Tuva, Altai Republic,, Stavropol, Chechnya, Adygea, Krasnodar, Karachay-Cherkessia, Ingushetia, Dagestan, Kabardino-Balkaria, North Ossetia-Alania |
| | 3 | Balance of Country |

| Country | Zone | Provinces/Territories/States/Counties |
|---|---|---|
| RWANDA | 2 | Entire Country |
| SAMOA (WESTERN) | 2 | Entire Country |
| SAN MARINO | 2 | Entire Country |
| SAO TOME & PRINCIPE | 4 | Entire Country |
| SAUDI ARABIA | 2 | Jizan, Tabuk |
| | 4 | Balance of Country |
| SENEGAL | 3 | Entire Country |
| SERBIA | 2 | Entire Country |
| SEYCHELLES | 4 | Entire Country |
| SIERRA LEONE | 4 | Entire Country |
| SINGAPORE | 4 | Entire Country |
| SINT MAARTEN | 1 | Entire Country for limits of Liability |
| | 3 | Entire Country for Deductibles |
| SLOVAKIA | 3 | Entire Country |
| SLOVENIA | 2 | Entire Country |
| SOLOMON ISLANDS | 1 | Entire Country |
| SOMALIA | 3 | Entire Country |
| SOUTH AFRICA | 2 | Free State, Western Cape |
| | 3 | Balance of Country |
| SOUTH KOREA | 3 | Entire Country |
| SOUTHERN SUDAN | 3 | Entire Country |
| SPAIN | 2 | Andalusia, Murcia |
| | 3 | Balance of Country |
| SRI LANKA | 3 | Entire Country |
| ST. BARTHELEMY | 1 | Entire Country for Limits of Liability |
| | 2 | Entire Country for Deductibles |
| ST. KITTS AND NEVIS | 1 | Entire Country for Limits of Liability |
| | 2 | Entire Country for Deductibles |
| ST. LUCIA | 1 | Entire Country for Limits of Liability |
| | 2 | Entire Country for Deductibles |
| ST. MARTIN | 1 | Entire Country for Limits of Liability |
| | 2 | Entire Country for Deductibles |
| ST. VINCENT AND GRENADINES | 1 | Entire Country for Limits of Liability |
| | 2 | Entire Country for Deductibles |
| SURINAME | 4 | Entire Country |
| SWAZILAND | 2 | Entire Country |
| SWEDEN | 4 | Entire Country |
| SWITZERLAND | 4 | Entire Country |
| TAIWAN | 1 | Entire Country |
| TAJIKISTAN | 1 | Entire Country |
| TANZANIA | 2 | Kigoma, Arusha, Singida, Dodoma, Manyara, Rukwa, Mbeya, Iringa, Ruvuma, Mtwara |
| | 3 | Balance of Country |

| Country | Zone | Provinces/Territories/States/Counties |
|---|---|---|
| THAILAND | 2 | Chiang Rai, Payao, Nan, Chang Mai, Mae Hong Son, Lampang, Lampun, Phrae, Uttaradit, Sukhothai, Tak, Phitsanulok, Kamphaeng Phet, Phichit, Nakhon Sawan, Uthai Thani, Kanchanaburi, Chai Nat, Lop Buri, Sara Buri, Nakon Nayok, Ang Thong, Phra Nakhon Si Ayuthaya, Nakhon Pathom, Sing Buri, Pathum Thani, Bangkok, Samut Songkhram, Samut Sakhon, Nonthaburi, Samut Prakan, Phetchaburi |
| | 3 | Balance of Country |
| TIMOR-LESTE | 2 | Entire Country |
| TOGO | 3 | Entire Country |
| TONGA | 2 | Entire Country |
| TRINIDAD AND TOBAGO | 1 | Entire Country for Limits of Liability |
| | 2 | Entire Country for Deductibles |
| TUNISIA | 2 | Ariana, Béja, Ben Arous, Bizerte, Gafsa, Jendouba, Manouba, Monastir, Nabeul, Sousse, Tunis, Zaghouan |
| | 3 | Balance of Country |
| TURKEY | 1 | Entire Country |
| TURKMENISTAN | 1 | Entire Country |
| TURKS AND CAICOS | 1 | Entire Country for Limits of Liability |
| | 3 | Entire Country for Deductibles |
| TUVALU | 4 | Entire Country |
| UGANDA | 2 | Entire Country |
| UKRAINE | 4 | Entire Country |
| UNITED ARAB EMIRATES | 4 | Entire Country |
| UNITED KINGDOM including Guernsey, Jersey | 3 | Entire Country |
| URUGUAY | 4 | Entire Country |
| UZBEKISTAN | 1 | Entire Country |
| VANUATU | 2 | Entire Country |
| VATICAN CITY | 1 | Entire Country |
| VENEZUELA | 1 | Balance of Country |
| | 2 | Carabobo, Aragua, Guarico, Vargas, Miranda, Dpto Capital, Anzoategui, Monagas |
| | 4 | Delta Amacuro, Bolivar, Amazonas |
| VIETNAM | 2 | Lai Chau, Lao Cai, Yen Bai, Son La, Hoa Binh, Vinh Phu, Hanoi, Hai Phong, Ha Tay, Hai Hung, Thai Binh, Nom Ha, Ninh Binh, Thanh Hoa, Nghe An, Ha Tinh, Quang Binh, Quang Ngai, Binh Dinh, Phu Yen, Khanh Hoa, Ninh Thuan |
| | 3 | Balance of Country |
| WESTERN SAHARA | 4 | Entire Country |
| YEMEN | 4 | Entire Country |
| ZAMBIA | 2 | Northern, Southern |
| | 3 | Balance of Country |
| ZIMBABWE | 3 | Entire Country |

Any country not listed is Zone 1 unless stated differently in the Declarations of the Policy.

# Appendix C – Named Storm Zones for USA including its Commonwealths and Territories

ZURICH

This list is for is for informational purposes only and does not convey any coverage under the policy.

**WIND ZONES** ARE DEFINED AS FOLLOWS:
**COUNTRY –** The United States of America

| STATE | ZONE | COUNTIES/PARISHES/INDEPENDENT CITIES |
|---|---|---|
| Alabama | 1 | Baldwin, Mobile |
| | 2 | Clarke, Covington, Escambia, Geneva, Houston, Washington |
| Florida | 1 | Bay, Brevard, Broward, Calhoun, Charlotte, Citrus, Collier, Dixie, Duval, Escambia, Flagler, Franklin, Glades, Gulf, Hendry, Hernando, Hillsborough, Indian River, Jefferson, Lee, Levy, Liberty, Manatee, Martin, Miami-Dade, Monroe, Nassau, Okaloosa, Okeechobee, Palm Beach, Pasco, Pinellas, Saint Johns, Saint Lucie, Santa Rosa, Sarasota, Taylor, Volusia, Wakulla, Walton, Washington |
| | 2 | Balance of State |
| Georgia | 1 | Bryan, Camden, Chatham, Glynn, Liberty, McIntosh |
| | 2 | Appling, Brantley, Bulloch, Charlton, Effingham, Evans, Long, Pierce, Tattnall, Wayne |
| Hawaii | 1 | Entire State |
| Louisiana | 1 | Ascension, Assumption, Cameron, Iberia, Jefferson, Lafourche, Livingston, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John the Baptist, St. Martin, St. Mary, St. Tammany, Tangipahoa, Terrebonne, Vermilion, Washington |
| | 2 | Acadia, Allen, Beauregard, Calcasieu, East Baton Rouge, East Feliciana, Evangeline, Iberville, Jefferson Davis, Lafayette, Pointe Coupee, St. Landry, St. Helena, West Baton Rouge, West Feliciana |
| Maryland | 1 | Somerset, Wicomico, Worcester |
| Mississippi | 1 | George, Hancock, Harrison, Jackson, Pearl River, Stone |
| | 2 | Amite, Forrest, Greene, Lamar, Marion, Perry, Pike, Walthall, Wilkinson |
| North Carolina | 1 | Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Hyde, Jones, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrrell, Washington |
| | 2 | Bladen, Duplin, Gates, Greene, Hertford, Lenoir, Pitt, Robeson, Sampson |
| South Carolina | 1 | Beaufort, Berkeley, Charleston, Colleton, Dorchester, Georgetown, Horry, Jasper |
| | 2 | Allendale, Bamberg, Clarendon, Dillon, Florence, Hampton, Marion, Williamsburg |
| Texas | 1 | Aransas, Brazoria, Calhoun, Cameron, Chambers, Galveston, Jackson, Jefferson, Kenedy, Kleberg, Matagorda, Nueces, Orange, Refugio, San Patricio, Willacy |
| | 2 | Austin, Bee, Brooks, Colorado, DeWitt, Duval, Fort Bend, Goliad, Grimes, Hardin, Harris, Hidalgo, Jasper, Jim Hogg, Jim Wells, Lavaca, Liberty, Live Oak, McMullen, Montgomery, Newton, Polk, San Jacinto, Starr, Tyler, Victoria, Walker, Waller, Wharton |
| Virginia | 1 | Accomack, Gloucester, Isle of Wight, James City, Lancaster, Mathews, Middlesex, Northampton, Northumberland, Southampton, Surry, York |
| | 1 | Independent Cities: Chesapeake, Franklin City, Hampton, Newport News, Norfolk, Poquoson, Portsmouth, Suffolk, Virginia Beach, and Williamsburg |
| | 2 | Caroline, Charles City, Essex, Henrico, King and Queen, King George, King William, New Kent, Prince George, Richmond, Sussex, Westmoreland |

| Commonwealths and Territories of The United States of America | | |
|---|---|---|
| | **ZONE** | |
| AMERICAN SAMOA | 2 | Entire Territory |
| GUAM | 1 | Entire Territory |
| NORTHERN MARIANA ISLANDS | 1 | Entire Commonwealth |
| PUERTO RICO | 1 | Entire Commonwealth |
| U.S. VIRGIN ISLANDS | 1 | Entire Territory |
| All other US Territories and Possessions | 1 | Entire Territory |

# Appendix D – Named Storm Zones Worldwide except USA and its Commonwealths and Territories

ZURICH®

This list is for informational purposes only and does not convey any coverage under the policy.

| Country | Zone | Provinces/Territories/States/Counties |
|---|---|---|
| ALBANIA | 4 | Entire Country |
| ALGERIA | 3 | Entire Country |
| ANDORRA | 3 | Entire Country |
| ANGUILLA | 1 | Entire Country |
| ANTARCTICA | 4 | Entire Country |
| ANTIGUA & BARBUDA | 1 | Entire Country |
| ARMENIA | 4 | Entire Country |
| ARGENTINA | 4 | Entire Country |
| ARUBA | 1 | Entire Country for Limits of Liability |
| | 3 | Entire Country for Deductibles |
| AUSTRALIA including Christmas Island, Cocos (Keeling) Islands | 1 | Western Australia Postcodes: 6701,6707,6710,6711,6712,6713,6714,6716,6718,6720,6721,6722,6725,6726, 6728,6731,6733,6740,6743,6751,6754,6760,6762,6765,<br>Northern Territory Postcodes: 0800,0810,0812,0820,0822,0828,0829,0830,0832, 0835,0836,0837,0838,0840,0841,0845,0846,0847,0850,0852,0853,0854,0862, 0880,0885,0886,<br>Christmas Island, Cocos (Keeling) Islands |
| | 2 | Queensland Postcodes: 4580,4581,4620,4621,4630,4650,4655,4659,4660, 4662,4670,4671,4673,4674,4676,4677,4678,4680,4694,4695,4697,4699,4700, 4701,4702,4703,4704,4705,4706,4707,4710,4711,4712,4714,4715,4716,4717, 4718,4720,4721,4723,4737,4738,4739,4740,4741,4742,4743,4744,4745,4746, 4750,4751,4753,4754,4756,4757,4798,4799,4800,4801,4802,4803,4804,4805, 4806,4807,4808,4809,4810,4811,4812,4813,4814,4815,4816,4817,4818,4819, 4820,4830,4849,4850,4852,4854,4855,4856,4857,4858,4859,4860,4861,4865, 4868,4869,4870,4871,4872,4873,4874,4875,4876,4877,4878,4879,4880,4881, 4882,4883,4884,4885,4886,4887,4888,4890,4891,4895 |
| | 3 | Balance of Country |
| AUSTRIA | 4 | Entire Country |
| AZERBAIJAN | 4 | Entire Country |
| BAHAMAS | 1 | Entire Country |
| BAHRAIN | 4 | Entire Country |
| BANGLADESH | 1 | Entire Country |
| BARBADOS | 1 | Entire Country |
| BELARUS | 4 | Entire Country |

| Country | Zone | Provinces/Territories/States/Counties |
|---|---|---|
| BELGIUM | 3 | Entire Country |
| BELIZE | 1 | Entire Country |
| BENIN | 4 | Entire Country |
| BERMUDA | 1 | Entire Country |
| BHUTAN | 4 | Entire Country |
| BOLIVIA | 4 | Entire Country |
| BOSNIA & HERZEGOVINA | 4 | Entire Country |
| BOTSWANA | 3 | Entire Country |
| BRAZIL | 4 | Entire Country |
| BRITISH VIRGIN ISLANDS | 1 | Entire Country |
| BRUNEI DARUSSALAM | 4 | Entire Country |
| BULGARIA | 4 | Entire Country |
| BURKINA FASO | 4 | Entire Country |
| BURUNDI | 1 | Entire Country |
| CAMBODIA | 3 | Entire Country |
| CAMEROON | 4 | Entire Country |
| CANADA | 4 | Entire Country |
| CAPE VERDE | 3 | Entire Country |
| CAYMAN ISLANDS | 1 | Entire Country |
| CENTRAL AFRICAN REPUBLIC | 4 | Entire Country |
| CHAD | 3 | Entire Country |
| CHILE | 3 | Entire Country |
| CHINA | 1 | Hainan, Macau, Guangdong, Fujian, Zhejiang, Shanghai, Jiangsu, Shangdong |
| | 2 | Hong Kong |
| | 4 | Balance of Country |
| COLOMBIA | 3 | Entire Country |
| COMOROS | 3 | Entire Country |
| CONGO, REPUBLIC OF | 4 | Entire Country |
| COOK ISLANDS | 1 | Entire Country |
| COSTA RICA | 1 | Entire Country |
| CROATIA | 3 | Entire Country |
| CURACAO | 1 | Entire Country for Limits of Liability |
| | 3 | Entire Country for Deductibles |
| CYPRUS | 4 | Entire Country |
| CZECH REPUBLIC | 4 | Entire Country |

| | | |
|---|---|---|
| DENMARK | 3 | Entire Country |
| DJIBOUTI | 4 | Entire Country |
| DOMINICA | 1 | Entire Country |
| Country | Zone | Provinces/Territories/States/Counties |
| DOMINICAN REPUBLIC | 1 | Entire Country |
| ECUADOR | 4 | Entire Country |
| EGYPT | 4 | Entire Country |
| EL SALVADOR | 2 | Entire Country |
| EQUATORIAL GUINEA | 4 | Entire Country |
| ERITREA | 4 | Entire Country |
| ESTONIA | 3 | Entire Country |
| ETHIOPIA | 4 | Entire Country |
| FAROE ISLANDS | 3 | Entire Country |
| FEDERATED STATES OF MICRONESIA | 1 | Entire Country |
| FIJI | 1 | Entire Country |
| FINLAND | 3 | Entire Country |
| FRANCE | 4 | Entire Country |
| FRENCH GUIANA | 4 | Entire Country |
| FRENCH POLYNESIA | 1 | Entire Country |
| GABON | 3 | Entire Country |
| GAMBIA | 4 | Entire Country |
| GERMANY | 3 | Entire Country |
| GHANA | 3 | Entire Country |
| GIBRALTAR | 3 | Entire Country |
| GREECE | 4 | Entire Country |
| GREENLAND | 4 | Entire Country |
| GRENADA | 1 | Entire Country |
| GUADELOUPE | 1 | Entire Country |
| GUATEMALA | 1 | Izabal |
| | 2 | Balance of Country |
| GUINEA | 4 | Entire Country |
| GUINEA- BISSAU | 4 | Entire Country |
| GUYANA | 3 | Entire Country |
| HAITI | 1 | Entire Country |
| HONDURAS | 1 | Entire Country |
| HUNGARY | 4 | Entire Country |
| ICELAND | 4 | Entire Country |

| | | |
|---|---|---|
| INDIA | 1 | Andhra Pradesh, Jharkhand, Mizoram, Orissa, Tamil Nadu, Telangana, Tripura, West Bengal |
| | 3 | Balance of Country |
| INDONESIA | 3 | Entire Country |
| IRAQ | 4 | Entire Country |
| IRELAND | 3 | Entire Country |
| ISLE OF MAN | 3 | Entire Country |
| Country | Zone | Provinces/Territories/States/Counties |
| ISRAEL | 4 | Entire Country |
| ITALY | 3 | Entire Country |
| IVORY COAST (COTE-D'IVOIRE) | 4 | Entire Country |
| JAMAICA | 1 | Entire Country |
| JAPAN | 3 | Regions of Hokkaido, Tohoku |
| | 1 | Balance of Country |
| JORDAN | 4 | Entire Country |
| KAZAKHSTAN | 4 | Entire Country |
| KENYA | 3 | Entire Country |
| KIRIBATI | 1 | Entire Country |
| KOSOVO | 4 | Entire Country |
| KUWAIT | 4 | Entire Country |
| KYRGYZSTAN (KYRGYZ REPUBLIC) | 4 | Entire Country |
| LAOS | 3 | Entire Country |
| LATVIA | 3 | Entire Country |
| LEBANON | 4 | Entire Country |
| LESOTHO | 4 | Entire Country |
| LIBERIA | 4 | Entire Country |
| LIBYA | 4 | Entire Country |
| LIECHTENSTEIN | 4 | Entire Country |
| LITHUANIA | 3 | Entire Country |
| LUXEMBOURG | 4 | Entire Country |
| MACEDONIA | 4 | Entire Country |
| MADAGASCAR | 2 | Entire Country |
| MALAWI | 4 | Entire Country |
| MALAYSIA | 3 | Entire Country |
| MALDIVES | 3 | Entire Country |
| MALI | 4 | Entire Country |
| MALTA | 4 | Entire Country |

| | | |
|---|---|---|
| MARSHALL ISLANDS | 2 | Entire Country |
| MARTINIQUE | 1 | Entire Country |
| MAURITANIA | 4 | Entire Country |
| MAURITIUS | 1 | Entire Country |
| MAYOTTE | 1 | Entire Country |
| MEXICO | 1 | Baja California Sur, Colima, Campeche, Chiapas, Guerrero, Jalisco, Michoacan, Oaxaca, Quintana Roo, Tabasco, Tamaulipas, Veracruz, Yucatan |
| | 4 | Balance of Country |
| MOLDOVA | 4 | Entire Country |
| MONACO | 3 | Entire Country |
| Country | Zone | Provinces/Territories/States/Counties |
| MONGOLIA | 4 | Entire Country |
| MONTENEGRO | 4 | Entire Country |
| MONTSERRAT | 1 | Entire Country |
| MOROCCO | 4 | Entire Country |
| MOZAMBIQUE | 1 | Entire Country |
| NAMIBIA | 4 | Entire Country |
| NAURU | 4 | Entire Country |
| NEPAL | 4 | Entire Country |
| NETHERLANDS | 4 | Balance of Country |
| | 1 | Bonaire for Limits of Liability |
| | 3 | Bonaire for Deductibles |
| | 1 | Saba |
| | 1 | Sint Eustatius |
| NEW CALEDONIA | 1 | Entire Country |
| NEW ZEALAND | 3 | Entire Country |
| NICARAGUA | 1 | RAAN (Bilwi), RAAS (Bluefields) |
| | 2 | Balance of Country |
| NIGER | 4 | Entire Country |
| NIGERIA | 4 | Entire Country |
| NIUE | 1 | Entire Country |
| NORFOLK ISLAND | 2 | Entire Country |
| NORWAY | 3 | Entire Country |
| OMAN | 3 | Entire Country |
| PAKISTAN | 3 | Entire Country |
| PALAU | 1 | Entire Country |
| PALESTINE | 4 | Entire Country |
| PANAMA | 3 | Entire Country |
| PAPUA NEW GUINEA | 3 | Entire Country |
| PARAGUAY | 4 | Entire Country |
| PERU | 4 | Entire Country |

| | | |
|---|---|---|
| PHILIPPINES | 1 | Entire Country |
| PITCAIRN ISLANDS | 1 | Entire Country |
| POLAND | 3 | Entire Country |
| PORTUGAL | 3 | Azores Autonomous Region |
| | 4 | Entire Country |
| QATAR | 4 | Entire Country |
| REUNION | 1 | Entire Country |
| ROMANIA | 4 | Entire Country |
| RUSSIAN FEDERATION | 4 | Entire Country |
| Country | Zone | Provinces/Territories/States/Counties |
| RWANDA | 4 | Entire Country |
| SAMOA (WESTERN ) | 1 | Entire Country |
| SAN MARINO | 4 | Entire Country |
| SAO TOME & PRINCIPE | 4 | Entire Country |
| SAUDI ARABIA | 4 | Entire Country |
| SENEGAL | 4 | Entire Country |
| SERBIA | 4 | Entire Country |
| SEYCHELLES | 3 | Entire Country |
| SIERRA LEONE | 4 | Entire Country |
| SINGAPORE | 4 | Entire Country |
| SINT MAARTEN | 1 | Entire Country |
| SLOVAKIA | 4 | Entire Country |
| SLOVENIA | 4 | Entire Country |
| SOLOMON ISLANDS | 2 | Entire Country |
| SOMALIA | 4 | Entire Country |
| SOUTH AFRICA | 4 | Entire Country |
| SOUTH KOREA | 2 | Entire Country |
| SOUTHERN SUDAN | 4 | Entire Country |
| SPAIN | 4 | Entire Country |
| SRI LANKA | 2 | Entire Country |
| ST. BARTHELEMY | 1 | Entire Country |
| ST. KITTS AND NEVIS | 1 | Entire Country |
| ST. LUCIA | 1 | Entire Country |
| ST. MARTIN | 1 | Entire Country |
| ST. VINCENT AND THE GRENADINES | 1 | Entire Country |
| SURINAME | 4 | Entire Country |

| | | |
|---|---|---|
| SWAZILAND | 4 | Entire Country |
| SWEDEN | 3 | Entire Country |
| SWITZERLAND | 4 | Entire Country |
| TAIWAN | 1 | Entire Country |
| TAJIKISTAN | 4 | Entire Country |
| TANZANIA | 4 | Entire Country |
| THAILAND | 3 | Entire Country |
| TIMOR-LESTE | 3 | Entire Country |
| TOGO | 4 | Entire Country |
| TONGA | 1 | Entire Country |
| TRINIDAD AND TOBAGO | 1 | Entire Country |
| TUNISIA | 4 | Entire Country |

| Country | Zone | Provinces/Territories/States/Counties |
|---|---|---|
| TURKEY | 4 | Entire Country |
| TURKMENISTAN | 4 | Entire Country |
| TURKS AND CAICOS | 1 | Entire Country |
| TUVALU | 3 | Entire Country |
| UGANDA | 4 | Entire Country |
| UKRAINE | 4 | Entire Country |
| UNITED ARAB EMIRATES | 4 | Entire Country |
| UNITED KINGDOM including Guernsey, Jersey | 3 | Entire Country |
| URUGUAY | 3 | Entire Country |
| UZBEKISTAN | 4 | Entire Country |
| VANUATU | 1 | Entire Country |
| VATICAN CITY | 4 | Entire Country |
| VENEZUELA | 3 | Entire Country |
| VIETNAM | 2 | Entire Country |
| WESTERN SAHARA | 4 | Entire Country |
| YEMEN | 3 | Entire Country |
| ZAMBIA | 4 | Entire Country |
| ZIMBABWE | 4 | Entire Country |

Any country not listed is designated as Zone 1 unless stated differently in the Declarations of this Policy

# Amendatory Endorsement - Alaska

ZURICH®

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

1. Section VI-General Policy Conditions, Cancellation/Non-renewal, is deleted in its entirety and replaced by the following:

CANCELLATION/NON-RENEWAL/CONDITIONAL RENEWAL

Cancellation

The **First Named Insured** shown in the Declarations may cancel this Policy by mailing or delivering to the Company advance written notice of cancellation.

The Company may cancel this Policy by mailing or delivering to the **First Named Insured** and to the agent or broker of record written notice of cancellation at least the greater of:

Ten (10) days before the effective date of cancellation if the Company cancels for discovery of fraud or material misrepresentation by the insured;

Twenty (20) days or the number of days before the effective date of cancellation if the Company cancels for nonpayment of premium, as stated in the Declarations; or

Sixty (60) days or the number of days before the effective date of cancellation if the Company cancels for any other reason, as stated in the Declarations.

The Company will mail or deliver notice to the **First Named Insured's** mailing address shown in the Declarations of this Policy or any Endorsement attached thereto and to the agent or broker of record.

Notice of cancellation will state the effective date of cancellation. The Policy Period will end on that date.

If this Policy is cancelled, the Company will send the **First Named Insured** any premium refund due. If the Company cancels, the refund will be pro rata. If the **First Named Insured** cancels, the refund may be subject to a cancellation fee of 7.5% of any unearned premium. If the Company cancels, any unearned premium will be returned before the effective date of cancellation or forty-five (45) days after the cancellation notice is given in cases of nonpayment, misrepresentation or fraud. If the Insured cancels, any unearned premium will be returned the later of the effective date of cancellation or 45 days after receipt of the request for cancellation.

If notice is mailed, proof of mailing will be sufficient proof of notice.

If under the laws of the jurisdiction in which the property is located, such cancellation terms or conditions are different, then cancellation terms or conditions will be as permitted by such laws.

Non-renewal

The Company may non-renew this Policy by mailing or delivering to the **First Named Insured** written notice, the number of days before the non-renewal, as permitted by law in the jurisdiction where in the property is located.

Conditional Renewal

If the premium to renew this policy increases more than 10% for a reason other than an increase in coverage or exposure basis, or if after the renewal there will be a material restriction or reduction in coverage not specifically requested by the **First Named Insured**, the Company shall mail written notice of the change(s) to the **First Named Insured** the number of days before the expiration date of the policy, as permitted by law in the jurisdiction where in the property is located.

2. SECTION VI – GENERAL POLICY CONDITIONS, CONCEALMENT, MISREPRSENTATION OR FRAUD, is deleted in its entirety and replaced by the following:

CONCEALMENT, MISREPRESENTATION OR FRAUD

The Company will not pay for any loss or damage in any case involving misrepresentations, omissions, concealment of facts, or incorrect statements:

That are fraudulent;

That are material either to the acceptance of the risk, or to the hazard assumed by the Company; or

If the Company, in good faith, would not have:

Issued the policy or contract;

Issued a policy or contract in as large an amount, or at the same premium or rate; or

Provided coverage with respect to the hazard resulting in the loss;

if the true facts had been made known to the Company as required either by the application for the policy or contract or otherwise.

3. Section VI-General Policy Conditions, Loss Conditions, Appraisal is deleted in its entirety and replaced by the following:

APPRAISAL

If the Insured and the Company fail to agree on the value of the property or the amount of loss, each will, on the written demand of either, select a competent, disinterested, and impartial appraiser, who has no direct or indirect financial interest in the claim. Each will notify the other of the appraiser selected within 10 days of such demand. The Insured may not invoke appraisal unless it has first fully complied with all provisions of this Policy, including Duties in the Event of Loss or Damage and has provided the Company with a signed and sworn statement of loss.

The appraisers will first select a competent, disinterested and impartial umpire. If the appraisers fail to agree upon an umpire within 15 days then, on the request of the Insured or the Company, a judge of a court of record in the jurisdiction in which the appraisal is pending will select the umpire. The appraisers will then appraise the value of the property or the amount of loss. They will state separately, the actual cash value and replacement cost value, as of the date of loss and the amount of loss, each item of physical loss or damage or, if for Time Element loss, the amount of loss for each Time Element Coverage of this Policy.

If the appraisers fail to agree, they will submit their differences to the umpire. An award stating separately the actual cash value and replacement cost value, as of the date of loss and the amount of loss, for each item of physical loss or damage or, if for Time Element loss, the amount of loss for each Time Element Coverage of this Policy agreed to in writing by any two will determine the amount of loss and will be binding on the Company.

Once there is an award, the Company retains the right to apply all policy terms and conditions (including but not limited to deductibles, exclusions, and Limits of Liability) to the award. The Company further retains its right to deny the claim in whole or in part.

All expenses and fees, not including counsel or adjuster fees, incurred because of the appraisal shall be paid as determined by the umpire.

3. The following is added to Subsection 6.13.01 of Section VI-General Policy Conditions, Loss Conditions, Duties in the Event of Loss or Damage:

The Insured has the right to an attorney being present during any examination under oath.

4. The following is added to Section VI-General Policy Conditions and supersedes any provision to the contrary:

As required by Alaska Statute Section 21.36.212, we will not deny a claim if a risk, hazard or contingency insured against is the dominant cause of a loss and an excluded risk, hazard, or contingency is also in the chain of causes but operates on a secondary basis.

5. SECTION VI – GENERAL POLICY CONDITIONS, LOSS CONDITIONS, SUIT AGAINST THE COMPANY, is deleted in its entirety and replaced by the following:

   No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless the Insured has fully complied with all the provisions of this Policy. Legal action must be started within three (3) years after the date on which the cause of action accrues.

**All other terms, conditions and limitations of this Policy remain unchanged.**

# Amendatory Endorsement - Connecticut

ZURICH®

| Insured Name | Policy Number | Effective Date | |
|---|---|---|---|
| Detroit Entertainment, L.L.C | ERP3061326-01 | 12/01/2019 | |

**THIS ENDORSEMENT CHANGES THE POLICY AND APPLIES TO THOSE RISKS IN CONNECTICUT. PLEASE READ IT CAREFULLY.**

1. SECTION V – SPECIAL COVERAGES & DESCRIBED CAUSES OF LOSS, DESCRIPTION OF SPECIAL COVERAGES, is amended by the addition of the following:

   In the event of an electrical outage or interruption of electrical service at an Insured Location from a **Covered Cause of Loss**, Personal Property that is perishable food that you donate to a temporary emergency shelter operated or supervised by a municipality or the state during a state of emergency for a limited time period will be considered physically damaged, for the purpose of coverage as required by Connecticut Public Act 12-123 only, if:

   a) The Insured's food establishment is classified as class III or class IV pursuant to regulations adopted under section 19a-36 of Connecticut general statutes;

   b) The Governor proclaims that a state of emergency exists;

   c) The electrical outage or interruption of electrical service to the Insured Location is forecast by the electric supplier to last longer for that Insured Location than the time period prescribed by the Department of Public Health or local director of health, or an authorized agent thereof, for the safe handling of such perishable food;

   d) Such perishable food is donated prior to the expiration of the time period described in c) above; and

   e) The Insured provides us written documentation from such shelter stating the date and time of such donation.

   Coverage under this provision is provided only up the applicable Limit of Liability and subject to all other terms and conditions of the policy.

2. SECTION VI – GENERAL POLICY CONDITIONS, CANCELLATION/NON-RENEWAL, is deleted in its entirety and replaced by the following:

   Cancellation

   The **First Named Insured** shown in the Declarations may cancel this Policy by mailing or delivering to the Company advance written notice of cancellation.

   For Policies in Effect Sixty (60) Days or Less, the Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least:

   Ten (10) days before the effective date of cancellation if the Company cancels for nonpayment of premium.

Thirty (30) days before the effective date of cancellation if the Company cancels for any other reason.

If this Policy has been in effect for sixty (60) days or more, or if it is a renewal or continuation of a Policy issued by the Company, the Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least ten (10) days before the effective date of cancellation if the Company cancels for one or more of the following reasons:

Nonpayment of premium;

Conviction of a crime arising out of acts increasing the hazard insured against;

Discovery of fraud or material misrepresentation by the Insured in obtaining the Policy or in perfecting any claim;

Discovery of any willful or reckless act or omission by the Insured increasing the hazard insured against; or;

A determination by the Commissioner that continuation of the Policy would violate or place the Company in violation of the law.

If this Policy has been in effect for sixty (60) days or more, or if it is a renewal or continuation of a Policy issued by the Company, the Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least sixty (60) days before the effective date of cancellation if the Company cancels for one or more of the following reasons:

Physical changes in the property which increase the hazard insured against;

A material increase in the hazard insured against; or

A substantial loss of reinsurance by the Company affecting this particular line of insurance.

The Company may not cancel policies in effect for sixty (60) days or more or renewal policies for any reason other than the reasons described above.

If the Company cancels for nonpayment of premium, the Insured may continue the coverage and avoid the effect of cancellation by payment in full at any time prior to the effective date of cancellation.

Notice of cancellation will state the reason(s) for cancellation.

Notice of Cancellation will be delivered or sent by Registered mail, Certified mail, or Mail evidenced by a United States Post Office certificate of mailing.

The Company will give notice to the **First Named Insured** at the last mailing address known.

Notice of cancellation will state the effective date of cancellation. The Policy period will end on that date.

If this Policy is cancelled, the Company will send the **First Named Insured** any premium refund due. If the Company cancels, the refund will be pro rata. If the **First Named Insured** cancels, the refund may be less than pro rata. The cancellation will be effective even if the Company has not made or offered a refund. Notice of cancellation will state that the excess premium (if not tendered) will be refunded on demand.

If notice is mailed, proof of mailing will be sufficient proof of notice.

Non-renewal

The Company may non-renew this Policy by mailing or delivering to the **First Named Insured** written notice of non-renewal at least sixty (60) days before the expiration date of this Policy stating the reason for non-renewal . This notice will be delivered or sent by Registered mail or Certified mail to the last address known to us. The Company is not required to send this notice if nonrenewal is due to the Insured failure to pay any advance premium required for renewal.

3. SECTION VI – GENERAL POLICY CONDITIONS, LENDERS LOSS PAYEE AND MORTGAGE HOLDER INTERESTS AND OBLIGATIONS, is modified to add the following:

   Mortgagee interests and obligations. If loss hereunder is made payable, in whole or in part, to a designated mortgagee not named herein as the insured, such interest in this policy may be cancelled by giving to such mortgagee a ten days' written notice of cancellation.

   If the insured fails to render proof of loss such mortgagee, upon notice, shall render proof of loss in the form herein specified within sixty (60) days thereafter and shall be subject to the provisions hereof relating to appraisal and time of payment and of bringing suit. If this Company shall claim that no liability existed as the mortgagor or owner, it shall, to the extent of payment of loss to the mortgagee, be subrogated to all the mortgagee's rights of recovery, but without impairing mortgagee's right to sue; or it may pay off the mortgage debt and require an assignment thereof and of the mortgage. Other provisions relating to the interests and obligations of such mortgagee may be added hereto by agreement in writing.

4. The following is added to SECTION VI –GENERAL POLICY CONDITIONS:

   For any loss subject to the Standard Fire Insurance Policy of the State of Connecticut, as set forth in the General Statutes of Connecticut, if any conditions of the Standard Fire Insurance Policy of the State of Connecticut are construed to be more liberal than the conditions of this Policy, then the conditions of The Standard Fire Insurance Policy of the State of Connecticut will apply with respect to the perils insured by the Standard Fire Policy of Connecticut.

5. SECTION VI –GENERAL POLICY CONDITIONS, CONFORMITY TO STATUTES, is amended by the addition of the following and supersede anything to the contrary:

   Any provisions required by Connecticut law to be included in policies issued by the Company shall be deemed to have been included in this Policy.

   If the provisions of this Policy conflict with the laws of any jurisdictions in which this Policy applies, and if certain provisions are required by Connecticut law to be stated in this Policy, this Policy shall be read so as to eliminate such conflict or deemed to include such provisions for Insured Locations within such jurisdictions.

6. SECTION VI –GENERAL POLICY CONDITIONS, SUIT AGAINST THE COMPANY, is amended by the addition of the following and supersede anything to the contrary:

   No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless the Insured has fully complied with all the provisions of this Policy. Legal action must be started within twenty-four (24) months after the date of direct physical loss or damage to Covered Property or to other property as set forth herein.

   If under the laws of the jurisdiction in which the property is located, such twenty-four months' limitation is invalid, then, any such legal action needs to be started within the shortest limit of time permitted by such laws.

7. The following is deleted from SECTION VI –GENERAL POLICY CONDITIONS, VALUATION:

   For **Fine Arts** articles, the lesser of the reasonable and necessary cost to repair or restore such property to the physical condition that existed on the date of loss or the cost to replace the article or the value if stated on a

schedule on file. If the **Fine Arts** article cannot be replaced and an appraisal is not available, the valuation shall be market value based on prevailing conditions at the time of loss or damage.

and

The cost to replace non-repairable electrical or mechanical equipment, including computer equipment, with equipment that is the most functionally equivalent to that damaged or destroyed, even if such equipment has technological advantages, represents an improvement in function, or forms part of a program of system enhancement.

**All other terms, conditions and limitations of this Policy remain unchanged**

# Amendatory Endorsement - Florida

ZURICH®

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

1. SECTION VI-GENERAL POLICY CONDITIONS, CANCELLATION/NON-RENEWAL, is deleted in its entirety and replaced by the following:

Cancellation

The **First Named Insured** shown in the Declarations may cancel this Policy by mailing or delivering to the Company advance written notice of cancellation.

A single claim on a property insurance policy which is the result of water damage may not be used as the sole cause for cancellation or nonrenewal unless the insurer can demonstrate that the insured has failed to take action reasonably requested by the insurer to prevent a future similar occurrence of damage to the insured property.

Cancellation for Policies in Effect for Ninety (90) Days or Less

If this Policy has been in effect for ninety (90) days or less, the Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

Ten (10) days before the effective date of cancellation if the Company cancels for nonpayment of premium; or

Twenty (20) days before the effective date of cancellation if the Company cancels for any other reason, except the Company may cancel immediately if there has been a material misstatement or misrepresentation, or a failure to comply with underwriting requirements established by the Company.

The Company may not cancel:

On the basis of property insurance claims that are the result of an act of God, unless the Company can demonstrate, by claims frequency or otherwise, that the Insured has failed to take action reasonably necessary as requested by the Company to prevent recurrence of damage to the insured property; or

Solely on the basis of a single property insurance claim which is the result of water damage, unless the Company can demonstrate that the Insured has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

Cancellation for Policies in Effect for More Than Ninety (90) Days

If this Policy has been in effect for more than ninety (90) days, the Company may cancel this Policy only for one or more of the following reasons:

(a) Nonpayment of premium;

(b) The Policy was obtained by a material misstatement;

(c) In the event of failure to comply, within ninety (90) days after the effective date of coverage, with underwriting requirements established by the Company before the effective date of coverage;

(d) There has been a substantial change in the risk covered by the Policy;

(e) The cancellation is for all Insureds under such Policies for a given class of Insured;

(f) On the basis of property insurance claims that are the result of an act of God, if the Company can demonstrate, by claims frequency or otherwise, that the Insured has failed to take action reasonably necessary by the Company to prevent recurrence of damage to the insured property;

(g) On the basis of a single property insurance claim which is the result of water damage, if the Company can demonstrate that the Insured has failed to take action reasonably requested by the Company to prevent a future similar occurrence of damage to the insured property; or

(h) The cancellation of some or all of our policies is necessary to protect the best interests of the public or policyholders and such cancellation is approved by the Florida Office of Insurance Regulation.

If the Company cancels this Policy for any of these reasons, the Company will mail or deliver to the **First Named Insured** written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

Ten (10) days before the effective date of cancellation if cancellation is for nonpayment of premium; or

Forty-five (45) days before the effective date of cancellation if:

(a) Cancellation is for one of the other reasons stated in paragraphs (a) through (g) above and this policy does not cover a residential structure or its contents; or

(b) Cancellation is based upon the reason stated in (h) above.

120 days before the effective date of cancellation if cancellation is for one of the reasons stated in paragraphs (b) through (g) above and this policy covers a residential structure or its contents.

If this policy has been in effect for more than 90 days and covers a residential structure or its contents, the Company may not cancel this policy based on credit information available in public records.

Notice of cancellation will state the effective date of cancellation. The Policy Period will end on that date.

If this Policy is cancelled, the Company will send the **First Named Insured** any premium refund due. If the Company cancels, the refund will be pro rata. If the **First Named Insured** cancels, the refund may be less than pro rata but no less than 90% of the pro rata unearned premium. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, the Company will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

If this is an audit policy, then subject to the Insured's full cooperation with us or our agent in securing the necessary data for audit, the Company will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then the Company shall accept the Insured's own audit, and any premium refund due shall be mailed within 10 working days of receipt of the Insured's audit.

The cancellation will be effective even if the Company has not made or offered a refund.

If notice is mailed, proof of mailing will be sufficient proof of notice.

Non-Renewal

1. The Company may non-renew this Policy by mailing or delivering to the **First Named Insured,** at the Insured's last mailing address known to us, written notice of non-renewal, accompanied by the specific reason for non-renewal at least:

   (a) Forty-five (45) days prior to the expiration of this Policy if this policy does not cover a residential structure or its contents of it is necessary to protect the best interests of the public or policyholders and such nonrenewal is approved by the Florida Office of Insurance Regulation; or

   (b) 120 days prior to the expiration of the policy if this policy covers a residential structure or its contents.

2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to the Company. If notice is mailed, proof of mailing will be sufficient proof of notice.

3. The Company may not refuse to renew this policy:

(a) On the basis of property insurance claims that are the result of an act of God, unless the Company can demonstrate, by claims frequency or otherwise, that the Insured failed to take action reasonably necessary as requested by the Company to prevent recurrence of damage to the insured property;

(b) On the basis of filing of claims for **Sinkhole Loss.** However, the Company may refuse to renew this policy if:

(1) The total of such property insurance claim payments for this policy equals or exceeds the policy limits in effect on the date of loss for property damage to the covered building; or
(2) The Insured has failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based; or

(c) Solely on the basis of a single property insurance claim which is the result of water damage, unless the Company can demonstrate that the Insured has failed to take action reasonably requested by the Company to prevent a future similar occurrence of damage to the insured property.

(d) Notwithstanding the provisions of Paragraph 3**.,** the Company may refuse to renew this policy if this policy includes Sinkhole Loss coverage. If the Company nonrenews this policy for purposes of removing Sinkhole Loss coverage, pursuant to section 627.706, Florida Statutes, the Company will offer the Insured a policy that includes catastrophic ground cover collapse coverage.

(e) Notwithstanding the provisions of Paragraph 3**.,** the Company may refuse to renew this policy if nonrenewal of some or all of the Company's policies is necessary to protect the best interests of the public or policyholders and such nonrenewal is approved by the Florida Office of Insurance Regulation.

Limitations on Cancellation and Nonrenewal In the Event of Hurricane or Wind Loss**-** Residential Property

The following provisions apply to a policy covering a residential structure or its contents, if such property has sustained damage as a result of a hurricane or windstorm that is the subject of a declaration of emergency by the Governor and filing of an order by the Commissioner of Insurance Regulation:

(a) Except as provided in the paragraph (b), the Company may not cancel or nonrenew the policy until at least 90 days after repairs to the residential structure or its contents have been substantially completed so that it is restored to the extent that it is insurable by another insurer writing policies in Florida. If the Company elects to not renew the policy, the Company will provide at least 100 days' notice that the Company intends to nonrenew 90 days after the substantial completion of repairs.

(b) The Company may cancel or nonrenew the policy prior to restoration of the structure or its contents for any of the following reasons:

(1) Nonpayment of premium;
(2) Material misstatement or fraud related to the claim;
(3) The Company determines that the Insured has unreasonably caused a delay in the repair of the structure; or
(4) The Company has paid the policy limits.

If the Company cancels or nonrenew for nonpayment of premium, the Company will give the Insured 10 days' notice. If the Company cancels or nonrenews for a reason listed in Paragraph (b)(2), (b)(3) or (b)(4)**,** the Company will give the Insured 45 days' notice.

With respect to a policy covering a residential structure or its contents, any cancellation or nonrenewal that would otherwise take effect during the duration of a hurricane will not take effect until the end of the duration of such hurricane, unless a replacement policy has been obtained and is in effect for a claim occurring during the duration of the hurricane. The Company may collect premium for the period of time for which the policy period is extended.

With respect to the above paragraph, a hurricane is a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service (hereafter referred to as NHC). The hurricane occurrence begins at the time a hurricane watch or hurricane warning is issued for any part of Florida by the NHC and ends 72 hours after the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the NHC.

2**.** SECTION VI. **-** GENERAL POLICY CONDITIONS, CONCEALMENT, MISREPRESENTATION OR FRAUD is deleted in its entirety and replaced by the following:

CONCEALMENT, MISREPRESENTATION OR FRAUD

This Policy may be void as to all Insureds in any case of fraud by any Insured as it relates to this Policy at any time. It may also be void if any Insured, at any time, intentionally conceals or misrepresents a material fact concerning:

This Policy;

The Covered Property;

The Insured's interest in Covered Property; or

A claim under this Policy.

3. SECTION VI – GENERAL POLICY CONDITIONS, LOSS CONDITIONS, SUIT AGAINST THE COMPANY, is deleted in its entirety and replaced by the following:

No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless the Insured has fully complied with all the provisions of this Policy. Legal action must be started within five (5) years from the date of loss.

4. The following is deleted from SECTION VI – GENERAL POLICY CONDITIONS, SETTLEMENT OF CLAIMS, Loss Payment:

The Company will pay for covered loss or damage within thirty (30) days or as required by law, after receiving the sworn statement of loss, if the Insured has complied with all the terms of this Policy; and

The Company has reached agreement on the amount of loss; or

An appraisal award has been made,

and replaced by the following:

If the Insured has complied with all the terms of this Policy, the Company will pay for covered loss or damage within:

Twenty (20) days after receiving the sworn statement of loss and reaching written agreement with the Insured; or

Thirty (30) days after receiving the sworn statement of loss; and

There is an entry of a final judgment; or

A filing of an appraisal award with the Company.

5. SECTION VI – GENERAL POLICY CONDITIONS, LOSS CONDITIONS Is amended by adding the following:

A claim, supplemental claim or reopened claim for loss or damage caused by the peril of windstorm or hurricane is barred unless notice of the claim supplemental claim or reopened claim is given to the Company within 3 years after the hurricane first made landfall or the windstorm caused covered damage.

For purposes of this section, the term “supplemental claim” or “reopened claim” means any additional claim for recovery from the insurer for losses from the same hurricane or windstorm which the insurer has previously adjusted pursuant to the initial claim.

6. SECTION VI – GENERAL POLICY CONDITIONS, LOSS CONDITIONS is amended by adding the following:

Upon receipt of a claim for a **Sinkhole Loss** to a covered building, the Company shall meet the following standards in investigating a claim:

(1) Inspect the Insured's premises to determine if there is **Structural Damage** that may be the result of **Sinkhole Activity**.

(2) If the Company confirms that **Structural Damage** exists but is unable to identify a valid cause of such damage or discovers that such damage is consistent with **Sinkhole Loss**, the Company shall engage a **Professional Engineer** or a **Professional Geologist** to conduct testing as provided in s. 627.7072, Florida Statutes to determine the cause of the loss within a reasonable professional probability and issue a report as provided in s. 627.7073, Florida Statutes only if **Sinkhole Loss** is covered under the policy. Except as provided in subsections (4) and (6), the fees and costs of the **Professional Engineer** or **Professional Geologist** shall be paid by the Company.

(3) Following the initial inspection of the policyholder's premises, the Company shall provide written notice to the Insured disclosing the following information:

(a) What the Company has determined to be the cause of damage, if the Company has made such a determination.

(b) A statement of the circumstances under which the Company is required to engage a **Professional Engineer** or a **Professional Geologist** to verify or eliminate **Sinkhole Loss** and to engage a **Professional Engineer** to make recommendations regarding land and building stabilization and foundation repair.

(c) A statement regarding the right of the Insured to request testing by a **Professional Engineer** or a **Professional Geologist**, the circumstances under which the Insured may demand certain testing, and the circumstances under which the Insured may incur costs associated with testing.

(4) (a) If the Company determines that there is no **Sinkhole Loss**, the Company may deny the claim.

(b) If coverage for **Sinkhole Loss** is available and the Company denies the claim without performing testing under s. 627.7072, Florida Statutes, the Insured may demand testing by the Company under s. 627.7072, Florida Statutes.

1. The Insured's demand for testing must be communicated to the Company in writing within 60 days after the Insured's receipt of the insurer's denial of the claim.

2. The Insured shall pay 50 percent of the actual costs of the analyses and services provided under ss. 627.7072, Florida Statutes and 627.7073, Florida Statutes or $2,500, whichever is less.

3. The Company shall reimburse the Insured for the costs if the Company's engineer or geologist provides written certification pursuant to s. 627.7073, Florida Statutes that there is **Sinkhole Loss**.

(5) If a **Sinkhole Loss** is verified, the Company shall pay to stabilize the land and building and repair the foundation in accordance with the recommendations of the **Professional Engineer** retained pursuant to subsection (2), with notice to the Insured, subject to the coverage and terms of the policy. The Company shall pay for other repairs to the structure and contents in accordance with the terms of the policy. If a covered building suffers a **Sinkhole Loss**, the insured must repair such damage or loss in accordance with the Company's **Professional Engineer's** recommended repairs. However, if the Company's **Professional Engineer** determines that the repair cannot be completed within policy limits, the Company must pay to complete the repairs recommended by the insurer's **Professional Engineer** or tender the policy limits of the affected building to the Insured.

(a) The Company may limit its total claims payment to the actual cash value of the **Sinkhole Loss**, which does not include underpinning or grouting or any other repair technique performed below the existing foundation of the building, until the Insured enters into a contract for the performance of building stabilization or foundation repairs in accordance with the recommendations set forth in the Company's report issued pursuant to s. 627.7073, Florida Statutes.

(b) In order to prevent additional damage to the building or structure, the Insured must enter into a contract for the performance of building stabilization and foundation repairs within 90 days after the Company confirms coverage for the **Sinkhole Loss** and notifies the Insured of such confirmation. This time period is tolled if either party invokes the **Neutral Evaluation** process, and begins again 10 days after the conclusion of the **Neutral Evaluation** process.

(c) After the Insured enters into the contract for the performance of building stabilization and foundation repairs, the Company shall pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred. The Company may not require the Insured to advance payment for such repairs.

If repair has begun and the aforementioned professional engineer determines that the repairs will exceed the applicable Limit of Insurance, the Company will pay only the remaining portion of the applicable Limit of Insurance upon such

determination. The most the Company will pay for the total of all Sinkhole Loss, including building and land stabilization and foundation repair, is the applicable Limit of Insurance on the affected building.

(d) The stabilization and all other repairs to the structure and contents must be completed within 12 months after entering into the contract for repairs described in paragraph (b) unless:

1. There is a mutual agreement between the Company and the Insured;

2. The claim is involved with the **Neutral Evaluation** process;

3. The claim is in litigation; or

4. The claim is under appraisal or mediation.

(e) Upon the Company's obtaining the written approval of any lienholder, the Company may make payment directly to the persons selected by the Insured to perform the land and building stabilization and foundation repairs. The decision by the Company to make payment to such persons does not hold the Company liable for the work performed. The Insured may not accept a rebate from any person performing the repairs specified in this section. If an Insured does receive a rebate, coverage is void and the Insured must refund the amount of the rebate to the Company.

(6) If the Company obtains, pursuant to s. 627.7073, Florida Statutes, written certification that there is no **Sinkhole Loss** or that the cause of the damage was not **Sinkhole Activity**, and if the Insured has submitted the **Sinkhole** claim without good faith grounds for submitting such claim, the Insured shall reimburse the Company for 50 percent of the actual costs of the analyses and services provided under ss. 627.7072, Florida Statutes and 627.7073, Florida Statutes; however, an Insured is not required to reimburse the Company more than $2,500 with respect to any claim. The Insured is required to pay reimbursement only if the Insured requested the analysis and services provided under ss. 627.7072, Florida Statutes and 627.7073, Florida Statutes and the Company, before ordering the analysis under s. 627.7072, Florida Statutes, informs the Insured in writing of the Insured's potential liability for reimbursement and gives the Insured the opportunity to withdraw the claim.

(7) The Company may engage a professional structural engineer to make recommendations as to the repair of the structure.

(8) Any claim, including but not limited to, initial, supplemental, and reopened claims under an insurance policy that provides sinkhole coverage is barred unless notice of the claim was given to the insurer in accordance with the terms of the policy within 2 years after the policyholder knew or reasonably should have known about the **sinkhole** loss.

7. SECTION VI – GENERAL POLICY CONDITIONS, LOSS CONDITIONS is amended by adding the following:

(a) Within 90 days after an insurer receives notice of a property insurance claim from a policyholder, the insurer shall pay or deny such claim or a portion of the claim unless the failure to pay such claim or a portion of the claim is caused by factors beyond the control of the insurer which reasonably prevent such payment. Any payment of a claim or portion of a claim paid 90 days after the insurer receives notice of the claim, or paid more than 15 days after there are no longer factors beyond the control of the insurer which reasonably prevented such payment, whichever is later, shall bear interest at the rate set forth in s. 55.03. Interest begins to accrue from the date the insurer receives notice of the claim. The provisions of this subsection may not be waived, voided, or nullified by the terms of the insurance policy. If there is a right to prejudgment interest, the insured shall select whether to receive prejudgment interest or interest under this subsection. Interest is payable when the claim or portion of the claim is paid. Failure to comply with this subsection constitutes a violation of this code. However, failure to comply with this subsection shall not form the sole basis for a private cause of action.

(b) Notwithstanding subsection (4), for purposes of this subsection, the term "claim" means any of the following:

1. A claim under an insurance policy providing residential coverage as defined in s. 627.4025(1);

2. A claim for structural or contents coverage under a commercial property insurance policy if the insured structure is 10,000 square feet or less; or

3. A claim for contents coverage under a commercial tenants policy if the insured premises is 10,000 square feet or less.

(c) This subsection shall not apply to claims under an insurance policy covering nonresidential commercial structures or contents in more than one state.

8. SECTION VII – DEFINITIONS, **Earth Movement** is deleted in its entirety and replaced by the following:

**Earth Movement -** Any **Earth Movement** including earthquake, landslide, mine subsidence, earth sinking, rising, shifting, and **Sinkhole** collapse. **Catastrophic Ground Cover Collapse (CGCC)** will not be considered **Earth Movement** within the terms and conditions of this Policy.

9. SECTION VII – DEFINITIONS, the following is added to the definition of **Terrorist Activity**:

If both the **Terrorist Activity** and subject loss take place at **Locations** in the USA, its territories, possessions and missions, and the Commonwealth of Puerto Rico, then any **Terrorist Activity** shall be an act of terrorism as defined by the (United States) Terrorism Risk Insurance Act 2002, as amended.

10. SECTION VII – DEFINITIONS, the following is added:

**Catastrophic Ground Cover Collapse (CGCC) -** Geological activity that results in all the following:

1. The abrupt collapse of the ground cover;
2. A depression in the ground cover clearly visible to the naked eye;
3. **Structural Damage** to the covered building, including the foundation; and
4. The insured structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that structure.

Contents coverage applies if there is a loss resulting from a catastrophic ground cover collapse. Damage consisting merely of the settling or cracking of a foundation, structure, or building does not constitute a loss resulting from a catastrophic ground cover collapse.

**Neutral Evaluation -** The alternative dispute resolution provided in s. 627.7074, Florida Statutes.

**Neutral Evaluator -** A professional engineer or a **Professional Geologist** who has completed a course of study in alternative dispute resolution designed or approved by the department for use in the neutral evaluation process and who is determined by the department to be fair and impartial.

**Primary Structural Member -** A structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

**Primary Structural System -** An assemblage of **Primary Structural Members**.

**Professional Engineer -** A person, as defined in s. 471.005, Florida Statutes, who has a bachelor's degree or higher in engineering. A professional engineer must also have experience and expertise in the identification of **Sinkhole Activity** as well as other potential causes of **Structural Damage**.

**Professional Geologist -** A person, as defined in s. 492.102, Florida Statutes, who has a bachelor's degree or higher in geology or related earth science and experience and expertise in the identification of **Sinkhole Activity** as well as other potential geologic causes of **Structural Damage**.

**Sinkhole -** A landform created by subsidence of soil, sediment, or rock as underlying strata are dissolved by groundwater. A **Sinkhole** forms by collapse into subterranean voids created by dissolution of limestone or dolostone or by subsidence as these strata are dissolved.

**Sinkhole Activity -** Settlement or systematic weakening of the earth supporting the covered building only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

**Sinkhole Loss - Structural Damage** to the covered building, including the foundation, caused by **Sinkhole Activity**. Contents coverage and additional living expenses apply only if there is **Structural Damage** to the covered building caused by **Sinkhole Activity**.

**Structural Damage -** A covered building, regardless of the date of its construction, has experienced the following:

1. Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represents a safety hazard as defined within the Florida Building Code;

2. Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the primary structural members or primary structural systems that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those primary structural members or primary structural systems exceeds one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

3. Damage that results in listing, leaning, or buckling of the exterior load-bearing walls or other vertical primary structural members to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

4. Damage that results in the building, or any portion of the building containing primary structural members or primary structural systems, being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

5. Damage occurring on or after October 15, 2005, that qualifies as **Substantial Structural Damage** as defined in the Florida Building Code.

11. SECTION V – SPECIAL COVERAGES & DESCRIBED CAUSES OF LOSS, B. Description of Special Coverages, TAX LIABILITY is deleted in its entirety and replaced by the following:

TAX LIABILITY

If the amount of loss covered hereunder cannot be paid in the country where the loss occurred and the corporate tax rate is higher in the country where the payment occurs, and the payee is required to pay tax on the claim proceeds or has realized a reduction of a tax benefit that would otherwise have been recognized in the payee's country of residence, the Company will be liable for the difference in tax basis as an additional loss payment (ALP).

Financial accounting income shall be determined under generally accepted accounting principles or standards.

Financial accounting income and corporate income tax shall be determined in the local currency of the country where the loss occurred and where the loss payments are received.

The ALP will be paid only after receipt of documentation supporting the claim and a certification by the Chief Executive Officer or Chief Financial Officer of the payee that to the best of his or her knowledge, based on a review of all applicable financial and tax data:

1).The payee is required to pay tax on the claim proceeds or will realize a reduction of a tax benefit that would otherwise have been recognized in the payee's country of residence; and

2).The tax to be paid and pre-tax Financial Accounting Income data provided is accurate and complete and fairly presents in all material respects the financial results of the payee in the applicable country.

Notwithstanding the coverage for tax payment granted under this Coverage, it is understood and agreed that the Insured will cooperate with the Company in making every reasonable effort to have the amount of loss paid in the country in which the loss occurred, where permitted by law. In addition the Insured agrees to try to mitigate any loss that the Company may be responsible for under this Tax Liability Coverage.

With respect to payments made under this Coverage, the Company may examine and audit the Insured's books and records at any time up to three years after payment.

12. Any reference to **First Named Insured** shown in this policy shall be deemed to refer to the Named Insured as shown on the declarations.

**All other terms, conditions and limitations of this Policy remain unchanged.**

# Amendatory Endorsement - Georgia

ZURICH®

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

1. SECTION VI – GENERAL POLICY CONDITIONS, LOSS CONDITIONS, SUIT AGAINST THE COMPANY, is deleted in its entirety and replaced by the following:

   No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless the Insured has fully complied with all the provisions of this Policy. Legal action must be started within (24) twenty-four months after the date of direct physical loss or damage to Covered Property or to other property as set forth herein.

**All other terms, conditions and limitations of this Policy remain unchanged.**

# Amendatory Endorsement - Illinois

ZURICH®

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

1. SECTION VI - GENERAL POLICY CONDITIONS, CANCELLATION/NON-RENEWAL is deleted in its entirety and replaced by the following:

Cancellation

The **First Named Insured** shown in the Declarations may cancel this Policy by mailing or delivering to the Company advance written notice of cancellation.

If this Policy has been in effect for 60 days or less, except as provided below when the Policy covers real property other than residential property occupied by four families or less, the Company may cancel this Policy by mailing written notice of cancellation at least:

Ten (10) days before the effective date of cancellation if the Company cancels for nonpayment of premium; or,
Thirty (30) days before the effective date of cancellation if the Company cancels for any other reason.

If this Policy has been in effect for more than 60 days, except as provided below when the Policy covers real property other than residential property occupied by four families or less, the Company may cancel this Policy only for one or more of the following reasons:

a. Nonpayment of premium;

b. The Policy was obtained through a material misrepresentation;

c. The First Named Insured has violated any of the terms and conditions of the Policy;

d. The risk originally accepted has measurably increased;

e. Certification to the Director of Insurance of the loss by reinsurance by the insurer which provided coverage to the Company for all or a substantial part of the underlying risk insured; or

f. A determination by the Director that the continuation of the Policy could place the Company in violation of the insurance laws of this State.

If the Company cancels this Policy based on one or more of the above reasons except for nonpayment of premium, the Company will mail written notice at least 60 days before the effective date of cancellation. When cancellation is for nonpayment of premium, the Company will mail written notice at least 10 days before the effective date of cancellation.

The Company will mail notice to the **First Named Insured's** last known mailing address.

Notification of cancellation will also be sent to the **First Named Insured's** broker, if known, or agent of record, if known, and to the mortgagee or lienholder listed on the Policy.

Notice of cancellation will state the effective date and specific reason(s) for cancellation. The Policy Period will end on that date.

If this Policy is cancelled, the Company will send the **First Named Insured** any premium refund due. If the Company cancels, the refund will be pro rata. If the **First Named Insured** cancels, the refund may be less than pro rata but no less than the customary short rate amount. The cancellation will be effective even if the Company has not made or offered a refund.

If notice is mailed, then proof of mailing will be sufficient proof of notice.

If under the laws of the jurisdiction in which the property is located, such cancellation terms or conditions are different, then cancellation terms or conditions will be as permitted by such laws.

The following applies only if this Policy covers property other than residential property occupied by four families or less:

If any one or more of the following conditions exists at any building that is Covered Property in this Policy, the Company may cancel this Policy by mailing to the First Named Insured written notice of cancellation, by both certified and regular mail, if:

a. After a fire loss, permanent repairs to the building have not started within 60 days of satisfactory adjustment of loss, unless the delay is due to a labor dispute or weather conditions.

b. The building has been occupied 60 or more consecutive days. This does not apply to:

(1) Seasonal unoccupancy; or

(2) Buildings under repair, construction or reconstruction, if property secured against unauthorized entry.

c. The building has:

(1) An outstanding order to vacate;

(2) An outstanding demolition order; or

(3) Been declared unsafe in accordance with the law.

d. Heat, water, sewer service or public lighting have not been connected to the building for 30 consecutive days or more.

The Policy will terminate 10 days following receipt of the written notice by the named insured(s).

The following applies only with respect to grain in public grain warehouses:

The First Named Insured or the Company may cancel this Policy at any time by mailing to:

a. The other; and

b. The Director of the Illinois Department of Agriculture (at its Springfield Office);

60 days' written notice of cancellation.

Non-renewal

The Company may non-renew this Policy by mailing to all Named Insured, the Insured's last mailing address known to us, written notice of non-renewal, accompanied by the specific reason for non-renewal at least sixty (60) days prior to the expiration of this Policy. Proof of mailing will be sufficient proof of notice.

If the Company offers to renew or continue and the First Named Insured does not accept, this Policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that the First Named Insured has not accepted the offer.

If the Company fails to mail proper written notice of nonrenewal and the **First Named Insured** obtains other insurance, this Policy will end on the effective date of that insurance.

Notification of nonrenewal will also be sent to the First Named Insured's broker, if known, or agent of record, if known, and the mortgagee or lienholder listed on the Policy.

2. SECTION VI- General Policy Conditions, Loss Conditions, Suit Against The Company is deleted in its entirety and replaced by the following:

No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity, unless the Insured has fully complied with all the provisions of this Policy. Legal action must be started within twelve (12) months after the date of direct physical loss or damage to Covered Property or to other property as set forth herein. However, the Company will extend this period by the number of days between the date the proof of loss is filed and the date the claim is denied in whole or in part.

3. SECTION VI**-** General Policy Conditions, Other Insurance, the following provision is deleted:

   The Company will not be liable if, at the time of loss or damage, there is any other insurance that would attach in absence of this insurance; except that this insurance shall apply only as excess, Difference in Conditions/Difference in Limits and in no event as contributing insurance, and then only after all other insurance has been exhausted.

   And replaced with the following:

   The Company will not be liable if, at the time of loss or damage, there is any other insurance that would attach in absence of this insurance; except that this insurance shall apply only as pro rata contributing insurance.

4. SECTION VI**-** General Policy Conditions, Suspended Property, the following provision is deleted:

   When Covered Property is found to be in, or exposed to, a dangerous condition, any of the Company's representatives may immediately suspend this insurance for that property**.** This can be done by delivering or mailing a written notice to the **First Named Insured's** mailing address or to the address where the Covered Property is located. Once suspended, this insurance can be reinstated only by an endorsement. Any unearned premium due will be returned by the Company.

   And replaced with the following:

   When **Covered Equipment** is found to be in, or exposed to a dangerous condition, any of the Company's representatives may immediately suspend this insurance for such **Covered Equipment,** including loss arising out of the dangerous condition of such **Covered Equipment**. This can be done by delivering or mailing a written notice to the **First Named Insured's** mailing address or to the address where the **Covered Equipment** is located. Once suspended, this insurance can be reinstated only by an endorsement. Any unearned premium due will be returned by the Company.

**All other terms, conditions and limitations of this Policy remain unchanged.**

# Amendatory Endorsement – Indiana

ZURICH

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

1. SECTION VI - GENERAL POLICY CONDITIONS, CONCEALMENT, MISREPRESENTATION OR FRAUD is deleted in its entirety and replaced by the following:

   The Company will not pay for any loss or damage in any case of:

   Concealment or misrepresentation of a material fact; or

   Fraud

   Committed by an insured at any time relating to a claim under this Policy.

   However, this does not apply when a claim is made by an **Innocent Coinsured** provided:

   The property loss or damage occurs to a the primary residence of the **Innocent Coinsured** as covered under COVERED PROPERTY.

   The **Final Settlement** for the property loss or damage is at least 60% of available insurance proceeds under the Policy.

   The following is added and supersedes provisions to the contrary:

   Any payment made pursuant to a claim made by an **Innocent Coinsured** as described above, will be for:

   The actual cost of repair or replacement of the property that is the subject of the claim if the actual cost of repair or replacement is less than or equal to the maximum limit of coverage under the Policy, or

   The maximum limit of coverage under the Policy is the actual cost of repair or replacement of the property that is the subject of the claim is greater than the maximum limit of coverage under the Policy.

   Any payment made pursuant to above, is limited to the following:

   An **Innocent Coinsured's** ownership interest in the property, less any payments the Company makes to mortgagee or other lienholder with a secured interest in the property.

   The Company will not pay another coinsured for any part of the claim for which the Company has already paid to an **Innocent Coinsured**.

   The Company will not pay an amount that is greater than the amount an **Innocent Coinsured** is entitled to under a decree of dissolution of marriage between the Innocent Coinsured and an individual described below.

   As used in this endorsement, **Innocent Coinsured** is an insured who:

   Did not have knowledge of, cooperate in, or intentionally contribute to a property loss or damage that was caused or arranged by another individual who:

   Is an insured and:

Died in connection with the circumstances that caused the property loss or damage; or

Has been charged with a crime based on a court finding that there is probable cause to believe that the individual committed the crime in connection with the circumstances that caused the property loss or damage;

Signs a sworn affidavit attesting that they did not have knowledge of, cooperate in, or intentionally contribute to the property loss or damage; and

Cooperates in the investigation and resolution of the claim for the property loss or damage, any police investigation related to the property loss or damage, and any criminal prosecution of the individual that caused or arranged the property loss or damage.

As used in this endorsement, **Final Settlement** is a determination:

Of the amount owed by the Company to an **Innocent Coinsured** under COVERED PROPERTY under this Policy and for property loss or damage to the **Innocent Coinsured's** primary residence; and

Made by:

Acceptance of a proof of loss by the Company;

Execution of a release by an **Innocent Coinsured**;

Acceptance of an arbitration award by the **Innocent Coinsured** and the Company; or

Judgment of a court of competent jurisdiction.

However, **Final Settlement** does not apply to loss or damage related to contents, personal property or another loss that is not covered under Covered Property under this Policy.

**All other terms, conditions and limitations of this Policy remain unchanged.**

# Amendatory Endorsement - Kansas

ZURICH®

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

1. The following is deleted from Section VI-General Policy Conditions, Cancellation/Non-renewal, Cancellation,

   The Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least:

      The number of days before the effective date of cancellation if the Company cancels for nonpayment of premium, as stated in the Declarations; or

      The number of days before the effective date of cancellation if the Company cancels for any other reason, as stated in the Declarations.

   and replaced by the following:

   The Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least:

      The number of days before the effective date of cancellation if the Company cancels for nonpayment of premium, as stated in the Declarations, which shall not be less than five (5) days if the nonpayment is for a premium installment; or

      The greater of thirty (30) days or the number of days before the effective date of cancellation if the Company cancels for any other reason, as stated in the Declarations.

2. Section VI-General Policy Conditions, Loss Conditions, Suit Against the Company, is deleted in its entirety and replaced by the following:

   SUIT AGAINST THE COMPANY

   No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless the Insured has fully complied with all the provisions of this Policy. Legal action must be started within five (5) years after the date of direct physical loss or damage to Covered Property or to other property as set forth herein.

   If under the laws of the jurisdiction in which the property is located, such twelve months' limitation is invalid, then, any such legal action needs to be started within the shortest limit of time permitted by such laws.

**All other terms, conditions and limitations of this Policy remain unchanged.**

# Amendatory Endorsement - Kentucky

ZURICH®

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

1. The following section is deleted from SECTION VI-GENERAL POLICY CONDITIONS, CANCELLATION/NON-RENEWAL:

The Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least:

The number of days before the effective date of cancellation if the Company cancels for nonpayment of premium, as stated in the Declarations; or

The number of days before the effective date of cancellation if the Company cancels for any other reason, as stated in the Declarations.

and replaced with:

The Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least:

Fourteen (14) days before the effective date of cancellation if this Policy has been in effect for sixty (60) days or less. Cancellation can be for any reason, and the notice will state the reason for cancellation.

For Policies in effect for more than sixty (60) days or that are a renewal of a Policy the Company issued:

Fourteen (14) days before the effective date of the cancellation, if cancellation is for nonpayment of premium; or

Seventy-five (75) days before the effective date of cancellation, if cancellation is for:

Discovery of fraud or material misrepresentation made by the Insured or with the Insureds' knowledge in obtaining the Policy, continuing the Policy, or in presenting a claim under the Policy;

Discovery of willful or reckless acts or omissions on the Insureds' part which increase any hazard insured against;

The occurrence of a change in the risk which substantially increases any hazard insured against after insurance coverage has been issued or renewed;

A violation of any local fire, health, safety, building, or construction regulation or ordinance with respect to any insured property or the occupancy thereof which substantially increases any hazard insured against;

The Company is unable to reinsure the risk covered by the Policy; or

A determination by the commissioner that the continuation of the Policy would place the Company in violation of the Kentucky insurance code or regulations of the commissioner.

2. SECTION VI-GENERAL POLICY CONDITIONS, CANCELLATION/NON-RENEWAL, Non-renewal is deleted in its entirety and replaced by the following:

Non-renewal

For the purpose of this Condition:

Any Policy period or term of less than six (6) months shall be considered to be a Policy period or term of six (6) months; and

Any Policy period or term of more than one (1) year or any Policy with no fixed expiration date shall be considered a Policy period or term of one (1) year.

If the Company elects not to renew this Policy, the Company will mail or deliver written notice of nonrenewal, stating the reason for nonrenewal, to the first Named Insured shown in the Declarations, at the last mailing address known to the Company, at least seventy-five (75) days before the expiration date of the Policy period.

If notice of nonrenewal is not provided pursuant to this Condition, coverage under the same terms and conditions shall be deemed to be renewed for the ensuing Policy period upon payment of the appropriate premium until the Insured has accepted replacement coverage with another insurer, or until the Insured has agreed to the nonrenewal.

If the Company mails or delivers a renewal notice to the first Named Insured at least thirty (30) days before the end of the Policy period, stating the renewal premium and its due date, the Policy will terminate without further notice unless the renewal premium is received by the Company or its authorized agent by the due date.

If this Policy terminates because the renewal premium has not been received by the due date, the Company will, within fifteen (15) days, mail or deliver to the first Named Insured at the last known address a notice that the Policy was not renewed and the date it was terminated.

If notice is mailed, proof of mailing is sufficient proof of notice.

**All other terms, conditions and limitations of this Policy remain unchanged.**

# Amendatory Endorsement - Louisiana

ZURICH®

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

1. SECTION III – PROPERTY DAMAGE, C. EXCLUSIONS, paragraph 3.03.01.01.is deleted in its entirety and replaced by the following:

   3.03.01.01. **Contamination** or asbestos, and any cost due to **Contamination** or asbestos including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy.

2. SECTION III – PROPERTY DAMAGE, C. EXCLUSIONS, paragraph 3.03.03.03 is deleted in its entirety and replaced by the following:

   3.03.03.03 Any weapon of war or of mass destruction employing biological or chemical warfare, atomic fission, atomic fusion, radioactive force or radioactive material, regardless of who commits the act.

3**.** Section VI-GENERAL POLICY CONDITIONS, CANCELLATION/NON-RENEWAL is deleted in its entirety and replaced with the following::

If this Policy is cancelled, the Company will return any premium refund due. The cancellation will be effective even if the Company has not made or offered a refund.

1. If the first Named Insured cancels, the refund will not be less than 90% of the pro rata unearned premium, rounded to the next higher whole dollar. The refund will be returned within 30 days after the effective date of cancellation.

   We will send the refund to the first Named Insured and any mortgagee that has provided us with written notice of the percentage of the premium being funded with the mortgagee's own funds. The percentage of the unearned premium attributable to the mortgagee shall be returned to the mortgagee and the percentage of the unearned premium attributable to the first Named Insured shall be returned to the first Named Insured.

2. If we cancel, the refund will be pro rata and we will send the refund to the first Named Insured

If we cancel a policy that has been in effect for fewer than 60 days and is not a renewal of a policy we issued, we will give written notice to the **First Named Insured** at least:

1. 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

2. 60 days before the effective date of cancellation, if we cancel for any other reason.

If we cancel a policy that has been in effect for 60 days or more, or is a renewal of a policy we issued, we will give written notice to the **First Named Insured** at least:

1. 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

2. 30 days before the effective date of cancellation, if we cancel for any other reason.

Cancellation of a policy in effect more than 60 days will be based on one of the following reasons:

1. Nonpayment of premium.

2. Fraud or material misrepresentation made by or with the knowledge of the named insured in obtaining the policy, continuing the policy, or presenting a claim under the policy.

3. Activities or omissions on the part of the named insured change or increase any hazard insured against.

4. Change in the risk, which increases the risk of loss after coverage has been issued or renewed.

5. Determination by the Commissioner (of Insurance) that the continuation of the policy would jeopardize the solvency of the insurer or place the insurer in violation of the law.

6. Violation or breach of policy terms or conditions by the Insured.

7. Other approved reasons.

If we elect not to renew the policy, we will mail or deliver written notice of nonrenewal to the **First Named Insured** at least 60 days before its expiration date, or its anniversary date if it is a policy written for a term of more than one year or with no fixed expiration date. The notice will include the insured's loss run information for the period the policy has been in force, not to exceed three years.

4. SECTION VI – GENERAL POLICY CONDITIONS, CONCEALMENT, MISREPRESENTATION OR FRAUD is deleted in its entirety and replaced by the following:

   This Policy will be canceled in any case of fraud by any Insured as it relates to this Policy at any time. It will also be canceled if any Insured, at any time, intentionally conceals or misrepresents a material fact, with the intent to deceive concerning:

   1. This Policy;

   2. The Covered Property;

   3. The interest in the Covered Property; or

   4. A claim under this Policy.

5. Section VI-GENERAL POLICY CONDITIONS, LOSS CONDITIONS, SUBROGATION is amended by the addition of the following:

   The Company will be entitled to recovery only after the insured has been fully compensated for the loss or damage sustained, including expenses incurred in obtaining full compensation for the loss or damage.

6. Section VI-GENERAL POLICY CONDITIONS, LOSS CONDITIONS, APPRAISAL is deleted in its entirety.

7. The following is deleted from SECTION VI – GENERAL POLICY CONDITIONS, SETTLEMENT OF CLAIMS, Loss Payment:

   The Company has reached agreement on the amount of loss; or

   and replaced by the following:

   The Company has reached agreement on a portion of or the total amount of loss; or

8. SECTION VI – GENERAL POLICY CONDITIONS, LOSS CONDITIONS, SUIT AGAINST THE COMPANY, is deleted in its entirety and replaced by the following:

   No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless the Insured has fully complied with all the provisions of this Policy. Legal action must be started within (24) twenty-four months after the date of direct physical loss or damage to Covered Property or to other property as set forth herein.

9. The following is deleted from SECTION VI –GENERAL POLICY CONDITIONS, VALUATION:

   Any reference to " the most functionally equivalent " shall be replaced with "of like kind and quality".

10. SECTION II – DECLARATIONS, Time Specifications, is deleted in its entirety and replaced by the following:

2.03.10. Time Specifications: As follows:

| | |
|---|---|
| **EARTH MOVEMENT Occurrence** | 168 hours |
| **NAMED STORM Occurrence** | 72 hours |
| Cancellation for nonpayment of premium | 10 days |
| Cancellation for any other reason | 60 days |

11. The following is deleted from SECTION VII - DEFINITIONS

**Contamination(Contaminated) -** Any condition of property due to the actual presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, **Fungus**, mold or mildew.

and replaced by the following:

**Contamination(Contaminated) -** Any condition of property due to the actual presence of any **Contaminant(s)**.

12. The following is deleted from SECTION VII – DEFINITIONS:

**Contaminant(s) -** Any solid, liquid, gaseous, thermal or other irritant, pollutant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste (including materials to be recycled, reconditioned or reclaimed), asbestos, ammonia, other hazardous substances, **Fungus** or **Spores**.

And replaced with the following:

**Contaminant(s) -** Any solid, liquid, gaseous, thermal or other irritant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste (including materials to be recycled, reconditioned or reclaimed), other hazardous substances, **Fungus** or **Spores**.

**All other terms, conditions and limitations of this Policy remain unchanged.**

# Amendatory Endorsement - Maryland

ZURICH®

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

1. The Cancellation subsection under SECTION IV- GENERAL POLICY CONDITIONS, CANCELLATION/NON- RENEWAL is deleted in its entirety and replaced by the following:

Cancellation

The **First Named Insured** shown in the Declarations may cancel this Policy by mailing or delivering to the Company advance written notice of cancellation.

When this policy has been in effect for 45 days or less and is not a renewal policy, the Company may cancel this policy by mailing to the **First Named Insured**, at the last mailing address, written notice of cancellation, stating the reason for cancellation, at least:

10 days before the effective date of cancellation if the Company cancels for nonpayment of premium.

15 days before the effective date of cancellation if the Company cancels because the risk does not meet its underwriting standards.

When this policy has been in effect for more than 45 days or is a renewal policy, the Company may cancel this policy by mailing to the **First Named Insured**, at the last mailing address, written notice of cancellation at least:

10 days before the effective date of cancellation if the Company cancels for nonpayment of premium.

45 days before the effective date of cancellation if the Company cancels for a permissible reason other than nonpayment of premium, stating the reason for cancellation. The Company may cancel only for one (1) or more of the following reasons:

When there exists material misrepresentation or fraud in connection with the application, policy, or presentation of a claim.

A change in the condition of the risk that results in an increase in the hazard insured against. A matter or issue

related to the risk that constitutes a threat to public safety.

If this policy is cancelled, the Company will send the **First Named Insured** any premium refund due.

The refund will be pro rata if:

The **First Named Insured** cancelsor:

The policy is not a renewal policy, and the First Named Insured cancels upon receiving written notice that the Company recalculated the premium based on the discovery of a material risk factor during the first 45 days the policy has been in effect. Other than this type of cancellation, the refund will be calculated as follows:

For policies written for one year or less, the Company will refund 90% of the pro rata unearned premium. For policies written for more than one year:

If the policy is cancelled in the first year, the Company will refund 90% of the pro rata unearned premium for the

first year, plus the full annual premium for subsequent years.

If the policy is cancelled after the first year, the Company will refund the pro rata unearned premium.

Continuous and Annual Premium Payment Policies

The Company will refund 90% of the pro rata unearned premium for the year in which the policy is cancelled.

The Company will retain the minimum premium, except if the policy is cancelled as of the inception date.

However, if this policy is financed by a premium finance company and the Company or the premium finance company or the **First Named Insured** cancels the policy, the refund will consist of the gross unearned premium computed pro rata, excluding any expense constant, administrative fee or nonrefundable charge filed with and approved by the insurance commissioner.

The cancellation will be effective even if the Company has not made or offered a refund.

The Company will send notice of cancellation to the **First Named Insured** by certificate of mail if:

The Company cancel for nonpayment of premium; or

This policy is not a renewal of a policy the Company issued and has been in effect for 45 days or less.

The Company will send notice to the **First Named Insured** by certificate of mail or by commercial mail delivery service if the Company cancels for a reason other than nonpayment of premium and this policy:

Is a renewal of a policy we issued; or

Has been in effect for more than 45 days.

The Company will maintain proof of mailing in a form authorized or accepted by the United States Postal Service or by other commercial mail delivery service when such service is used. Proof of mailing will be sufficient proof of notice.

2. SECTION VI – GENERAL POLICY CONDITIONS, CONCEALMENT, MISREPRESENTATION OR FRAUD, is deleted in its entirety.

3. SECTION VI – GENERAL POLICY CONDITIONS, LOSS CONDITIONS, SUIT AGAINST THE COMPANY, is deleted in its entirety and replaced by the following:

   No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless the Insured has fully complied with all the provisions of this Policy. Legal action must be started within three (3) years after the date of direct physical loss or damage to Covered Property or to other property as set forth herein.

4. SECTION VI – GENERAL POLICY CONDITIONS, SUSPENDED PROPERTY, is deleted in its entirety.

5. The following is added to 3.02. PROPERTY NOT COVERED:

   Any property, prior to a loss, found to be in, or exposed to, a dangerous condition, by any of the Company's representatives, and the Insured is put on notice for such condition, until the dangerous condition has been corrected.

**All other terms, conditions and limitations of this Policy remain unchanged.**

# Amendatory Endorsement - Massachusetts

ZURICH®

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

A. The following is added to SECTION VI –GENERAL POLICY CONDITIONS:

MASSACHUSETTS CONDITION

1. In spite of any provision of any general or special law:

   a) The Company will not pay for loss or damage to buildings or structures caused by any **Covered Cause of Loss** if the amount of loss is $5,000 or more unless the Insured first submits a certificate of municipal liens from the collector of taxes of the city or town where the property is located.

   b) The Company will pay to the city or town any amount outstanding on the certificate of municipal liens arising from the provisions of Massachusetts General Law Chapters 40, 59, 60, 80, 83, and 164, Sections 58B through 58F.

   The payment will not exceed the amount of loss payable under this Policy.

   We will send the Insured and the mortgage holder proof of payment to the city or town.

   c) The claim of the city or town will have priority over the claim of any mortgage holder, assignee, Insured or any other interested party, except where otherwise provided by the laws of the United States.

   d) The Company will not be liable to any city, town, mortgage holder, assignee, Insured or any other interested party for:

      1) Amounts paid to a city or town; or

      2) Amounts not paid to a city or town based upon a certificate showing that no municipal liens exist.

   This section 1. above does not apply to any owner-occupied one to four-family dwelling if the owner of the dwelling lived there when the claim for loss or damage arose.

2. The Company will not pay any claim for:

   a). Loss, damage, or destruction of $1,000 or more to a building or structure; or

   b). Loss, damage or destruction, of any amount, that causes a building or structure to become:

      1). Dangerous to life or limb; or

      2). Unused, uninhabited or abandoned and open to the weather; as provided under Massachusetts General Law, Section 6 of Chapter 143;

   c). Without giving at least ten (10) days written notice before such payment to:

      1). The Building Commissioner or the appointed Inspector of Buildings; and

      2). The Board of Health or the Board of Selectmen of the city or town where the property is located

3. If at any time before the Company's payment, the city or town notifies the Company by certified mail of its intent to begin proceedings designed to perfect a lien under Massachusetts General Law:

   a). Chapter 143, Section 3A or 9; or

b). Chapter 111, Section 127B;

The Company will not pay while the proceedings are pending. The proceedings must be started within thirty (30) days after the Company receives the notice.

Any lien perfected under the Massachusetts General Laws referred to above, will extend to the city or town and may be enforced by it against the proceeds of this Policy.

4. The Company will not be liable to any city, town, mortgage holder, assignee, Insured or any other interested party for:

   a) Amounts paid to a city or town; or

   b) Amounts not paid to a city or town under sections 2. and 3. above.

A. The following is added to SECTION VI –GENERAL POLICY CONDITIONS:

**STANDARD FIRE POLICY PROVISIONS**

Your Policy contains LEGAL ACTION AGAINST US, APPRAISAL and CANCELLATION provisions. Massachusetts law requires that the Suit, Appraisal and Cancellation provisions of the Massachusetts Standard Fire Policy supersede any similar provisions contained in your Policy. Therefore, all LEGAL ACTION AGAINST US, APPRAISAL and CANCELLATION provisions contained in your policy are void. The Suit, Appraisal and Cancellation provisions of the Massachusetts Standard Fire Policy shall apply instead

In consideration of the Provisions and Stipulations Herein or Added Hereto and of the Premium Specified in the Declarations, this Company, for the term of years specified in the Declarations from inception date (At 12:01 A.M. Standard Time) to expiration date (At 12:01 A.M. Standard Time) at location of property involved, to an amount not exceeding the amount(s) specified in the Declarations, does insure the Insured named in the Declarations and legal representatives, to the extent of the actual cash value of the property at the time of loss or the valuation terms of the policy, but in no event for more than the interest of the Insured, against all LOSS BY FIRE, LIGHTNING AND BY REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED, to the property described in the Declarations while located or contained as described in this Policy or pro rata for five (5) days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this Policy, but not elsewhere.

**Assignment of this Policy shall not be valid except with the written consent of this Company.**

This Policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this Policy together with such other provisions, stipulations and agreements as may be added hereto, as provided in this Policy.

**Concealment fraud**.

This entire Policy shall be void if, whether before or after a loss, the Insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Insured therein, or in case of any fraud or false swearing by the Insured relating thereto.

**Uninsurable and excepted property**.

This Policy shall not cover accounts, bills, currency, deeds, evidences of debt, money or securities; nor, unless specifically named herein in writing, bullion or manuscripts.

**Perils not included**.

This Company shall not be liable for loss by fire or other perils insured against in this Policy caused, directly or indirectly, by (a) enemy attack by armed forces, including action taken by military, naval or air forces in resisting an actual or an immediately impending enemy attack; (b) invasion; (c) insurrection; (d) rebellion; (e) revolution; (f) civil war; (g) usurped power; (h) order of any civil authority except acts of destruction at the time of and for the purpose of preventing the spread of fire, provided that such fire did not originate from any of the perils excluded by this Policy; (i) neglect of the Insured to use all

reasonable means to save and to preserve the property at and after a loss, or when the property is endangered by fire in the neighboring premises; (j) nor shall this company be liable for loss by theft.

**Other Insurance**.

Other insurance may be prohibited or the amount of insurance may be limited by endorsement attached hereto.

**Conditions suspending or restricting insurance**.

Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the Insured; or (b) while the Described Premises, whether intended for occupancy by owner or tenant, are vacant or unoccupied beyond a period of sixty (60) consecutive days, for residential premises of three units or less and thirty (30) consecutive days for all other premises, or (c) as a result of explosion or riot, unless fire ensues, and in that event for loss by fire only. . This paragraph does not suspend or restrict the coverage contained in the following policies: Zurich Edge Domestic Policy, Edge-100-B (12/10); Zurich Edge Global Policy, Edge-101-B (12/10); Zurich Edge Domestic Healthcare Policy, Edge-102-B (12/10); Zurich Edge Global Healthcare Policy, Edge-103-B (12/10).

**Other perils of subject**.

Any other peril to the insured against or subject of insurance to be covered in this Policy shall be by endorsement in writing hereon or added hereto.
Added provisions.

The extent of the application of insurance under this Policy and of the contribution to be made by this Company in case of loss, and any other provision or agreement not inconsistent with the provisions of this Policy, may be provided for in writing added hereto, but no provision may be waived except such as by the terms of this Policy is subject to change.

**Waiver provisions**.

No permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing hereto. No provision stipulation or forfeiture shall be held to be waived by any requirement or proceeding on the part of this Company relating to appraisal or to any examination provided for herein.

**Cancellation of Policy**.

This Policy shall be cancelled at any time at the request of the Insured, in which case this Company shall, upon demand and surrender of this Policy, refund the excess of paid premium above the customary short rates for the expired time. This Policy may be cancelled at any time by this Company by giving to the Insured a five (5) days written notice of cancellation, and to the mortgagee to whom this Policy is payable twenty (20) days[1] written notice of cancellation except where the stated reason for cancellation is nonpayment of premium where, in such instance, this Policy may be cancelled at any time by this Company by giving to the Insured a ten (10) days written notice of cancellation, and the mortgagee a twenty (20) days written notice of cancellation, with or without tender of the excess paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. If notice is mailed, proof of mailing will be sufficient proof of notice. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand and shall state or be accompanied by a statement of the specific reason or reasons for such cancellation. After this Policy has been in effect for sixty (60) days, or after sixty (60) days from any anniversary date, no notice of cancellation shall be effective unless it is based on the occurrence, after the effective date of the Policy, of one or more of the following:

(1) nonpayment of premium; (2) conviction of a crime arising out of acts increasing the hazard insured against; (3) discovery of fraud or material misrepresentation by the Insured in obtaining the Policy; (4) discovery of willful or reckless acts or omissions by the Insured increasing the hazard insured against; (5) physical changes in the property insured which result in the property becoming uninsurable; or (6) a determination by the commissioner that continuation of the Policy would violate or place the Insurer in violation of the law. Where the stated reason is nonpayment of premium, the Insured may continue the coverage and avoid the effect of the cancellation by payment at any time prior to the effective date of cancellation.

**Mortgagee interests and obligations**.

Notwithstanding any other provisions of this Policy, if this Policy shall be made payable to a mortgagee of the covered real estate, no act or default of any person other than such mortgagee or his agent or those claiming under him, whether the same occurs before or during the term of this Policy, shall render this Policy void as to such mortgagee nor affect such mortgagee !~ right to recover in case of loss on such real estate; provided, that the mortgagee shall on demand pay according to the established scale of rate for any increase of risk not paid for by the Insured; and whenever this Company shall be liable to a mortgagee for any sum for loss under this Policy for which no liability exists as to the mortgagor, or owner, and this Company shall elect by itself, or with others, to pay the mortgagee, the full amount secured by such mortgage, then the mortgagee shall assign and transfer to the Company interested, upon such payment, the said mortgage together with the note and debt thereby secured.

**Pro rata liability**.

This Company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved.

**Requirements in case loss occurs**.

The Insured shall give immediate written notice to this Company of any loss, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed and damaged property, showing in detail the quantity, description, actual cash value and amount of loss claimed; and the Insured shall forthwith render to this Company a signed, sworn statement in proof of loss which sets forth to the best knowledge and belief of the Insured the following: the time and cause of the loss, the interest of the Insured and of all others in the property, the actual cash value of each item thereof and the amount of loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, any changes in the title, use, occupancy, location, possession or exposures of said property, since the issuing of this Policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss and whether or not it then stood on leased ground, and shall furnish a copy of all the descriptions and schedules in all Policies and detailed estimates for repair of the damage. The Insured, as often as may be reasonably required, shall exhibit to any person designated by this Company all that remains of any property herein described, and submit to examinations under oath by any person named by this Company, and subscribe the same; and as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this Company or its representative, and shall permit extracts and copies thereof to be made.

**When loss payable**.

In case of any loss or damage, the Company within thirty (30) days after the Insured shall have submitted a statement, as provided in the preceding clause, shall either pay the amount for which it shall be liable, which amount if not agreed upon shall be ascertained by award of referees as hereinafter provided, or replace the property with other of the same kind and goodness, or it may, within fifteen (15) days after such statement is submitted, notify the Insured of its intention to rebuild or repair the premises, or any portion thereof separately covered by this Policy, and shall thereupon enter upon said premises and proceed to rebuild or repair the same with reasonable expedition. It is more over understood that there can be no abandonment of the property described to the Company, and that the Company shall not in any case be liable for more than the sum insured, with interest thereon from the time when the loss shall become payable, as provided above. The Company shall be liable for the payment of interest to the Insured at a rate of one (1) percent over the prime interest rate on the agreed figure commencing thirty (30) days after the date an executed proof of loss for such figure is received by the Company, said interest to continue so long as the claim remains unpaid.

**Appraisal.**

In case of loss under this Policy and a failure of the parties to agree as to the amount of loss, it is mutually agreed that the amount of such loss shall be referred to three disinterested men, the Company and the Insured each choosing one out of three (3) persons to be named by the other, and the third being selected by the two (2) chosen, and the award in writing by a majority of the referees shall be conclusive and final upon the parties as to the amount of loss or damage, and such reference, unless waived by the parties, shall be a condition precedent to any right of action in law or equity to recover for such loss; but no person shall be chosen or act as a referee, against the objection of either party, who has acted in a like capacity within four (4) months.

**Suit**.

No suit or action against this Company for the recovery of any claim by virtue of this Policy shall be sustained in any court of law or equity in this commonwealth unless commenced within two (2) years from the time the loss occurred; provided, however, that if, within said two (2) years, in accordance with the provisions of the preceding paragraph, the amount of loss shall have been referred to arbitration after failure of the parties to agree thereon, the limitation of time for bringing such suit or action shall in no event be less than ninety (90) days after a valid award has been made upon such reference or after such reference or award has been expressly waived by the parties. If suit or action upon this Policy is enjoined or abated, suit or action may be commenced at any time within one (1) year after the dissolution of such injunction, or the abatement of such suit or action, to the same extent as would be possible if there was no limitation of time provided herein for the bringing of such suit or action.

**Subrogation.**

This Company may require from the Insured an assignment of all rights of recovery against any party for loss to the extent that payment therefore is made by this Company.

C. The following is added to Paragraph B. Description of Special Coverages of SECTION V – SPECIAL COVERAGES & DESCRIBED CAUSES OF LOSS:

MASSACHUSETTS RESIDENTIAL FUEL TANKS SPILLS COVEAGE - PROPERTY REMEDIATION FOR **"RELEASE OF HEATING OIL"**

a) With respect to the **"release of heating oil"** from a **tank**, or any piping, fuel supply lines, equipment, or systems connected to the **tank**, at a **residential property**, the Company will pay for:

1). Reasonable response action costs the Insured incurred under chapter 21E or 21K of the Massachusetts law or applicable regulations, including costs to assess and remediate a **"release of heating oil"** impacting soil, indoor air, water and other environmental media at that **residential property**; and

2). With respect to a **"release of heating oil"** for which response action costs are incurred and covered pursuant to 1). above, direct physical loss of or damage to **personal property** at that **residential property**.

b) The most the Company will pay under this endorsement for a **"release of heating oil"** is the applicable limits provided in this policy or $50,000 whichever is greater, for the total of all loss, damage, or costs regardless of:

1) The amount of time over which the **"release of heating oil"** continues and regardless of whether the release occurs in repeated intervals;

2). The number of **policy years** during which the **"release of heating oil"** persists;

3). Whether the heating oil is released from one or multiple outlets on the **tank** body and its related equipment;

4). Whether there are multiple effects, such as damage to **personal property**, pollution of land and pollution of water;

5). Whether the effects of the **"release of heating oil"** are discovered and reported once or discovered and reported over time as such effects become apparent;

6). The number of **locations** affected by the **"release of heating oil"**; or

7). The number of claims made.

Notwithstanding anything to the contrary in the Policy, the coverage provided by this endorsement is included within the Policy Limit.

c) The following additional exclusions apply:

The Company will not pay:

1) For any loss of business income or any expenses incurred due to interruption or reduction in business operations, including any Time Element Coverages, even if the Policy includes such coverage;

2). For any other consequential loss, damage or costs; or

3). To replace any heating oil that was released.

d) The Company will not pay for loss, damage or costs under this endorsement until the amount of loss, damage or costs exceed $1,000. The Company will then pay the amount of loss, damage or costs in excess of $1,000 up to the applicable limit, subject to all applicable provisions of A. above. This deductible applies whenever there is a **"release of heating oil"** covered under this endorsement. No other deductible will apply to the coverage provided solely by this endorsement.

e) When the **"release of heating oil"** results from a **covered cause of loss**, the following apply:

1) If the loss or damage described in A.a. 2) above is also covered under another coverage(s) in this Policy, then such covered loss or damage will be settled in accordance with all applicable terms of that coverage and this endorsement will not apply. Any deductible applicable to that coverage that is higher than $1,000 is recoverable under this endorsement but not to exceed $50,000.

2) With respect to pollution of land and water, the costs addressed in A.a.1) above will be settled under the terms of the Land and Water Contaminant Cleanup, Removal and Disposal Coverage and/or the Decontamination Costs Coverage, and this endorsement will apply as excess if the amount of coverage available under the Land and Water Contaminant Cleanup, Removal and Disposal Coverage and/or the Decontamination Costs Coverage is less than $50,000.

f) Coverage applies only in response to a **"release of heating oil"** which an insured first discovers or learns of during the current **policy year** and reports to the Company as soon as practicable. If the **First Named Insured** discovers or learns of the **"release of heating oil"** during the **policy year** and reports it to the Company following the end of that **policy year**, coverage will apply, provided this endorsement was in effect when the **First Named Insured** discovered or learned of the **"release of heating oil"**, if the **First Named Insured** reported the **"release of heating oil"** to the Company as soon as practicable.

D. The following is added to SECTION VI. GENERAL POLICY CONDITIONS, OTHER INSURANCE:
Except as provided in 1) below, if there is other insurance covering the same loss, damage or costs covered, the Company will pay only its share of the covered loss, damage, or costs. The Company's share is the proportion of the loss, damage, or costs that the amount of insurance that applies under this endorsement bears to the total amount of insurance covering such loss, damage, or costs.

1). If there is a **service agreement** covering the same loss, damage, or costs, this insurance is excess over any other amounts payable under the **service agreement**. If there is a government fund covering the same loss, damage, or costs, the Company will pay its share of the covered loss, damage, or costs. The Company's share is the proportion of the loss, damage, or costs that the amount of insurance that applies under this endorsement bears to the total amount of insurance covering such loss, damage, or costs to the extent permitted by law.

E. The following is added to SECTION VII. DEFINITIONS:

**Compliance** means compliance with Massachusetts's law governing release prevention, pursuant to applicable subsection (b) or (c) of section 38J of chapter 148 of the laws of Massachusetts.

**Personal property** means property owned by you.

**"Release of heating oil"** means both the release of and the threat of release of heating oil.

**Residential property** means a one (1) to four (4) unit dwelling used for living or sleeping located in the Commonwealth of Massachusetts.

**Service Agreement** means a fuel system service plan, property restoration plan, or similar service or warranty agreement, even if it is characterized as insurance

**Tank** means a liquid fuel tank in which heating oil is stored and from which heating oil is delivered or pumped through a fuel supply line to a device for burning oil in heating appliances, whether located within a **residential property** or other structure and installed at or below grade level, or located outdoors. **Tank** does not mean any underground tank, wherever located.

**All other terms, conditions and limitations of this Policy remain unchanged.**

# Amendatory Endorsement - Maine

ZURICH®

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

1. Section VI-General Policy Conditions, CANCELLATION/NON-RENEWAL, is deleted in its entirety and replaced by the following:

Cancellation

1) The **First Named Insured** shown in the Declarations may cancel this Policy by mailing or delivering to the Company advance written notice of cancellation.

2) The Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation which will not be effective prior to ten (10) days after the receipt by the **First Named Insured** of the notice.

3) The Company will mail or deliver notice to the **First Named Insured's** mailing address shown in the Declarations of this Policy or any Endorsement attached thereto.

4) Notice of cancellation will state the effective date of and reasons for cancellation. The Policy Period will end on that date.

5) If this Policy is cancelled, the Company will send the **First Named Insured** any premium refund due. If the Company cancels, the refund will be pro rata. If the **First Named Insured** cancels, the refund may be less than pro rata but no less than the customary short rate amount. The cancellation will be effective even if the Company has not made or offered a refund.

6) A post office certificate of mailing to the **First Named Insured** at the last known mailing address will be conclusive proof of receipt of notice on the third calendar day after mailing.

7) If this Policy has been in effect for sixty (60) days or more, or if it is a renewal or continuation of a Policy issued by the Company, the Company may cancel this Policy only for one or more of the following reasons:

a. Nonpayment of premium;

b. Fraud or material misrepresentation made by the Insured or with the Insureds consent in obtaining the Policy, continuing the Policy or in presenting a claim under the Policy;

c. Substantial change in the risk which increases the risk of loss after insurance coverage has been issued or renewed including, but not limited to, an increase in exposure due to regulation, legislation or court decision;

d. Failure to comply with reasonable loss control recommendations;

e. Substantial breach of contractual duties, conditions or warranties; or

f. Determination by the superintendent of insurance that the continuation of a class or block of business to which this Policy belongs will jeopardize the Company's solvency or will place the Company in violation of the insurance laws of Maine or any other state.

Non-renewal

The Company may non-renew this Policy by mailing or delivering to the **First Named Insured** written notice of nonrenewal which will not be effective prior to thirty (30) days after the receipt by the **First Named Insured** of the notice. A post office certificate of mailing to the **First Named Insured** at the last known address will be conclusive proof of receipt of notice on the third calendar day after mailing.

2. Section VI-General Policy Conditions, CONCEALMENT, MISREPRESENTATION OR FRAUD is deleted in its entirety and replaced by the following:

   1) CONCEALMENT, MISREPRESENTATION OR FRAUD

      The Company does not provide coverage to one or more Insureds who at any time engage in fraudulent conduct as it relates to this Policy. The Company also does not provide coverage to one or more Insureds, who at any time intentionally conceal or misrepresent a material fact or make a false statement concerning:

      a. This Policy;

      b. The Covered Property;

      c. The Insured's interest in Covered Property; or

      d. A claim under this Policy.

3. SECTION VI – GENERAL POLICY CONDITIONS, LOSS CONDITIONS, SUIT AGAINST THE COMPANY, is deleted in its entirety and replaced by the following:

   No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless the Insured has fully complied with all the provisions of this Policy. Legal action must be started within two (2) years after the date of direct physical loss or damage to Covered Property or to other property as set forth herein.

4. SECTION VI – GENERAL POLICY CONDITIONS, JOINT LOSS, is deleted in its entirety.

**All other terms, conditions and limitations of this Policy remain unchanged.**

# Amendatory Endorsement - Minnesota

ZURICH®

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

1. The following paragraph under SECTION VI-GENERAL POLICY CONDITIONS, LOSS CONDITIONS, DUTIES IN THE EVENT OF LOSS OR DAMAGE, is deleted in its entirety:

   Permit the Company to question the Insured, the Insured's employees and agents under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the loss or damage, including an Insured's books and records. In the event of this examination, an Insured's answers must be signed or attested to by a notary public or certified court reporter.

   and replaced by the following:

   Permit the Company to question the Insured, the Insured's employees and agents under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the loss or damage, including an Insured's books and records. In the event of this examination, an Insured's answers must be signed or attested to by a notary public or certified court reporter. The Insured has the right to an attorney being present during nay examination under oath. Any answers given may be used in future civil or criminal proceedings.

**All other terms, conditions and limitations of this Policy remain unchanged.**

# Amendatory Endorsement - Mississippi

ZURICH®

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

1. SECTION VI – GENERAL POLICY CONDITIONS, LOSS CONDITIONS, SUIT AGAINST THE COMPANY, is deleted in its entirety and replaced by the following:

   No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless the Insured has fully complied with all the provisions of this Policy. Legal action must be started within three (3) years after the date of direct physical loss or damage to Covered Property or to other property as set forth herein.

**All other terms, conditions and limitations of this Policy remain unchanged.**

# Amendatory Endorsement - Missouri

ZURICH®

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

1. The following is deleted from SECTION VI – GENERAL POLICY CONDITIONS, CANCELLATION/NON-RENEWAL, Cancellation:

   The Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least:

      The number of days before the effective date of cancellation if the Company cancels for nonpayment of premium, as stated in the Declarations; or

      The number of days before the effective date of cancellation if the Company cancels for any other reason, as stated in the Declarations.

   and replaced by the following:

   The Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation, stating the actual reason for cancellation, at least:

      10 days before the effective date of cancellation if the Company cancels for nonpayment of premium;

      30 days before the effective date of cancellation if cancellation is for one or more of the following reasons:

         Fraud or material misrepresentation affecting this policy or a claim filed under this Policy or a violation of any of the terms or conditions of this Policy;

         Changes in conditions after the effective of this Policy which have materially increased the risk assumed;

         The Company becomes insolvent; or

         The Company involuntarily loses reinsurance for this Policy.

      60 days before the effective date of cancellation if the Company cancels for any other reason.

2. SECTION VI – General Policy Conditions, Cancellation/Non-Renewal, Nonrenewal is deleted in its entirety and replaced by the following:

   Nonrenewal

      The Company may elect not to renew this policy by mailing or delivering to the **First Named Insured**, at the last mailing address known to the Company, written notice of nonrenewal, stating the actual reason for nonrenewal, at least 60 days prior to the effective date of the nonrenewal.

      If notice is mailed, proof of mailing will be sufficient proof of notice.

3. SECTION VI – General Policy Conditions, Suit Against the Company is deleted in its entirety and replaced by the following:

   The action must be brought within 10 years after the date on which the loss or damage occurred.

4. SECTION VI – GENERAL POLICY CONDITIONS, SETTLEMENT OF CLAIMS, Loss Payment is deleted in its entirety and replaced by the following:

Loss Payment

In the event of a covered cause of loss, the Company will give the Insured notice, within 15 working days after the Company receives a properly executed proof of loss, that the Company:

Accept your claim;

Denies your claim; or

Needs more time to determine whether the Insured's claim should be accepted or denied.

If the Company denies the Insured's claim, such notice will be in writing, and will state any policy provision, condition or exclusion used as a basis for the denial.

If the Company needs more time to determine whether the Insured's claim should be accepted or denied, the written notice will state the reason(s) why more time is needed.

If the Company has not completed its investigation, the Company will notify the Insured again in writing, within 45 days after the date the initial notice is sent informing the Insured that we need more time to determine whether the Insured's claim should be accepted or denied and thereafter every 45 days. The written notice shall state why more time is needed to investigate the Insured's claim.

5. The following is added to SECTION VI – GENERAL POLICY CONDITIONS, VALUATION:

If the Insured fails to notify the Company of their intent within the 2 year timeframe, such failure will not invalidate the claim unless such failure operates to prejudice the Company's rights.

6. The following is deleted from SECTION V- LAND AND WATER CONTAMINANT CLEANUP, REMOVAL AND DISPOSAL:

When the Insured fails to give written notice of loss to the Company within 180 days after inception of the loss.

and the following is added:

However, when the Insured fails to give written notice of loss to the Company within 180 days after inception of the loss the maximum the Company will pay under this coverage is $25,000.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

# Amendatory Endorsement - Montana

ZURICH®

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

1. Section VI-General Policy Conditions, CANCELLATION/NON-RENEWAL, is deleted in its entirety and replaced by the following:

CANCELLATION/NON-RENEWAL

Cancellation

The **First Named Insured** shown in the Declarations may cancel this Policy by mailing or delivering to the Company advance written notice of cancellation.

If this Policy has been in effect for less than sixty (60) days, the Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least:

Ten (10) days notice prior to the proposed cancellation date for non payment of premium; or

Ten (10) days notice prior to the proposed cancellation date for any other reason.

If this Policy has been in effect for sixty (60) days or more, the Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation, prior to the expiration of the agreed term or prior to one year from the effective date of the Policy or renewal, whichever is less, only for one or more of the following reasons:

Failure to pay a premium when due;

Material misrepresentation;

Substantial change in the risk assumed, except to the extent that the Company should have reasonably foreseen the change or contemplated the risk in writing the contract;

Substantial breaches of contractual duties, conditions or warranties;

Determination by the Commissioner of Insurance that continuation of the Policy would place us in violation of the Montana Insurance Code; or

Such other reasons that are approved by the Commissioner of Insurance. If the Company cancels this Policy for one of the reasons specified above, the Company may cancel this Policy by providing Ten (10) days notice before the effective date of cancellation.

The Company may cancel any Policy with a term of more than one (1) year by mailing or delivering to the **First Named Insured** written notice of cancellation at least forty-five (45) days before the anniversary date of the Policy, such cancellation will be effective on the policy anniversary date.

The Company will mail or deliver notice to the **First Named Insured's** last mailing address known.

Notice of cancellation will state the effective date of cancellation. The Policy Period will end on that date.

If this Policy is cancelled, the Company will send the **First Named Insured** any premium refund due. If the Company cancels, the refund will be pro rata. If the **First Named Insured** cancels, the refund may be less than pro rata. The cancellation will be effective even if the Company has not made or offered a refund. However, when a financed

insurance Policy is cancelled, the Company will send any refund due to the premium finance company on a pro rata basis.

Non-Renewal

The Company may non-renew this Policy by mailing or delivering to the **First Named Insured** written notice, at the last known address, of non-renewal at least forty-five (45) days before the expiration of this Policy. This Policy has been written for a term of more than one year.

This non-renewal provision does not apply if the Insured has purchased insurance elsewhere, accepted replacement coverage, requested or agreed to non-renewal, or this Policy is expressly designated as nonrenewable.

2. Section VI-General Policy Conditions, CONCEALMENT, MISREPRESENTATION OR FRAUD is deleted in its entirety and replaced by the following::

CONCEALMENT, MISREPRESENTATION OR FRAUD

The Company does not provide coverage to one or more Insureds who at any time engage in fraudulent conduct as it relates to this Policy. The Company also does not provide coverage to one or more Insureds, who at any time intentionally conceal or misrepresent a material fact or make a false statement concerning:

1. This Policy;

2. The Covered Property;

3. The Insured's interest in Covered Property; or

4. A claim under this Policy.

3. SECTION VI-GENERAL POLICY CONDITIONS, CONFORMITY TO STATUTES, is amended by the addition of the following and supersede anything to the contrary:

Any provisions required by Montana law to be included in policies issued by the Company shall be deemed to have been included in this Policy.

If the provisions of this Policy conflict with the laws of any jurisdictions in which this Policy applies, and if certain provisions are required by Montana law to be stated in this Policy, this Policy shall be read so as to eliminate such conflict or deemed to include such provisions for Insured Locations within such jurisdictions.

**All other terms, conditions and limitations of this Policy remain unchanged.**

# Amendatory Endorsement - Nebraska

ZURICH®

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

1. SECTION VI-GENERAL POLICY CONDITIONS, CANCELLATION/NON-RENEWAL, is deleted in its entirety and replaced by the following:

   CANCELLATION/NON-RENEWAL

   Cancellation

   a) The **First Named Insured** shown in the Declarations may cancel this Policy by mailing or delivering to the Company advance written notice of cancellation.

   b) If this Policy has been in effect for less than sixty (60) days, the Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation, stating the reasons for cancellation at least:

      1) Ten (10) days notice prior to the proposed cancellation date for non payment of premium; or

      2) Sixty (60) days notice prior to the proposed cancellation date for any other reason.

   c) If this Policy has been in effect for sixty (60) days or more, or if this is a renewal, the Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation, only for one or more of the following reasons:

      1) Nonpayment of premium;

      2) The Policy was obtained through material misrepresentation;

      3) Any Insured has submitted a fraudulent claim;

      4) Any Insured has violated the terms and conditions of this Policy;

      5) The risk originally accepted has substantially increased;

      6) Certification to the Director of Insurance of the Company's loss of reinsurance which provided coverage for all or a substantial part of the underlying risk insured; or
      7) The determination by the Director of Insurance that the continuation of the Policy could place the Company in violation of the Nebraska Insurance Laws.

      If the Company cancels this Policy for one of the reasons specified above, the Company may cancel this Policy by providing: Ten (10) days notice prior to the proposed cancellation date for non payment of premium or Sixty (60) days notice prior to the proposed cancellation date for any other reason.

   d) The Company may cancel any Policy with a term of more than one (1) year by mailing or delivering to the **First Named Insured** written notice of cancellation at least forty-five (45) days before the anniversary date of the Policy, such cancellation will be effective on the policy anniversary date.

   e) The Company will mail notice by first class mail to the **First Named Insured's** last mailing address known. A United States Postal Service Certificate of Mailing shall be sufficient proof of receipt of notice on the third calendar day after the date of the certificate of mailing.

   f) Notice of cancellation will state the effective date of cancellation. The Policy Period will end on that date.

g) If this Policy is cancelled, the Company will send the **First Named Insured** any premium refund due. If the Company cancels, the refund will be pro rata. If the **First Named Insured** cancels, the refund may be less than pro rata. The cancellation will be effective even if the Company has not made or offered a refund.

Non-Renewal

The Company may non-renew this Policy. Written notice will be by first class mail to the **First Named Insured**, at the last known address. Notice of non-renewal will be at least sixty (60) days before the expiration of this Policy. A United States Postal Service Certificate of Mailing shall be sufficient proof of receipt of notice on the third calendar day after the date of the certificate of mailing.

2. SECTION VI – GENERAL POLICY CONDITIONS, CONCEALMENT, MISREPRESENTATION OR FRAUD is deleted in its entirety and replaced by the following:

MISREPRESENTATION OR BREACH OF CONDITION OR WARRANTY

A misrepresentation or warranty made by the Insured or on the Insured's behalf in the negotiation of or application for this coverage will void this Policy if:

1) It is material;

2) It is made with the intent to deceive to the Company's injury;

3) The Company relies on it; and

4) The Company is deceived to the Company's injury.

A breach of warranty or condition will void the Policy if such breach exists at the time of loss and contributes to the loss.

3. SECTION VI-GENERAL POLICY CONDITIONS, LOSS CONDITIONS, APPRAISAL, is deleted in its entirety and replaced by the following:

APPRAISAL

If the Insured and the Company fail to agree on the value of the property or the amount of loss, upon mutual agreement, each will select a competent, disinterested, and impartial appraiser, who has no direct or indirect financial interest in the claim. Each will notify the other of the appraiser selected within 20 days of such demand. The Insured may not invoke appraisal unless it has first fully complied with all provisions of this Policy, including Duties in the Event of Loss or Damage and has provided the Company with a signed and sworn statement of loss.

The appraisers will first select a competent, disinterested and impartial umpire. If the appraisers fail to agree upon an umpire within 15 days then, on the request of the Insured or the Company, a judge of a court of record in the jurisdiction in which the appraisal is pending will select the umpire. The appraisers will then appraise the value of the property or the amount of loss. They will state separately, the actual cash value and replacement cost value, as of the date of loss and the amount of loss, each item of physical loss or damage or, if for Time Element loss, the amount of loss for each Time Element Coverage of this Policy.

If the appraisers fail to agree, they will submit their differences to the umpire. An award stating separately the actual cash value and replacement cost value, as of the date of loss and the amount of loss, for each item of physical loss or damage or, if for Time Element loss, the amount of loss for each Time Element Coverage of this Policy agreed to in writing by any two will determine the amount of loss.

Once there is an award, the Company retains the right to apply all policy terms and conditions (including but not limited to deductibles, exclusions, and Limits of Liability) to the award. The Company further retains its right to deny the claim in whole or in part.

The Insured and the Company will each pay its chosen appraiser and bear equally the other expenses of the appraisal and umpire.

4. The following is added to SECTION VI –GENERAL POLICY CONDITIONS, VALUATION:

   When this policy is written to insure any real property in Nebraska against loss by fire, tornado, windstorm, lightning or explosion and the property insured shall be wholly destroyed, without criminal fault on the part of the Insured or the Insured assignee, the amount of the insurance written on such real property shall be taken conclusively to be the true value of the property insured and the true amount of loss and measure of damages

**All other terms, conditions and limitations of this Policy remain unchanged.**

# Amendatory Endorsement - Nevada

ZURICH®

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

1. Section VI-General Policy Conditions, CANCELLATION/NON-RENEWAL, is deleted in its entirety and replaced by the following:

    1). The **First Named Insured** shown in the Declarations may cancel this Policy by mailing or delivering to the Company advance written notice of cancellation. The Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least:

    a. Ten (10) days before the effective date of cancellation if the Company cancels for nonpayment of premium; or

    b. Thirty (30) days before the effective date of cancellation if the Company cancels for any other reason.

    The Company will mail or deliver notice to the **First Named Insured's** mailing address shown in the Declarations of this Policy or any Endorsement attached thereto.

    Notice of cancellation will state the effective date of cancellation. The Policy Period will end on that date.

    If this Policy is cancelled, the Company will send the **First Named Insured** any premium refund due. If the Company cancels, the refund will be pro rata. If the **First Named Insured** cancels, the refund may be less than pro rata but no less than the customary short rate amount. The cancellation will be effective even if the Company has not made or offered a refund.

    If notice is mailed, proof of mailing will be sufficient proof of notice.

    If under the laws of the jurisdiction in which the property is located, such cancellation terms or conditions are different, then cancellation terms or conditions will be as permitted by such laws.

    2). If this Policy has been in effect for seventy (70) days or more, or if it is a renewal of a Policy issued by the Company, the Company may cancel this Policy only for one or more of the following reasons:

    a. Nonpayment of premium;

    b. Conviction of the Insured of a crime arising out of acts increasing the hazard insured against;
    c.

    c. Discovery of fraud or material misrepresentation in obtaining the Policy or in presenting a claim thereunder;

    d. Discovery of an act or omission or a violation of any condition of the Policy which occurred after the first effective date of the current Policy, and substantially and materially increases the hazard insured against;

    e. A material change in the nature or extent of the risk occurring after the first effective date of the current Policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the Policy was issued or last renewed;
    d.

    f. A determination by the commissioner that continuation of the Company's present volume of premiums would jeopardize the Company's solvency or be hazardous to the interests of the Company's Policyholders, creditors or the public, or

    g. A determination by the commissioner that the continuation of the Policy would violate, or place the Company in violation of, any provision of the code.

    3). If this Policy is written for a term longer than one year, the Company may cancel for any reason at an anniversary, by mailing or delivering written notice of cancellation to the First Named Insured at the last known mailing address at

least sixty (60) days before the anniversary date. Notice of cancellation or non-renewal will be mailed, first class or certified, or delivered to the **First Named Insured** at the last known mailing address and will state the reason for cancellation or nonrenewal. The Company will also provide a copy of the notice of cancellation to the agent who wrote the Policy.

4). Non-renewal

The Company may non-renew this Policy by mailing or delivering to the **First Named Insured** written notice at least sixty (60) days before the agreed expiration date. This non-renewal provision does not apply if the Insured has: accepted replacement coverage, requested or agreed to non-renewal, or this Policy is expressly designated as nonrenewable.
If notice is mailed, proof of mailing will be sufficient proof of notice.

# Amendatory Endorsement - New York

ZURICH®

**THIS ENDORSEMENT CHANGES THE POLICY AND APPLIES TO THOSE RISKS IN NEW YORK. PLEASE READ IT CAREFULLY.**

1. The following paragraph is deleted from Section III-property damage, exclusions**:**

   Any weapon of war or of mass destruction employing biological or chemical warfare, atomic fission, atomic fusion, radioactive force or radioactive material, whether in time of peace or war regardless of who commits the act.

   and replaced by the following:

   Any weapon of war employing atomic fission, atomic fusion, radioactive force or radioactive material, whether in time of peace or war regardless of who commits the act.

2. SECTION VI – GENERAL POLICY CONDITIONS, CANCELLATION/NON-RENEWAL, is deleted in its entirety and replaced by the following:

   Cancellation

   a) The **First Named Insured** shown in the Declarations may cancel this Policy by mailing or delivering to the Company advance written notice of cancellation.

   b) For Policies in Effect Sixty (60) Days or Less, the Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least:

      1) Thirty (30) days before the effective date of cancellation if the Company cancels for any reason not included in paragraph 2) below.

      2) Fifteen (15) days before the effective date of cancellation if the Company cancels for any of the following reasons:

         i) Nonpayment of premium;

         ii) Conviction of a crime arising out of acts increasing the hazard insured against;

         iii) Discovery of fraud or material misrepresentation in the obtaining of the Policy or in the presentation of a claim;

         iv) After issuance of the Policy or after the last renewal date, discovery of an act or omission, or a violation of any Policy condition, that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current Policy period;

         v) Material physical change in the property insured, occurring after issuance or last annual renewal anniversary date of the Policy, which results in the property becoming uninsurable in accordance with the Company objective, uniformly applied underwriting standards in effect at the time the Policy was issued or last renewed; or material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the Policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the Policy was issued or last renewed;

         vi) Required pursuant to a determination by the Superintendent that the continuation of the Company's present premium volume would jeopardize the Company's solvency or be hazardous to the interest of the Company's policyholders, creditors or the public;

vii) A determination by the superintendent that the continuation of the Policy would violate, or would place the Company in violation of any provision of the Insurance Code; or

viii) Where the Company has reason to believe, in good faith and with sufficient cause, that there is a probable risk of danger that the Insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. If the Company cancels for this reason, the Insured may make a written request to the Insurance Department, within 10 days of receipt of this notice, to review the cancellation decision. Also, the Company will simultaneously send a copy of this cancellation notice to the Insurance Department.

If notice of cancellation is due to nonpayment of premium, then the notice shall state the amount of premium that must be paid in order to avoid cancellation of the policy.

c) For Policies in effect for more than sixty (60) days, or if this Policy is a renewal or continuation of a Policy the Company issued, the Company may cancel this Policy only for any of the reasons listed in paragraph 2) above, provided the Company mails the **First Named Insured** written notice at least fifteen (15) days before the effective date of cancellation. If notice of cancellation is due to nonpayment of premium, then the notice shall state the amount of premium that must be paid in order to avoid cancellation of the policy.

d) The Company will mail or deliver notice to the **First Named Insured's** mailing address shown in the Declarations of this Policy or any Endorsement attached thereto and to the authorized agent or broker.

e) Notice of cancellation will state the effective date of and the reason for cancellation. The Policy Period will end on that date.

f) If this Policy is cancelled, the Company will send the **First Named Insured** any premium refund due. If the Company cancels, the refund will be pro rata. If the premium is advanced under a premium finance agreement, the cancellation refund will be pro rata. Under such financed policies, the Company will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater. The cancellation will be effective even if the Company has not made or offered a refund.

g) If notice is mailed, proof of mailing will be sufficient proof of notice.

Non-renewal

a) The Company may non-renew this Policy by mailing or delivering to the **First Named Insured** written notice along with the reason for non-renewal.

b) The Company may condition renewal this Policy upon:

1) Change of limits;

2) Change in type of coverage;

3) Reduction of coverage;

4) Increased deductible;

5) Addition of exclusion; or

6) Increased premiums in excess of 10% exclusive of any premium increase due to and commensurate with insured value added or increased exposure units; or as a result of experience rating, loss rating, retrospective rating or audit.

c) If the Company decides to non-renew this Policy or to conditionally renew this Policy as provided in paragraph b)., the Company will mail or deliver written notice to the **First Named Insured** shown in the Declarations at least sixty (60) days but not more than one hundred twenty (120) days before:

1) The expiration date; or

2) The anniversary date, if this is a continuous Policy.

d) The Company will mail or deliver notice to the **First Named Insured's** mailing address shown in the Declarations of this Policy or any Endorsement attached thereto and to the authorized agent or broker.

e) Notice will include the specific reason(s) for non-renewal or conditional renewal, including the amount of any premium increase for conditional renewal and description of any other changes.

f) If notice is mailed, proof of mailing will be sufficient proof of notice.

If the Company violates any of the provisions above by sending the **First Named Insured** an incomplete or late conditional renewal notice or a late non-renewal notice coverage will remain in effect at the same terms and conditions of this policy at the lower of the current rates or the prior period's rates until 60 days after such notice is mailed or delivered, unless the **First Named Insured**, during this 60 day period, has replaced the coverage or elects to cancel.

The Company will not send the Insured notice of non-renewal or conditional renewal if the Insured, the authorized agent or broker or another insurer of the Insured mails or delivers notice that the Policy has been replaced or is no longer desired.

3. SECTION VI – GENERAL POLICY CONDITIONS, LOSS CONDITIONS, SUIT AGAINST THE COMPANY, is deleted in its entirety and replaced by the following:

SUIT AGAINST THE COMPANY

No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless the Insured has fully complied with all the provisions of this Policy. Legal action must be started within two (2) years after the date of direct physical loss or damage to Covered Property or to other property as set forth herein.

4. SECTION II – DECLARATIONS - POLICY LIMITS OF LIABILITY, Causation Definition is deleted in its entirety.

5. SECTION VI- General Policy Conditions, Suspended Property, the following provision is deleted:

When Covered Property is found to be in, or exposed to, a dangerous condition, any of the Company's representatives may immediately suspend this insurance for that property**.** This can be done by delivering or mailing a written notice to the **First Named Insured's** mailing address or to the address where the Covered Property is located. Once suspended, this insurance can be reinstated only by an endorsement. Any unearned premium due will be returned by the Company.

And replaced with the following:

When **Covered Equipment** is found to be in, or exposed to a dangerous condition, any of the Company's representatives may immediately suspend this insurance for such **Covered Equipment,** including loss arising out of the dangerous condition of such **Covered Equipment**. This can be done by delivering or mailing a written notice to the **First Named Insured's** mailing address or to the address where the **Covered Equipment** is located. Once suspended, this insurance can be reinstated only by an endorsement. Any unearned premium due will be returned by the Company.

6. SECTION VII-DEFINITIONS, The following are deleted and replaced:

**Flood -** A general and temporary condition of partial or complete inundation of normally dry land areas or structure(s) caused by:

. The unusual and rapid accumulation or runoff of surface waters, waves, tides, tidal waves, tsunami, the release of water, the rising, overflowing or breaking of boundaries of nature or man-made bodies of water; or the spray there from all whether driven by wind or not; or

. Mudflow or mudslides caused by accumulation of water on or under the ground.

**Flood** also includes the backup of water from a sewer, drain or sump caused in whole or part by **Flood**.

**Flood** also includes **Storm Surge** if shown on the declarations as part of **Flood**.

And replaced with:

**Flood -** A general and temporary condition of partial or complete inundation of normally dry land areas or structure(s) caused by:

a). The unusual and rapid accumulation or runoff of surface waters, waves, tides, tidal waves, tsunami, the release of water, the rising, overflowing or breaking of boundaries of nature or man-made bodies of water; or the spray there from all whether driven by wind or not; or

b). Mudflow or mudslides caused by accumulation of water on or under the ground.

**Flood** also includes the backup of water from a sewer, drain or sump caused in whole or part by **Flood**.

**Named Storm -** Any storm or weather disturbance that is named by the U. S. National Oceanic and Atmospheric Administration (NOAA) or the U. S. National Weather Service or the National Hurricane Center or any comparable worldwide equivalent.

**Named Storm** also includes **Storm Surge** if shown on the declarations as part of **Named Storm**.

And replaced with:

**Named Storm -** Any storm or weather disturbance that is named by the U. S. National Oceanic and Atmospheric Administration (NOAA) or the U. S. National Weather Service or the National Hurricane Center or any comparable worldwide equivalent.

7. SECTION VII- DEFINITIONS the following is deleted in its entirety:

**Storm Surge -** A general and temporary condition of partial or complete inundation by salt water, caused by wind driven waves that result from a **Named Storm**, of normally dry land areas or structure(s) in coastal areas, bays or inland waters connected to an ocean or sea.

**All other terms, conditions and limitations of this Policy remain unchanged.**

# Amendatory Endorsement - Ohio

ZURICH®

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

1. SECTION VI - GENERAL POLICY CONDITIONS, CANCELLATION/NON-RENEWAL, is deleted in its entirety and replaced by the following:

   Cancellation

   The First Named Insured shown in the policy declarations may cancel this policy by mailing or delivering to the Company advance written notice of cancellation.

   If the Insured's policy has been in effect for more than 90 days, or is a renewal of a policy we issued, the Company may cancel this policy only for one or more of the following reasons:

   Nonpayment of premium;

   Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any claims submitted thereunder;

   Discovery of a moral hazard or willful or reckless acts or omissions on an Insured's part which increases any hazard insured against;

   The occurrence of a change in the individual risk which substantially increases any hazard insured against after the insurance coverage has been issued or renewed, except to the extent the insurer could reasonably have foreseen the change or contemplated the risk in writing the contract;

   Loss of applicable reinsurance or a substantial decrease in applicable reinsurance, if the Superintendent has determined that reasonable efforts have been made to prevent the loss of, or substantial decrease in, the applicable reinsurance, or to obtain replacement coverage;

   Failure of an Insured to correct material violations of safety codes or to comply with reasonable written loss control recommendations; or

   A determination by the Superintendent of Insurance that the continuation of the policy would create a condition that would be hazardous to the policyholders or the public.

   The Company will mail written notice of cancellation to the First Named Insured, and agent if any, at the last mailing addresses known to us. Proof of mailing will be sufficient proof of notice.

   The Company will mail notice of cancellation at least:

   10 days before the effective date of cancellation, if the Company cancel for nonpayment of premium; or

   30 days before the effective date of cancellation, if the Company cancels for any other reason.

   The notice of cancellation will:

   State the effective date of cancellation. The policy period will end on that date.

Contain the date of the notice and the policy number, and will state the reason for cancellation.

Policies written for a term of more than one year or on a continuous basis may be cancelled by the Company for any reason at an anniversary date, upon 30 day's written notice of cancellation.

If this policy is cancelled, the Company will send the First Named Insured any premium refund due. If the Company cancels, the refund will be pro rata. If the First Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if the Company have not made or offered a refund.

Nonrenewal

If the Company elects not to renew this policy, the Company will mail written notice of nonrenewal to the First Named Insured, and agent if any, at the last mailing addresses known to the Company. The notice will contain the date of the notice and the policy number, and will state the expiration date of the policy.

The Company will mail the notice of nonrenewal at least 30 days before the expiration date of the policy. Proof of mailing will be sufficient proof of notice.

2. SECTION VI - GENERAL POLICY CONDITIONS, SETTLEMENT OF CLAIMS, LOSS PAYMENT, the following is added:

The Company will give you notice, within 21 days after the Company receives a properly executed, sworn statement of loss, that the Company:

Accepts the Insured's claim;

Denies the Insured's claim; or

Needs more time to investigate the Insured's claim.

If the Company needs more time to investigate the Insured's claim, the Company will provide an explanation for the Company's need for more time. The Company will continue to notify the Insured again in writing, at least every 45 days, of the status of the investigation and of the continued time needed for the investigation.

The Company will pay for covered cause of loss of or damage to covered property within:

Ten (10) days after the Company accepts your claim if such acceptance occurs within the first 21 days after the Company receives a properly executed proof of loss, unless the claim involves an action by a probate court or other extraordinary circumstances as documented in the claim file; or

Five (5) days after the Company accepts your claim if such acceptance occurs more than 21 days after the Company receives a properly executed proof of loss, and

An appraisal award has been made; or

The Company has reached an agreement with you on the amount of loss that was in dispute.

3. SECTION VII – DEFINITIONS, **Terrorist Activity** is deleted in its entirety and replaced by the following:

For the purposes of this endorsement Terrorist Activity shall include the following:

1. "Certified act of terrorism" which means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

b. The act resulted in damage:

(1) Within the United States (including its territories and possessions and Puerto Rico); or

(2) Outside of the United States in the case of:

(a) An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

(b) The premises of any United States mission; and

c. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

2. "Non-Certified act of terrorism" which means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002.

**3. Terrorist Activity** which constitutes "Certified acts of terrorism" is not excluded in this policy, unless otherwise endorsed.

**4. Terrorist Activity** which constitutes "Non-Certified acts of terrorism" is not excluded in this policy, when it occurs in the USA, its territories, possessions and missions, and the Commonwealth of Puerto Rico.

**All other terms, conditions and limitations of this Policy remain unchanged.**

# Amendatory Endorsement - Oklahoma

ZURICH®

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

1. SECTION VI – GENERAL POLICY CONDITIONS, CANCELLATION/NON-RENEWAL, is deleted and replaced by the following:

   1). The **First Named Insured** shown in the Declarations may cancel this Policy by mailing or delivering to the Company advance written notice of cancellation.

   The Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least:

   a. Ten (10) days before the effective date of cancellation if the Company cancels for nonpayment of premium; or

   b. Thirty (30) days before the effective date of cancellation if the Company cancels for any other reason.

   The Company will mail or deliver notice to the **First Named Insured's** mailing address shown in the Declarations of this Policy or any Endorsement attached thereto.

   Notice of cancellation will state the effective date of cancellation. The Policy Period will end on that date.

   If this Policy is cancelled, the Company will send the **First Named Insured** any premium refund due. If the Company cancels, the refund will be pro rata. If the **First Named Insured** cancels, the refund may be less than pro rata but no less than the customary short rate amount. The cancellation will be effective even if the Company has not made or offered a refund.

   If notice is mailed, proof of mailing will be sufficient proof of notice.

   If under the laws of the jurisdiction in which the property is located, such cancellation terms or conditions are different, then cancellation terms or conditions will be as permitted by such laws.

   2). If this Policy has been in effect for forty-five (45) business days or more, or after the effective date of a renewal of this Policy, the Company may cancel this Policy only for one or more of the following reasons:

   a. Nonpayment of premium;

   b. Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any claims submitted under it;

   c. Discovery of willful or reckless acts or omissions by the Insured that increase any hazard insured against;

   d. The occurrence of a change in the risk that substantially increases any hazard insured against after insurance coverage has been issued or renewed;

   e. A violation of any local fire, health, safety, building, or construction regulation or ordinance, with respect to any covered property or its occupancy, that substantially increases any hazard insured against;

   f. A determination by the Insurance Commissioner that the continuation of the Policy would place the Company in violation of the insurance laws of this state;

   g. The Insured's conviction of a crime having, as one of its necessary elements, an act increasing any hazard insured against; or

   h. Loss of or substantial changes in applicable reinsurance.

3). Non-renewal

a. If the Company decides to non-renew this Policy, the Company will mail or deliver written notice to the First Named Insured shown in the Declarations at least forty-five (45) days before:

i). The expiration date; or

ii). The anniversary date of this Policy, if it is written for a term longer than one year or with no fixed expiration date.

a. The Company will mail or deliver notice to the **First Named Insured's** mailing address known to the Company.

b. If notice is mailed, proof of mailing will be sufficient proof of notice. It will be considered to have been given to the **First Named Insured** on the day it is mailed.

c. If notice of non-renewal is not mailed or delivered at least forty-five (45) days before the expiration date or an anniversary date of this Policy, coverage will remain in effect until forty-five (45) days after notice is given.

d. Earned premium for such extended period of coverage will be calculated pro rata, based on the rates applicable to the expiring Policy.

e. The Company will not provide notice of nonrenewal if the Company another company within the same insurance group, has offered to issue a renewal Policy, or the Insured has obtained replacement coverage or has agreed in writing to obtain replacement coverage.

f. If the Company has provided the required notice of non-renewal as described in a). above, and thereafter extends the Policy for a period of ninety (90) days or less, the Company will not provide an additional non-renewal notice with respect to the period of extension.

g. If the Company elects to renew this Policy, the Company will give written notice of any premium increase, change in deductible, or reduction in limits or coverage, to the **First Named Insured**, at the last mailing address known to the Company.

i). Any such notice will be mailed or delivered to the First Named Insured at least forty-five (45) days before the expiration date of this Policy or the anniversary date of this Policy, if it is written for a term longer than one year or with no fixed expiration date.

ii). If notice is mailed, proof of mailing will be sufficient proof of notice. It will be considered to have been given to the First Named Insured on the day it is mailed.

iii). If the First Named Insured accepts the renewal, the premium increase or coverage changes will be effective the day following the prior policy's expiration or anniversary date.

iv). If notice is not mailed or delivered at least forty-five (45) days before the expiration date or anniversary date of this Policy, the premium, deductible, limits and coverage in effect prior to the changes will remain in effect until:

a.) Forty-five (45) days after notice is given; or

b.) The effective date of replacement coverage obtained by the Insured; whichever occurs first. If the **First Named Insured** then elects not to renew, any earned premium for the resulting extended period of coverage will be calculated pro rata at the lower of the new rates or rates applicable to the expiring policy.

h. The Company will not provide notice of the following:

i). Changes in a rate or plan filed with or approved by the State Board for Property and Casualty Rates or filed pursuant to the Commercial Property and Casualty Competitive Loss Cost Rating Act and applicable to an entire class of business; or

ii). Changes based upon the altered nature of extent of the risk insured; or

iii). Changes in policy forms filed with or approved by the Insurance Commissioner and applicable to an entire class of business.

2. The following is added to SECTION VI –GENERAL POLICY CONDITIONS:

FRAUD WARNING

1). Any person who knowingly and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

3. SECTION VI. - GENERAL POLICY CONDITIONS, CONCEALMENT, MISREPRESENTATION OR FRAUD is deleted in its entirety and replaced by the following:

CONCEALMENT, MISREPRESENTATION OR FRAUD

This Policy is voidable as to all Insureds in any case of fraud by any Insured as it relates to this Policy at any time. It is also voidable if any Insured, at any time, intentionally conceals or misrepresents a material fact concerning:

This Policy;

The Covered Property;

The Insured's interest in Covered Property; or

A claim under this Policy.

**All other terms, conditions and limitations of this Policy remain unchanged.**

# Amendatory Endorsement - Rhode Island

ZURICH®

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

1. SECTION VI - General Policy Conditions, Cancellation/Non-Renewal, Cancellation, is deleted in its entirety and replaced by the following:

Cancellation

The **First Named Insured** shown in the Declarations may cancel this Policy by mailing or delivering to the Company advance written notice of cancellation.

The Company may cancel this Policy by mailing or delivering to the **First Named Insured** and agent, if any, written notice of cancellation at least:

The number of days before the effective date of cancellation if the Company cancels for nonpayment of premium, as stated in the Declarations; or

The number of days before the effective date of cancellation if the Company cancels for any other reason, as stated in the Declarations.

The Company will mail or deliver notice to the **First Named Insured's** and agent's, if any, mailing address shown in the Declarations of this Policy or any Endorsement attached thereto.

Notice of cancellation will state the effective date of cancellation. The Policy Period will end on that date.

If this Policy is cancelled, the Company will send the **First Named Insured** any premium refund due. The Company will compute the return premium pro rata and round to the next higher whole dollar if:

The Policy is cancelled at the Company's request; or

The Policy is cancelled by us at the request of a premium finance company upon default of the first Named Insured, when this policy is financed under a premium finance agreement.

If the **First Named Insured** cancels, the Company will return 90% of the pro rata unearned premium, rounded to the next higher whole dollar. However, when such cancellation takes place during the first year of a multi-year prepaid policy, we will return the full annual premium for the subsequent years. The cancellation will be effective even if the Company has not made or offered a refund.

If notice is mailed, proof of mailing will be sufficient proof of notice.

If under the laws of the jurisdiction in which the property is located, such cancellation terms or conditions are different, then cancellation terms or conditions will be as permitted by such laws.

**All other terms, conditions and limitations of this Policy remain unchanged.**

# Amendatory Endorsement - South Carolina

ZURICH®

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

1. The following is deleted from SECTION VI-CANCELLATION/NON-RENEWAL:

    The Company will mail or deliver notice to the **First Named Insured's** mailing address shown in the Declarations of this Policy or any Endorsement attached thereto.

    and replaced by the following:

    The Company will mail or deliver notice to the **First Named Insured's** and agent's last known mailing address.

2. The following is added to SECTION VI-CANCELLATION/NON-RENEWAL:

    If this Policy has been in effect one hundred and twenty (120) days or more, or is a renewal or continuation of a Policy the Company issued, the Company may cancel this Policy only for one or more of the following reasons:

    1) Nonpayment of premium;

    2) Material misrepresentation of a fact, which, if known to the Company, would have caused the Company not to issue the Policy;

    3) Substantial change in the risk assumed, except to the extent that the Company should reasonably have foreseen the change or contemplated the risk in writing the Policy;

    4) Substantial breaches of contractual duties, conditions or warranties; or

    5) Loss of reinsurance covering all or a significant portion of the particular Policy insured, or where continuation of the Policy would imperil the Company's solvency or place the Company in violation of the insurance laws of South Carolina.

    Prior to cancellation for reasons permitted in item 5). above, the Company will notify the Commissioner, in writing, at least sixty (60) days prior to such cancellation and the Commissioner will, within thirty (30) days of such notification, approve or disapprove such action.

    Any notice of cancellation will state the precise reason for cancellation.

3. SECTION VI-CANCELLATION/NON-RENEWAL, Non-Renewal is deleted in its entirety and replaced by the following:

    Non-Renewal

    The Company may non-renew this Policy by mailing or delivering to the **First Named Insured** and the agent, written notice, at the last known address, of non-renewal at least:

    Sixty (60) days if non-renewal is effective between November 1 and May 31; or

    Ninety (90) days if non-renewal is effective between June 1 and October 31;

    before:

    The expiration date of this Policy, if the Policy is written for a term of one year or less; or
    An anniversary date of this policy, if the policy is written for a term of more than one year or for an indefinite term.

However, the Company will not refuse to renew a policy issued for a term of more than one year, until expiration of its full term, if anniversary renewal has been guaranteed by additional premium consideration. Any notice of non-renewal will state the precise reason for non-renewal. If notice is mailed, proof of mailing will be sufficient proof of notice.

**All other terms, conditions and limitations of this Policy remain unchanged.**

# Amendatory Endorsement - South Dakota

ZURICH®

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

1. The following is deleted from SECTION VI-GENERAL POLICY CONDITIONS, CANCELLATION/NON-RENEWAL, Cancellation:

   The Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least:

      The number of days before the effective date of cancellation if the Company cancels for nonpayment of premium, as stated in the Declarations; or

      The number of days before the effective date of cancellation if the Company cancels for any other reason, as stated in the Declarations.

   and replaced with:

   The Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least the greater of:

      Twenty (20) days or the number of days before the effective date of cancellation if the Company cancels for nonpayment of premium, as stated in the Declarations; or

      Twenty (20) days or the number of days before the effective date of cancellation if the Company cancels for any other reason, as stated in the Declarations.

2. SECTION VI – GENERAL POLICY CONDITIONS, LOSS CONDITIONS, APPRAISAL, is deleted in its entirety.

3. SECTION VI – GENERAL POLICY CONDITIONS, LOSS CONDITIONS, SUIT AGAINST THE COMPANY, is deleted in its entirety and replaced by the following:

   SUIT AGAINST THE COMPANY

      No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless the Insured has fully complied with all the provisions of this Policy. Legal action must be started within seventy-two (72) months after the date of direct physical loss or damage to Covered Property or to other property as set forth herein.

**All other terms, conditions and limitations of this Policy remain unchanged.**

# Amendatory Endorsement - Tennessee

ZURICH®

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

1. The following is added to Section VI-General Policy Conditions, CANCELLATION/NON-RENEWAL:

    1). If this Policy has been in effect for sixty (60) days or more, or if this Policy is a renewal of a Policy the Company issued, this Policy may be cancelled only for one or more of the following reasons:

    a. Nonpayment of premium, including any additional premium, calculated in accordance with the Company's current rating manual, justified by a physical change in the insured property or a change in the insured property or a change in its occupancy or use;

    b. The Insured's conviction of a crime increasing any hazard insured against;

    c. Discovery of fraud or material misrepresentation on the part of either of the following;

    i). The Insured or Insured representative in obtaining this insurance; or

    ii). The Insured in pursuing a claim under this Policy.

    d. Failure to comply with written loss control recommendations;

    e. Material change in the risk which increases the risk of loss after the Company issued or renewed insurance coverage;

    f. Determination by the insurance commissioner that the continuation of the Policy would jeopardize the Company's solvency or would place the Company in violation of the insurance laws of Tennessee or any other state;

    g. The Insured's violation or breach of any Policy terms or conditions; or

    h. Other reasons that are approved by the insurance commissioner. Notice of Cancellation will state the reason for cancellation.

2. Section VI-General Policy Conditions, CANCELLATION/NON-RENEWAL, Non-renewal is deleted in its entirety and replaced by the following:

    1). If the Company decides not to renew this Policy, the Company will mail or deliver written notice of non-renewal to the first Named Insured and agent, at least sixty (60) days before the expiration date unless:

    a. The Company has offered to issue a renewal Policy; or

    b. The Insured has obtained replacement coverage or has agreed in writing to obtain replacement coverage.

    c. Any notice of non-renewal will be mailed or delivered to the first Named Insured's and agent's addresses shown in the Policy. If notice is mailed, proof of mailing will be sufficient proof of notice.

**All other terms, conditions and limitations of this Policy remain unchanged.**

# Amendatory Endorsement - Vermont

ZURICH®

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

1. SECTION VI-GENERAL POLICY CONDITIONS, CANCELLATION/NON-RENEWAL, is deleted in its entirety and replaced by the following:

   CANCELLATION/NON-RENEWAL

   Cancellation

   a) The **First Named Insured** shown in the Declarations may cancel this Policy by mailing or delivering to the Company advance written notice of cancellation.

   b) If this Policy has been in effect for less than sixty (60) days and this Policy is not a renewal of a Policy the Company issued, the Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least:

      1) Fifteen (15) days notice prior to the proposed cancellation date for non payment of premium or substantial increase in hazard; or

      2) Forty-five (45) days notice prior to the proposed cancellation date for any other reason.

   c) If cancellation is for nonpayment of premium, written notice may be sent by certified mail. If cancellation is for any reason other than nonpayment of premium, written notice must be sent by certified mail.

   d) If this Policy has been in effect for sixty (60) days or more, or if this is a renewal of a Policy the Company issued, the Company may cancel this Policy only for one or more of the following reasons:

      1) Nonpayment of premium;

      2) Fraud or material misrepresentation affecting this Policy or in the presentation of claims under this Policy;

      3) Violation of any provisions of this Policy; or

      4) Substantial increase in hazard, provided the Company has secured approval for the cancellation from the commissioner of insurance.

      If the Company cancels this Policy for one of the reasons specified above, the Company may cancel this Policy by mailing or delivering at least:

      1) Fifteen (15) days notice before the effective date of cancellation for nonpayment of premium; or

      2) Forty-five (45) days notice before the effective date of cancellation for any other reason.

   e) Notice of cancellation will state the effective date of cancellation. The Policy period will end on that date.

   f) If this Policy is cancelled, the Company will send the **First Named Insured** any premium refund due. If the Company cancels, the refund will be pro rata. If the **First Named Insured** cancels, the refund may be less than pro rata but no less than the customary short rate amount. The cancellation will be effective even if the Company has not made or offered a refund.

   g) If notice is mailed, proof of mailing will be sufficient proof of notice.

Non-Renewal

a) The Company may non-renew this Policy by mailing, certified mail, or delivering to the **First Named Insured** written notice, at the last known address, of non-renewal at least forty-five (45) days before the expiration of this Policy or the anniversary date of this Policy, if this Policy has been written for a term of more than one year.

This non-renewal provision does not apply if the Company has indicated a willingness to renew, in case of nonpayment of premium, or if the Insured does not pay any advance premium required for renewal.

If the Company fails to mail or deliver proper notice of non-renewal, this Policy will end on the effective date of any other Policy with respect to property designated in both policies.

b) If the Company elects to renew this Policy and has the necessary information to issue a renewal Policy, the Company will confirm in writing at least forty-five (45) days before the Policy expires the intention to renew this Policy and the premium at which this Policy will be renewed.

If the Company fails to comply with this provision, the Insured will have renewal coverage. The renewal coverage will be at the rates in effect under the expiring or expired Policy or in effect on the expiration date, that have been approved by the Commissioner, whichever are lower. This renewal coverage will be on a pro rata basis and will continue for forty-five (45) days after the Company confirms renewal coverage and premium. If the Insured accepts this renewal Policy, this paragraph does not apply.

2. Section VI-General Policy Conditions, CONCEALMENT, MISREPRESENTATION OR FRAUD is deleted in its entirety and replaced by the following:

CONCEALMENT, MISREPRESENTATION OR FRAUD

The Company does not provide coverage to one or more Insureds who at any time engage in fraudulent conduct as it relates to this Policy. The Company also does not provide coverage to one or more Insureds, who at any time intentionally conceal or misrepresent a material fact or make a false statement concerning:

a) This Policy;

b) The Covered Property;

c) The Insured's interest in Covered Property; or

d) A claim under this Policy.

3. The following is added to SECTION VI –GENERAL POLICY CONDITIONS**,** LOSS CONDITIONS, SUIT AGAINST THE COMPANY:

The Insureds' right to bring legal action against the Company is not conditioned upon compliance with the Appraisal Condition of this Policy.

4. The following is deleted from SECTION VI-GENERAL POLICY CONDITIONS, SETTLEMENT OF CLAIMS**,** Loss Payment:

The Company will pay for covered loss or damage within thirty (30) days or as required by law, after receiving the sworn statement of loss, if the Insured has complied with all the terms of this Policy; and

and replaced by the following:

We will pay for covered loss or damage within ten (10) working days after we receive the sworn statement of loss, if you have complied with all the terms of this Policy; and

**All other terms, conditions and limitations of this Policy remain unchanged.**

# Amendatory Endorsement - Washington

ZURICH®

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

1. The following is deleted from SECTION III - PROPERTY DAMAGE, EXCLUSIONS:

3.03.03. This Policy excludes direct physical loss or damage directly or indirectly caused by or resulting from any of the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

and replaced with:

3.03.03. The Company will not pay for loss or damage caused by any excluded event described below. Loss or damage will be considered to have been caused by an excluded event if the **occurrence** of that event directly and solely results in loss or damage; or initiates a sequence of events that results in loss or damage, regardless of the nature of any intermediate or final event in that sequence.

2. When the following appears in CONTINGENT TIME ELEMENT, FINE ARTS, LAND IMPROVEMENTS,OFF PREMISES SERVICE INTERUPTION PROPERTY DAMAGE AND TIME ELEMENT LOSS, TENANTS PROHIBITED ACCESS and **NEW CONSTRUCTION AND ADDITIONS**, it will be deleted.

"regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss."

and replaced with:

The Company will not pay for loss or damage caused by an excluded event described below. Loss or damage will be considered to have been caused by such excluded event if the **occurrence** of that event directly and solely results in loss or damage; or initiates a sequence of events in loss or damage, regardless of the nature of intermediate or final event in that sequence.

3. The following is added to SECTION III - PROPERTY DAMAGE, EXCLUSIONS, 3.03.03.04.:

This exclusion does not apply to acts of direct physical loss or damage resulting from an act of domestic abuse caused by another insured under the policy if such loss is an otherwise covered property loss and the insured making claim: files a police report, cooperates with any law enforcement investigation relating to the act of domestic abuse and did not cooperate in or contribute to the creation of the loss.

4. The following is deleted from SECTION VI-GENERAL POLICY CONDITIONS, CANCELLATION/NON-RENEWAL, Cancellation:

The **First Named Insured** shown in the Declarations may cancel this Policy by mailing or delivering to the Company advance written notice of cancellation.

and replaced with:

The **First Named Insured** shown in the Declarations may cancel this Policy. The insured may provide notice before the effective date of cancellation using one of these methods:

(i) Written notice of cancellation to the insurer or producer by mail, fax or e-mail;

(ii) Surrender of the policy or binder to the insurer or producer; or

(iii) Verbal notice to the insurer or producer.

If the insurer receives notice of cancellation from the insured, it must accept and promptly cancel the policy or any binder issued as evidence of coverage effective the later of:

(i) The date notice is received; or

(ii) The date the insured requests cancellation.

5. The following is added to SECTION VI-GENERAL POLICY CONDITIONS, CANCELLATION/NON-RENEWAL, Cancellation:

Notice of cancellation will state the reason for cancellation.

The Company will send written notice of cancellation to each mortgagee, pledge or other person shown by the Policy to have an interest in any loss which may occur.

6. SECTION VI-GENERAL POLICY CONDITIONS, CANCELLATION/NON-RENEWAL, Non-renewal is deleted in its entirety and replaced by the following:

Non-renewal

The Company may non-renew this Policy by mailing or delivering to the **First Named Insured** written notice, Forty-Five (45) days before the non-renewal. Notice of non-renewal will state the reason for non-renewal.

7. The following is added to SECTION VI-GENERAL POLICY CONDITIONS, INSPECTIONS AND SURVEYS:

However, this condition does not apply to any inspections, surveys, reports or recommendations the Company may make relative to certification under state or municipal statutes, ordinances or regulations referenced above.

8. The following is deleted from SECTION VI-GENERAL POLICY CONDITIONS, OTHER INSURANCE:

The Company will not be liable if, at the time of loss or damage, there is any other insurance that would attach in absence of this insurance; except that this insurance shall apply only as excess, Difference in Conditions/Difference in Limits and in no event as contributing insurance, and then only after all other insurance has been exhausted.

and replaced with:

The Company will not be liable if, at the time of loss or damage, there is any other insurance that would attach in absence of this insurance; except that this insurance shall apply only as pro rata contributing insurance.

9. The following is deleted from SECTION VI-GENERAL POLICY CONDITIONS, VALUATION:

The basis of adjustment is on a replacement cost basis unless a specific valuation applies. Replacement Cost shall be the cost to repair, rebuild or replace the damaged property (without deduction for depreciation) with materials of like kind, quality and capacity at the same or another site, but no more than the lesser of:

and replaced by the following:

The basis of adjustment is on a replacement cost basis unless a specific valuation applies. Replacement Cost shall be the cost to repair, rebuild or replace the damaged property (without deduction for depreciation) with new materials of like kind, quality and capacity at the same or another site, but no more than the lesser of:

9. Section VI-General Policy Conditions, LENDERS LOSS PAYEE AND MORTGAGE HOLDER INTERESTS AND OBLIGATIONS is deleted in its entirety.

10. The following is deleted from SECTION VI-GENERAL POLICY CONDITIONS, APPRAISAL:

The Company further retains its right to deny the claim in whole or in part.

**All other terms, conditions and limitations of this Policy remain unchanged.**

# Amendatory Endorsement - West Virginia

ZURICH®

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

1. SECTION VI - GENERAL POLICY CONDITIONS, LOSS CONDITIONS, APPRAISAL, is deleted in its entirety and replaced by the following:

   APPRAISAL

   In case the Insured and the Company fails to agree as to the actual cash value of the amount of loss, then on the written demand of either party, each shall select a competent and disinterested appraiser and notify the other appraiser selected within twenty (20) days of such demand. The appraiser shall first select a competent and disinterested umpire; and failing for fifteen (15) days to agree upon such umpire, then either on the Insured's or the Company's request, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss as to each item; and, failing to agree, shall submit their differences only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the parties equally.

2. The following is deleted from SECTION VI - GENERAL POLICY CONDITIONS, SETTLEMENT OF CLAIMS, Loss Payment:

   The Company will pay for covered loss or damage within thirty (30) days or as required by law, after receiving the sworn statement of loss, if the Insured has complied with all the terms of this Policy; and

   The Company has reached agreement on the amount of loss; or

   An appraisal award has been made...

   and replaced by the following:

   The Company will pay for loss of or damage to Covered Property within fifteen (15) days after we receive the signed, sworn statement of loss if the Insured has complied with all the terms of this Policy and the Company has reached agreement with the Insured on the amount of loss.

3. SECTION VI – GENERAL POLICY CONDITIONS, LOSS CONDITIONS, SUIT AGAINST THE COMPANY, is deleted in its entirety and replaced by the following:

   No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless the Insured has fully complied with all the provisions of this Policy. Legal action must be started within two (2) years after the date of direct physical loss or damage to Covered Property or to other property as set forth herein.

**All other terms, conditions and limitations of this Policy remain unchanged.**

# Amendatory Endorsement - Wisconsin

ZURICH®

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

1. Section VI-General Policy Conditions, Loss Conditions, Subrogation, is deleted in its entirety and replaced by the following:

   SUBROGATION

   The Insured is required to cooperate in any subrogation proceedings. To the extent of the Company's payment, the Insured's rights of recovery against any party are transferred to the Company.

   The Company acquires no rights of recovery that the Insured has expressly waived prior to a loss, nor will such waiver affect the Insured's rights under this Policy.

   The Company will be entitled to any recovery from subrogation proceedings only after the **First Named Insured** has been fully compensated for Damages.

**All other terms, conditions and limitations of this Policy remain unchanged.**

# Amendatory Endorsement - Wyoming

ZURICH®

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

1. SECTION VI - General Policy Conditions, Suit Against The Company is replaced in its entirety by the following:

   No one may bring a legal action against the Company under this Policy unless:

   All of its terms have been complied with; and, the action is brought within 4 years beginning from the date on which the direct physical loss or damage was discovered.

2. Section VI-GENERAL POLICY CONDITIONS, LOSS CONDITIONS, SUBROGATION is amended by the addition of the following:

   The Company will be entitled to recovery only after the insured has been fully compensated for the deductible amount, without any deduction for expenses of collection, out of any recovery on the subrogated claim, before any part of the recovery is applied to any other use. If the amount of the deductible exceeds the recovery, the insurer shall pay only the amount of the recovery to the insured.

3. The following is deleted from Section VI-GENERAL POLICY CONDITIONS, SETTLEMENT OF CLAIMS, Loss Payment:

   The Company will pay for covered loss or damage within thirty (30) days or as required by law, after receiving the sworn statement of loss, if the Insured has complied with all the terms of this Policy; and

   And replaced with:

   The Company will pay for the undisputed covered loss or damage within forty-five (45) days, after receiving the sworn statement of loss, if the Insured has complied with all the terms of this Policy.

**All other terms, conditions and limitations of this Policy remain unchanged.**

# Amendatory Endorsement - Virginia

ZURICH®

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

1. SECTION V-FIRE DEPARTMENT SERVICE CHARGE is replaced by the following:

   The Company will pay for the reasonable additional expenses, resulting from costs of fire extinguishing materials expended, incurred by the Insured when the Fire Department is called to save or protect Covered Property from a **Covered Cause of Loss** at an Insured Location. The Fire Department Service Charges are those assumed by contract or agreement prior to loss or damage or required by local ordinance.

   If the charges are billed to the Insured by a volunteer fire department, the Company will pay for the volunteer fire department service charges, provided that the volunteer fire department is not fully funded by real estate taxes or other property taxes.

   The most the Company will pay under this Additional Coverage at any one covered property, in any year beginning on the date coverage for such covered property was effective, is the greater of $250 or the Limit of Insurance shown in the Declarations for Fire Department Service Charge. The Limit for this Additional Coverage is in addition to the applicable Limit of Insurance shown in the Declarations for that covered property.

**All other terms, conditions and limitations of this Policy remain unchanged.**

ZURICH®

# SANCTIONS EXCLUSION ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

The following exclusion is added to the policy to which it is attached and supersedes any existing sanctions language in the policy, whether included in an Exclusion Section or otherwise:

SANCTIONS EXCLUSION

Notwithstanding any other terms under this policy, we shall not provide coverage nor will we make any payments or provide any service or benefit to any insured, beneficiary, or third party who may have any rights under this policy to the extent that such cover, payment, service, benefit, or any business or activity of the insured would violate any applicable trade or economic sanctions law or regulation.

The term policy may be comprised of common policy terms and conditions, the declarations, notices, schedule, coverage parts, insuring agreement, application, enrollment form, and endorsements or riders, if any, for each coverage provided. Policy may also be referred to as contract or agreement.

We may be referred to as insurer, underwriter, we, us, and our, or as otherwise defined in the policy, and shall mean the company providing the coverage.

Insured may be referred to as policyholder, named insured, covered person, additional insured or claimant, or as otherwise defined in the policy, and shall mean the party, person or entity having defined rights under the policy.

These definitions may be found in various parts of the policy and any applicable riders or endorsements.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

ZURICH®

| Insured Name | Policy Number | Effective Date | Endorsement Number |
|---|---|---|---|
| Detroit Entertainment, L.L.C | ERP3061326-01 | 12/01/2019 | 001 |

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies your insurance:

## A. Cap on Losses From Certified Terrorism Losses

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with provisions of the federal Terrorism Risk Insurance Act ("TRIA"), to be an act of terrorism. The Terrorism Risk Insurance Act provides that the Secretary of Treasury shall certify an act of terrorism:

1. To be an act of terrorism;
2. To be a violent act or an act that is dangerous to human life, property or infrastructure;
3. To have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and
4. To have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

If aggregate insured losses attributable to one or more "certified acts of terrorism" exceed $100 billion in a calendar year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

## B. Application of Other Exclusions

The terms and limitations of a terrorism exclusion or any other exclusion, or the inapplicability or omission of a terrorism exclusion or any other exclusion, do not serve to create coverage which would otherwise be excluded, limited or restricted under this policy.

Copyright © 2015 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Change Endorsement

**Limited Coverage for Electronic Data, Programs or Software**
**Certificates of Insurance**
**Loss Adjustment/Payable**

ZURICH®

| Insured Name | Policy Number | Effective Date | Endorsement Number |
|---|---|---|---|
| Detroit Entertainment, L.L.C | ERP3061326-01 | 12/01/2019 | 002 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This Endorsement modifies insurance provided under the Policy identified above.

A. Section 5.02.04.01.01 is deleted.
B. Clause CERTIFICATES OF INSURANCE is deleted and replaced with the following:

CERTIFICATES OF INSURANCE

Any certificate of insurance issued in connection with this Policy is provided solely as a matter of convenience or information for the addressee(s) or holder(s) of such certificate of insurance, except as provided under the Policy when a Loss Payee(s) or Mortgagee(s) are named. The certificate of insurance does not amend, extend or alter the coverage afforded by the Policy.

In the event this Policy is cancelled pursuant to the Cancellation subsection other than for nonpayment of premium, and except as provided otherwise, the Company shall provide a notice to those entities set out in the certificates of insurance, that have been provided to the Company in accordance with this Endorsement, within 30 days after notifying the **First Named Insured** that the Policy has been cancelled. Such entities will be provided to the Company, in the format requested by the Company within 10 days of such request, by the Producer. However, in no event will failure to provide notice to entities set out in any certificate of insurance provide such entities with rights broader than those of the Named Insured.

The Company hereby authorizes the Producer named on the Policy to issue certificates of insurance consistent with the foregoing.

C. Clause LOSS ADJUSTMENT/PAYABLE is deleted and replaced with the following:

LOSS ADJUSTMENT/PAYABLE

Loss, if any, will be adjusted with and payable to the **First Named Insured** as shown on this Policy, or as directed by the **First Named Insured**.

When a Lender or Mortgagee is named in the certificates of insurance on file with the Company, the Lender or Mortgagee will be included in loss payment as their interests may appear.

When a Loss Payee is named in the certificates of insurance on file with the Company, the Loss Payee will be included in loss payments made to the insured as their interests may appear. The Loss Payee has no other rights under the policy.

When an additional insured is named in the certificates of insurance on file with the Company, the additional insured will be included in loss payment as their interests may appear.

**All other terms, conditions and limitations of this Policy remain unchanged.**

# Cyber Event Coverage Endorsement

ZURICH

| Insured Name | Policy Number | Effective Date | Endorsement Number |
|---|---|---|---|
| Detroit Entertainment, L.L.C | ERP3061326-01 | 12/01/2019 | 003 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

EDGE-D-100-B (12/10) The Zurich EDGE Declarations (Domestic Form)
EDGE-100-B (12/10) The Zurich EDGE Coverage Form (Domestic Form)
EDGE-D-101-B (12/10) The Zurich EDGE Declarations (Global Form)
EDGE-101-B (12/10) The Zurich EDGE Coverage Form (Global Form)
EDGE-D-102-B (12/10) The Zurich EDGE Declarations (Domestic Healthcare Form)
EDGE-102-B (12/10) The Zurich EDGE Coverage Form (Domestic Healthcare Form)
EDGE-D-103-A (12/10) The Zurich EDGE Declarations (Global Healthcare Form)
EDGE-103-A (12/10) The Zurich EDGE Coverage Form (Global Healthcare Form)

**A.** The following is added to 2.03.06. Limits of Liability:

| | |
|---|---|
| $100,000 | **CYBER EVENT** All Coverages Combined and in the **Annual Aggregate** but not to exceed the following: |
| | $100,000 OFF PREMISES SERVICE INTERRUPTION **CYBER EVENT** – PROPERTY DAMAGE AND TIME ELEMENT |

The following is added to 2.03. Time and Distance Limitations:

| | |
|---|---|
| 48 hours for Gross Earnings: not to exceed $100,000 limit. | PROTECTION AND PRESERVATION OF **DIGITAL ASSETS** – PROPERTY DAMAGE AND TIME ELEMENT Combined |

The following is added to Section 2.04. QUALIFYING PERIOD:

| | |
|---|---|
| **CYBER EVENT** per **Occurrence** | 48 hours |
| OFF PREMISES SERVICE INTERRUPTION **CYBER EVENT** – PROPERTY DAMAGE AND TIME ELEMENT applies separately at each location. | 48 hours |

The following is added to Section 2.05. DEDUCTIBLES, Exceptions to Policy Deductible(s):

**Cyber Event**

The following deductibles apply to loss or damage caused by or resulting from **Cyber Event**. The **Cyber Event** deductible will apply regardless of any other deductibles that may also apply.

$100,000 combined **Cyber Event** per **Occurrence**

**B.** Section 3.02. PROPERTY NOT COVERED, Subsection 3.02.15. is replaced by the following:

**Digital Assets** except when they are **Stock in Process**, **Finished Stock**, **Raw Materials**, supplies or **Merchandise** or as otherwise provided by the Computer Systems Damage Coverage, **Valuable Papers and Records** Coverage or **Cyber Event** Coverage of this Policy.

**C.** Section 5.02. DESCRIPTION OF SPECIAL COVERAGES is revised as follows:

**1.** The COMPUTER SYSTEMS DAMAGE Coverage is replaced by the following:

COMPUTER SYSTEMS DAMAGE

The Company will pay for the corruption or loss of the Insured's **Digital Assets** resulting from direct physical loss of or damage to **Computer Systems** or **Media** as covered by this Policy, and the actual Time Element loss sustained, as provided by this Policy during the **Period of Interruption** directly resulting from a **Covered Cause of Loss** at an Insured Location.

This Coverage will only apply when the **Period of Interruption** exceeds the time shown as **Qualifying Period** in the **Qualifying Period** clause of the Declarations section. If the **Qualifying Period** is exceeded, then this Policy will pay for the amount of loss in excess of the Policy Deductible, but not more than the limit applying to this Coverage.

This Coverage excludes loss or damage caused by or resulting from:

a. Errors or omissions in processing or copying, except when direct physical loss or damage caused by a **Covered Cause of Loss** results. Then only that resulting damage is covered;

b. Loss or damage to **Digital Asset** from errors or omissions in programming or machine instructions; or

c. **Cyber Event**..

**2.** The OFF PREMISES SERVICE INTERRUPTION PROPERTY DAMAGE AND TIME ELEMENT LOSS Coverage is replaced by the following:

OFF PREMISES SERVICE INTERRUPTION PROPERTY DAMAGE AND TIME ELEMENT LOSS

The Company will pay for direct physical loss of or damage to Covered Property and for the actual Time Element loss sustained as provided by the Policy during the **Period of Service Interruption** at Insured Locations caused by the interruption of an incoming service consisting of electricity, gas, fuel, steam, water, refrigeration, voice, data or video or from the lack of outgoing voice, data, video or sewage service.

The lack of service must result from direct physical loss of or damage caused by a **Covered Cause of Loss** to property ( other than satellites but including transmission and distribution lines) of the supplier of such service located within this Policy's Territory, that immediately prevents in whole or in part the delivery of such usable services.

This Coverage will only apply when the **Period of Service Interruption** exceeds the time shown as **Qualifying Period** in the **Qualifying Period** clause of the Declarations section. If the **Qualifying Period** is exceeded, then this Policy will pay for the amount of loss in excess of the applicable deductible, but not more than the limit applying to this Coverage.

Exclusions 3.03.01.02. and 3.03.04. do not apply to Off Premises Service Interruption Property Damage and Time Element Loss.

The following additional exclusion applies:

This Coverage excludes loss or damage to Covered Property and for the actual Time Element loss directly or indirectly caused by or resulting from the interruption of such services, when such interruption is caused directly or indirectly by:

**a.** The failure of the Insured to comply with the terms and conditions of any contracts the Insured has for the supply of such specified services; or

**b.** **Cyber Event**,

regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

**D.** The following is added to Section 5.03. DESCRIBED CAUSES OF LOSS:

**CYBER EVENT**

**1.** Property Damage and Time Element

The Company will pay **Digital Asset Replacement Expenses** and the actual Time Element loss sustained during the

**Period of Interruption** caused by a **Cyber Event** resulting in the corruption or destruction of the Insured's **Digital Assets.** The Time Element loss must result from the necessary **Suspension** of the Insured's business activities at the Insured Location. The **Suspension** must be due to a **Cyber Event** resulting in corruption, destruction or loss of access to the Insured's **Digital Assets** while within this Policy's territory.

This Coverage will only apply when the **Period of Interruption** exceeds the time shown as **Qualifying Period** in the **Qualifying Period** clause of the Declarations section. If the **Qualifying Period** is exceeded, then this Policy will pay for the amount of loss in excess of the **Cyber Event** Deductible, but not more than the limit applying to this Coverage.

This Coverage, as respects to **Cyber Event**, also covers:

**a.** Expediting Expense

The reasonable and necessary costs incurred to pay for the temporary repair or to expedite the permanent repair or replacement of **Digital Assets** resulting from a **Cyber Event** to the Insured's **Digital Assets**.

This coverage excludes the costs of the permanent repair or replacement of **Digital Assets** or damaged property.

**b.** Computer Forensic Expense

The reasonable fees paid to a professional or the reasonable cost of using the Insured's employees to conduct a computer forensic analysis to investigate and determine the cause and extent of loss to the Insured's **Digital Assets** and **Computer System** due to a **Cyber Event**.

The Company will pay for direct physical loss of or damage to **Digital Assets**, Covered Property, Time Element loss and Special Coverages loss as provided by this Policy, if such loss or damage is caused by **Cyber Event** regardless of any other cause or event contributing concurrently or in any other sequence of loss. However, ensuing physical loss or damage to Covered Property from a **Covered Cause of Loss** will not be considered loss by a **Cyber Event** within the terms and conditions of this Policy.

Notwithstanding any other provision of this Policy, including any endorsements forming a part of this Policy, any costs, expenses or loss recoverable under the **Cyber Event** Property Damage and Time Element Coverages are payable only under **Cyber Event** Property Damage and Time Element Coverage and not elsewhere in this Policy.

**2.** Protection And Preservation Of **Digital Assets** – Property Damage And Time Element

The reasonable and necessary cost incurred for actions taken by the Insured to temporarily protect or preserve **Digital Assets** from further damage, during or after a **Cyber Event**, provided that such costs are over and above the Insured's normal operating expenses.

The Gross Earnings loss or Gross Profit loss sustained by the Insured for a period of time not to exceed the hours listed in the Declarations for the Insured first taking reasonable and necessary actions to temporarily protect or preserve from further damage the insured's **Digital Assets**, during or after a **Cyber Event** provided that such costs are over and above the Insured's normal operating expenses.

Protection and Preservation of **Digital Assets** coverage does not include the following costs or expense:

To correct any deficiencies or problems or to remediate **Programs (Software)** errors or vulnerabilities that existed prior to the **Cyber Event** and you failed to correct;

To update, restore, replace or improve any **Digital Assets** to a level beyond that which existed just prior to the **Cyber Event**, unless such costs or expenses are standard technological advancements included within any newer **Digital Assets**;

For any contractual penalties.

Notwithstanding any other provision of this Policy, including any endorsements forming a part of this Policy, any costs recoverable under Protection and Preservation of **Digital Assets** are payable only under Protection And Preservation Of **Digital Assets** – Property Damage And Time Element Coverage and not elsewhere in this Policy.

**3.** Off Premises Service Interruption **Cyber Event** Property Damage And Time Element

The Company will pay for the loss of or damage to the Insured's Covered Property at an Insured Location and for the actual Time Element loss sustained by the Insured during the **Period of Interruption**, directly resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location, resulting from a **Cyber Event**, regardless of any other event contributing concurrently or in any sequence to the loss, at a service provider company directly or indirectly supplying electricity, gas, fuel, steam, water, refrigeration, voice, data, video or **Cloud Services**. The interruption of service must result from a **Cyber Event** to property (other than satellites but including transmission and distribution lines) of the supplier of such services that immediately prevents in whole or in part the delivery of such usable services, when located worldwide, except for in the following:

Afghanistan, Albania, Algeria, Angola, Armenia, Azerbaijan, Belarus, Benin, Botswana, Burkina Faso, Burundi,

Cameroon, Cape Verde, Central African Republic, Chad, Comoros, Republic of Congo, Democratic Republic of the Congo, Cuba, Djibouti, Equatorial Guinea, Eritrea, Ethiopia, Gabon, Gambia, Ghana, Guinea, Guinea-Bissau, Georgia, Haiti, Iran, Iraq, Ivory Coast, Kazakhstan, Kampuchea (Cambodia), Kenya, Kyrgyzstan (Kyrgyz Republic), Laos, Lebanon, Lesotho, Liberia, Libya, Macedonia, Madagascar, Malawi, Mali, Mauritania, Mayotte, Mongolia, Montenegro, Mozambique, Myanmar (Burma), Namibia, Niger, Nigeria, North Korea, Pakistan, Palestine, Reunion, Rwanda, Sao Tomé and Principé, Senegal, Serbia, Sierra Leone, Somalia, Sri Lanka, Southern Sudan, Sudan, Swaziland, Syria, Tajikistan, Tanzania, Tibet, Togo, Turkmenistan, Uganda, Uzbekistan, Western Sahara, Yemen, Zambia, Zimbabwe; or

Any other country where prohibited by United States law or where trade relations are unlawful as determined by the Government of the United States of America or its agencies.

This Coverage will only apply when the **Period of Interruption** exceeds the time shown as **Qualifying Period** in the **Qualifying Period** clause of the Declarations section. If the **Qualifying Period** is exceeded, then this Policy will pay for the amount of loss in excess of the applicable **Cyber Event** Deductible, but no more than the limit applying to this Coverage.

The following additional exclusion applies:

This Policy excludes physical loss or damage directly or indirectly caused by or resulting from the interruption of such services, when such interruption is caused directly or indirectly by the failure of the Insured to comply with the terms and conditions of any contracts the Insured has for the supply of such specified services regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

Notwithstanding any other provision of this Policy, including any endorsements forming a part of this Policy, any costs recoverable under Off Premises Service Interruption **Cyber Event** Property Damage And Time Element are payable only under Off Premises Service Interruption **Cyber Event** Property Damage and Time Element Coverage and not elsewhere in this Policy.

**4.** The following additional exclusions apply to **D**. **1**., **2**., and **3**.:

We will not pay for loss or damage to **Digital Assets** resulting from:

**a.** Errors or omissions in programming, processing or copying; or

**b.** Correcting any deficiencies or problems including remediation of **Digital Asset** errors or vulnerabilities that existed prior to the **Cyber Event** and the Insured failed to correct.

We do not cover expenses or costs of **Cyber Extortion Payments**.

**E.** The following definitions in SECTION VII – DEFINITIONS are replaced by the following:

**Computer Virus** – Any hostile or intrusive **Program (Software)**, instructions, code or data which infiltrates and disrupts computer operations, gathers sensitive information, gains access to **Computer Systems** or **Digital Assets** without consent, or any other data or instructions introduced into any electronic system that affects the operation or functionality of **Computer Systems** or **Digital Assets,** including but not limited to any destructive **Program**, computer code, worm, logic bomb, smurf attack, vandalism, malware, Trojan Horse, spyware, rootkits, ransomware, adware, keyloggers, rogue security software or malicious browsers.

**Described Cause(s) of Loss** – **Breakdown** of Equipment, **Earth Movement**, **Flood**, **Named Storm** or **Cyber Event**.

**Period of Interruption** – The period starting when the Insured's **Digital Assets**, **Computer Systems** or **Media** fails to operate and ending when with due diligence and dispatch, the Insured's **Digital Assets**, **Computer Systems** or **Media** could be restored to the same or equivalent operating condition that existed prior to the failure. The Period of Interruption does not include the additional time to make changes to the Insured's **Digital Assets**, **Computer Systems** or **Media**.

For purposes of **Cyber Event** only, the following definition in SECTION VII – DEFINITIONS is replaced by the following:

**Media** – Punch cards, paper tapes, floppy disks, CD-ROM, hard drives, magnetic tapes, magnetic discs or any other tangible personal property on which **Digital Assets** are recorded or transmitted, but not the **Digital Assets** themselves.

The following are added to SECTION VII – DEFINITIONS:

**Cloud Services** – A contracted service in the business of storing, processing and managing the Insured's **Digital Assets** and providing access and use of **Programs (Software)** or a network of servers hosted away from the Insured's location to store, process and manage the **Digital Assets**.

**Computer Systems** – Information Technology (IT), industrial process control or communication systems including any other item or element of IT infrastructure, computer hardware, devices and electronic equipment used for the purpose of creating, accessing, processing, protecting, monitoring, storing, retrieving, displaying or transmitting **Digital Assets**, including but not limited to, associated input and output devices, laptop and desk top computers, **Media**, computer

networks and networking equipment, components, file servers, data processing equipment, microchip, microprocessors, computer chips, integrated circuits, systems controlling or associated with the operation or monitoring of equipment or machinery, or similar device or equipment, but not including the Digital Assets contained therein. **Computer Systems** also includes external drives, CD-ROM's, DVD ROM's, magnetic tapes, magnetic discs and USB sticks, that are used to process, record or store **Digital Assets**.

**Cyber Event** – Authorized access, unauthorized access, authorized use, unauthorized use, disappearance of code, malicious act, distortion, malfunction, deficiency, deletion, fault, **Computer Virus**, **Denial of Service Attack** or corruption perpetuated through the Insured's computer network, an internet enabled device or **Computer Systems** that occurs during the Policy Period.

However, as applied in Off Premises Service Interruption Property Damage and Time Element and in **D.3.**, Off Premises Service Interruption **Cyber Event** Property Damage And Time Element of this endorsement, **Cyber Event** means such Cyber Event as defined above but perpetuated through the service provider's computer network, internet enabled device or **Computer Systems** during the Policy Period.

**Cyber Extortion Payments** – Monies paid to third parties for an act, threat or series of threats made to introduce a **Computer Virus** or gain unauthorized access to **Computer Systems**.

**Denial of Service Attack** – A malicious attack by an authorized or unauthorized party which is designed to slow or completely interrupt an authorized party from gaining access to the Insured's **Computer Systems, Digital Assets** or website.

**Digital Assets – Electronic Data**, **Programs (Software)**, audio and image files. To the extent they exist as **Electronic Data** and only in that form, **Digital Assets** include the following: accounts, bills, evidences of debts, valuable papers, records, abstracts, deeds, manuscripts, or other documents.

**Digital Asset Replacement Expenses** – The reasonable and necessary costs or expenses the Insured incurs to replace, restore or recollect **Digital Assets** from written records or partially or fully matching **Electronic Data**.

All other terms, conditions, provisions and exclusions of this policy remain the same.